**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JIAXI HU, MENGFANG LI, XIAOYAN WU,
WEI REN, RUIMIN CHEN, JIANLI DU,
JIMEI ZHANG, ZHENPING HAO, JIE CIU,
AND GUIYING WANG,

                Plaintiffs,

v.                                     Case No. 1:15-cv-709-SSB-SKB

TERRY CHAN, GARY CHAN, MARTIN
ANGIULLI, ANGIULLI, INC., KENTUCKY
REGIONAL CENTER, LLC D/B/A
MIDWEST EB-5 REGIONAL CENTER, SV
ARX, LLC, DANTE BELLA, LLC AND
JEFFREY JACOBS

                Defendants.

## MOTION TO DISMISS

      Martin Angiulli, Angiulli, Inc., Kentucky Regional Center, LLC d/b/a Midwest EB-5

Regional Center, SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs, (collectively "SV ARX

Defendants"), through undersigned counsel, pursuant to Federal Rule of Civil Procedure

12(b)(6), respectfully move this Court to dismiss the First Amended Complaint ("FAC") against

the SV ARX Defendants.  In support of their Motion, the SV ARX Defendants rely on their

Memorandum in Support, filed contemporaneously, and the entire record in this cause.

      **WHEREFORE**, the Defendants, Martin Angiulli, Angiulli, Inc., Kentucky Regional

Center, LLC d/b/a Midwest EB-5 Regional Center, SV ARX, LLC, Dante Bella, LLC, and

Jeffrey Jacobs, respectfully request that this Court grant this Motion and enter an Order

dismissing the First Amended Complaint against the SV ARX Defendants.

Respectfully submitted,

s/ Martha L. Boyd

Martha L. Boyd (Ohio Bar No. 0071550)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, Tennessee 37201
Telephone:  615.726.5600
Fax:  615.744.5652
mboyd@bakerdonelson.com

Mark D. Griffin (Tenn. Bar No. 017381)*
Lori H. Patterson (Tenn. Bar No. 019848)*
Mary Wu (Tenn. Bar No. 031339)*

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Ave., Suite 2000
Memphis, Tennessee 38103
Telephone:  901.526.2000
Fax: 901.577.2303
mgriffin@bakerdonelson.com
lpatterson@bakerdonelson.com
mwu@bakerdonelson.com

*Admitted pro hac

*Counsel for Defendants Martin Angiulli,
Angiulli, Inc., Kentucky Regional Center,
LLC d/b/a Midwest EB-5 Regional Center,
SV ARX, LLC, Dante Bella, LLC, and
Jeffrey Jacobs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 25, 2016, a true and exact copy of the foregoing was filed electronically and notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, as follows:

Christopher D Cathey
Porter Wright Morris & Arthur LLP
250 East Fifth Street, Suite 2200
Cincinnati, OH 45202
ccathey@porterwright.com

*Counsel for Plaintiffs*

Jennifer K. Nordstrom
Garvey Shearer, PSC
11260 Chester Road, Suite 110
Cincinnati, OH 45246
jnordstrom@garveyshearer.com

Mason N. Floyd
Clark Hill PLC
135 South LaSalle Street, Suite 3200
Chicago, IL 60603
mfloyd@clarkhill.com

Leigh D. Roadman
Clark Hill PLC
135 South LaSalle Street, Suite 3200
Chicago, IL 60603
lroadman@clarkhill.com

*Counsel for Terry Chan & Gary Chan*

s/ Martha L. Boyd
_____

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JIAXI HU, MENGFANG LI, XIAOYAN WU,
WEI REN, RUIMIN CHEN, JIANLI DU,
JIMEI ZHANG, ZHENPING HAO, JIE CIU,
AND GUIYING WANG,

                        Plaintiffs,

v.                                         Case No. 1:15-cv-709-SSB-SKB

TERRY CHAN, GARY CHAN, MARTIN
ANGIULLI, ANGIULLI, INC., KENTUCKY
REGIONAL CENTER, LLC D/B/A
MIDWEST EB-5 REGIONAL CENTER, SV
ARX, LLC, DANTE BELLA, LLC AND
JEFFREY JACOBS

                        Defendants.

## **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Martha L. Boyd (Ohio Bar No. 0071550)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, Tennessee 37201
Telephone: 615.726.5600
Fax: 615.744.5652
mboyd@bakerdonelson.com

Mark D. Griffin (Tenn. Bar No. 017381)*
Lori H. Patterson (Tenn. Bar No. 019848)*
Mary Wu (Tenn. Bar No. 031339)*

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Ave., Suite 2000
Memphis, Tennessee 38103
Telephone: 901.526.2000
Fax: 901.577.2305
mgriffin@bakerdonelson.com
lpatterson@bakerdonelson.com
mwu@bakerdonelson.com

*Admitted pro hac

*Counsel for Defendants Martin Angiulli, Angiulli, Inc., Kentucky Regional Center, LLC d/b/a Midwest EB-5 Regional Center, SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs*

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ........................................................................ 4

FACTUAL BACKGROUND .................................................................................. 7

STANDARD OF REVIEW .................................................................................. 10

LAW & ARGUMENT .......................................................................................... 11

    I.    Plaintiffs make no allegations against Dante Bella, LLC or Angiulli, Inc.. .................... 11

    II.    Plaintiffs have failed to state a cause of action for breach  of contract. .......................... 12

        A.    The PPM is not a contract........................................................................... 12

        B.    Martin Angiulli, Angiulli, Inc., Dante Bella, LLC, and Jeffrey Jacobs are not parties to the LPA and SV ARX has never been a general partner. .................................................. 13

        C.    Plaintiffs have not adequately alleged a breach of contract against KRC.................. 14

    III.    Plaintiffs have failed to state a cause of action for breach  of fiduciary duty. .............. 14

        A.    Plaintiffs have failed to make any specific allegations alleging breach of fiduciary duty against any specific Defendant. .................................................................................... 15

        B.    No fiduciary relationship exists between Plaintiffs and Martin Angiulli, Angiulli, Inc., SV ARX, LLC, Dante Bella, LLC or Jeffrey Jacobs.................................................. 15

    IV.    Plaintiffs have failed to state a cause of action for  conversion. .................................... 17

    V.    Plaintiffs have failed to state a cause of action for  common law Fraud or securities fraud. 18

        A.    Plaintiffs have failed to allege fraud with the requisite particularity. ........................ 18

        B.    Plaintiffs' claim for securities fraud is time-barred................................................. 19

        C.    Plaintiffs' purchases of units in a limited partnership are not "securities." .............. 20

        D.    Plaintiffs fail to plead the elements of a claim for fraud or securities fraud. ............ 21

            i.    Plaintiffs have not sufficiently alleged that the SV ARX Defendants made  material misrepresentations........................................................................................ 22

            ii.    Plaintiffs cannot allege reasonable reliance......................................................... 23

            iii.    Plaintiffs have not sufficiently alleged that any damages were caused by  the alleged misrepresentations. ................................................................................ 27

      iv.    Plaintiffs have not properly alleged scienter.............................................................. 28

VI.    Plaintiffs have failed to state a cause of action for gross negligence............................ 29

    A.    Martin Angiulli, Angiulli, Inc., SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs do not owe a duty of care to Plaintiffs. ...................................................................... 29

    B.    Plaintiffs' gross negligence claim is barred by the economic-loss rule. .................... 30

VII.    Plaintiffs have failed to state a cause of action for unjust enrichment/quantum meruit. 31

VIII.    Plaintiffs have failed to state a cause of action for civil conspiracy........................... 31

    A.    Plaintiffs have failed to allege an underlying unlawful act. ........................................ 32

    B.    Plaintiffs have failed to sufficiently allege damages to state a claim for conspiracy. 32

IX.    Piercing the corporate veil is not a cause of action. ........................................................ 33

CONCLUSION........................................................................................................................... 33

Martin Angiulli, Angiulli, Inc., Kentucky Regional Center, LLC d/b/a Midwest EB-5

Regional Center, ("KRC"), SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs, (collectively

the "SV ARX Defendants"), through undersigned counsel, pursuant to Federal Rule of Civil

Procedure 12(b)(6), respectfully move this Court to dismiss the First Amended Complaint

("FAC") against the SV ARX Defendants.

## <u>SUMMARY OF THE ARGUMENT</u>

Plaintiffs have failed to state a cause of action against the SV ARX Defendants.

Plaintiffs are limited partners in KRC, Fund I, L.P., ("the Fund"), an entity which was created to

lend funds for the redevelopment of the Short Vine Entertainment District in Cincinnati, Ohio.

Plaintiffs have brought suit against the SV ARX Defendants seeking a refund of their capital

contributions into the Fund, in the face of numerous and explicit disclosures of the very risks

about which they now complain.   In fact the possibility of a complete loss of funds or,

alternatively, lack of access to these funds for a very extended amount of time was repeatedly

disclosed to Plaintiffs since these funds were being loaned to an ongoing construction and

redevelopment project, which inherently will face delays and other market issues beyond

anyone's control.  Yet, Plaintiffs are attempting to use this lawsuit to turn the SV ARX

Defendants into guarantors of their financial decisions. For this reason and all of the reasons

explained herein, this Court should dismiss Plaintiffs' FAC and enter judgment against them.

As an initial matter, in addition to improperly lumping the conduct of "all defendants"

together by generally alleging that "defendants" harmed the Plaintiffs, the FAC makes no

allegations against Angiulli, Inc. or Dante Bella, LLC and these entities should be dismissed for

failure to state a claim. *See Aaron v. Durrani*, Nos. 1:13–cv–202, 1:13–cv–214, 2014 WL

996471, *3 (S.D. Ohio Mar. 13, 2014); *see* Argument I, p. 11.

Plaintiffs have plainly failed to state any of their causes of action against the SV ARX Defendants: breach of contract, breach of fiduciary duty, common law fraud, conversion, unjust enrichment/quantum meruit, gross negligence, securities fraud, civil conspiracy, and piercing the corporate veil (Martin Angiulli).

*First*, Plaintiffs cannot state a cause of action for breach of contract against the SV ARX Defendants because Plaintiffs have failed to identify any binding contracts which the SV ARX Defendants have allegedly breached because 1) the Private Placement memorandum is not a binding contract; 2) Martin Angiulli, Angiulli, Inc., Dante Bella, LLC, and Jeffrey Jacobs are not parties to the Limited Partnership Agreement and SV ARX has never been a general partner; and 3) Plaintiffs have not adequately alleged a breach of contract or damages against KRC. *See McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*, 339 F.3d 1087, 1092 (9th Cir. 2003); *Am. Rock Mechanics, Inc. v. Thermex Energy Corp.*, 608 N.E. 2d 830, 833 (Ohio Ct. App. 1992); *see* Argument II, p. 12.

*Second*, Plaintiffs have failed to state a cause of action for breach of fiduciary duty because 1) Plaintiffs have failed to make any specific allegations alleging breach of fiduciary duty against any specific Defendant and 2) Martin Angiulli, Angiulli, Inc., SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs do not owe any duty to Plaintiffs. *Aaron v. Durrani, Nos.* 1:13–cv–202, 1:13–cv–214, 2014 WL 996471, *3 (S.D. Ohio Mar. 13, 2014); *Hoyt v. Nationwide Mut. Ins. Co.*, 2005 WL 3220192, *7 (Ohio Ct. App. Dec. 1, 2005); *see* Argument III, p. 14.

*Third*, Plaintiffs cannot state a cause of action for conversion because the Plaintiffs are essentially asserting a claim for indebtedness as a result of a creditor-debtor relationship between the Fund and SV ARX, LLC. *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 82 (S.D. Ohio 1996); *see* Argument IV, p. 17.

*Fourth*, Plaintiffs cannot state a cause of action for common law fraud or securities fraud because 1) Plaintiffs have failed to plead the elements with the requisite particularity and 2) Plaintiffs have failed to properly pled the elements of either claim. *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir. 1988); *In re SmarTalk Teleservices Securities, Inc. Litigation*, 124 F.Supp.2d 505, 511 (S.D. Ohio 2000); *Benoay v. Decker*, 517 F. Supp. 490, 493 (E.D. Mich. 1981).  With respect to the securities fraud claim, Plaintiffs have failed to state a cause of action because 1) Plaintiffs' claim is time-barred by the applicable statute of limitations and 2) Plaintiffs' purchase of limited partnership interests are not "securities" as defined by the federal securities laws. *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 653 (2010); *United Housing Fund, Inc. v. Forman*, 421 U.S. 837, 852-53 (1975); *see* Argument V, p. 18.

*Fifth*, Plaintiffs have failed to state a cause of action for gross negligence because Martin Angiulli, Angiulli, Inc., SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs do not owe any duty to Plaintiffs and 2) Plaintiffs' claim is barred by the economic-loss rule.  *Advantage Renovations, Inc. v. Maui Sands Resort, Co.*, No. E–11–040, 2012 WL 1493826, at *7 (Ohio Ct. App. Apr. 27, 2012); *Ineos USA L.L.C. v. Furmanite Am., Inc.*, No. 1–14–06, 2014 WL 5803042, at *6 (Ohio Ct. App. Nov. 10, 2014); *see* Argument VI, p. 29.

*Sixth*, Plaintiffs cannot state a cause of action for unjust enrichment/quantum meruit because there is already a governing contract under which Plaintiffs, through the Fund and the General Partner, could seek relief.  *See Glimcher Co., LLC v. Deavers*, 2010 WL 1610709, *10 (S.D. Ohio Apr. 19, 2010); *see* Argument VII, p. 31.

*Seventh*, Plaintiffs have failed to state a cause of action for civil conspiracy because 1) Plaintiffs have not sufficiently alleged an underlying unlawful act and 2) Plaintiffs have failed to allege damages attributable to the civil conspiracy itself.  *Morrow v. Reminger & Reminger Co.,*

*L.P.A.*, 915 N.E.2d 696, 711-12 (Ohio Ct. App. 2009); *Avery v. Rossford, Ohio Transportation Improvement Dist.*, 145 Ohio App.3d 155, 165, 762 N.E.2d 388 (Ohio 2001); *see* Argument VIII, p. 31.

*Eighth*, Plaintiffs may not being a cause of action for "piercing the corporate veil" since this is not a cognizable claim under the law. *Boehnlein-Pratt v. Ventus Corp.*, No. 14CA011, 2015 WL 4170354, at *6 (Ohio Ct. App. July 10, 2015); *Trinity Health System v. MDX Corp.*, 907 N.E. 2d 746, 754 (Ohio Ct. App. 2009); *see* Argument IX, p. 33.

For the foregoing reasons, Plaintiffs' First Amended Complaint against the SV ARX Defendants should be dismissed with prejudice.

## FACTUAL BACKGROUND

This lawsuit arises from Plaintiffs' subscription into a limited partnership which was formed to lend funds for the redevelopment of the Short Vine Entertainment District in Cincinnati, Ohio.  Plaintiffs bring this lawsuit to essentially seek a refund on their venture and turn Defendants into guarantors of their financial decisions, even though most, if not all, of the SV ARX Defendants had no special relationship with Plaintiffs.

This saga began in 2010 when Terry and Gary Chan ("the Chans") organized KRC and formed the Fund as a limited partnership.  (FAC, ¶¶ 25, 30.)  The Fund was to supposed to "fund" a real estate redevelopment project (the "Project") which involved the acquisition, renovation, and management of several planned retail, restaurant, and office establishments in the 2600 block of Short Vine Street.  (FAC, ¶ 31.)  The Fund, acting as lender to the developers, raised capital for the Project through the use of EB-5 investments from immigrant investors under the EB-5 Visa Program administered by the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS") (FAC, ¶ 32.)  The EB-5 Visa program allows foreign citizens to invest capital in U.S. based job-creating enterprises in return for conditional,

and then ultimately permanent, residency and the issuance of a green card. Foreign nationals were thus given the opportunity to purchase a limited partnership interest in the Fund, and the limited partners understood that their capital contributions would be loaned to the Project under the management of the developer, SV ARX, LLC. (FAC, ¶ 32.) Importantly, the EB-5 Program requires that the capital contributed must be completely "at risk;" USCIS does not permit capital contributions to be subject to any type of guarantee. (FAC, Exhibit A, D.E. #4-1, p. 10.) From the inception, this was fully disclosed to Plaintiffs along with the fact that a loss of their entire investment was wholly possible. (FAC, Exhibit A, D.E. #4-1, pp. 3, 10.)

Upon contribution of capital, the investor became a limited partner of the Fund; the general partner of the Fund was KRC, then owned by the Chans. (FAC, ¶¶ 38, 47, 120.) Having an at risk investment in an approved job-creating business enterprise, immigrant investors would be eligible to apply for conditional residency through an I-526 petition. (FAC, ¶¶ 19, 21-22.)

SV ARX, LLC ("SV ARX") is a limited liability corporation and Martin Angiulli is the sole member. (FAC, ¶ 6.) SV ARX hired Jeff Jacobs to be the project manager to oversee the development of the Project. (FAC, ¶ 11.) Martin Angiulli's company, Angiulli, Inc., owned the real estate in the 2600 block of Short Vine Street that would become the development. (FAC, ¶ 8.) It was contemplated by all that the Fund would eventually purchase these properties from Angiulli, Inc. (*Id.*)

The Chans managed the process of soliciting EB-5 investors in China in order to raise capital to be loaned to the Project through the Fund. (FAC, ¶ 33.) The Chans hired a Chinese agent and made presentations to potential investors where the Chans made the representations alleged in the First Amended Complaint. (FAC, ¶¶ 34-35, 37.) At no point did any of the SV ARX Defendants make any representations to Plaintiffs. (FAC, ¶ 35.)

A PPM was issued by the Fund in September of 2010.  (FAC, ¶ 38.)  In the PPM, the investors were told that "[n]either the GP nor the Fund has authorized any person to provide any information or to make any representations except to the extent contained in this memorandum." (Exhibit A, D.E. #4-1, p. 2.)  The PPM further informed potential investors "[i]f any such representations are given or made, such information and representations must not be relied upon as having been authorized by the Fund or the GP."  (*Id.*)

Once the Fund started receiving capital contributions from investors, the general partner, KRC,  loaned the funds to SV ARX to begin work on the Project.  (FAC, ¶ 48.)  As the FAC alleges, "the Chans did not hold the Plaintiffs funds in an escrow account and began spending the money as soon as it was deposited into KRC's operating account."  (*Id.*)   In December of 2012, the Chans stopped loaning money to SV ARX in violation of the loan documents between the Fund and SV ARX.  (FAC, ¶ 62.)  SV ARX and Martin Angiulli filed a lawsuit against the Chans and the Fund as a result.  (*Id.*)

In October of 2013, Plaintiffs were notified that the progress on the Project was stalled and the funds previously loaned to SV ARX had been used up.  (FAC, ¶ 65.)  At this point, Plaintiffs knew their capital contributions had not been kept in escrow, since their I-526 applications had not been approved and nine out of ten would not be approved until January 2014.  (FAC, ¶ 66.)

Dante Bella, LLC purchased KRC from the Chans in January of 2014 as part of the settlement of the 2012 lawsuit.  (FAC, ¶¶ 6, 64.)  Martin Angiulli is a member of Dante Bella, LLC.  (FAC, ¶ 6.)  Martin Angiulli had no legal ownership or control over any entity which owned KRC prior to January of 2014.  (FAC, ¶ 64.)  By this time, Plaintiffs' capital

contributions had already been loaned to SV ARX by KRC through the Chans as previous owners, per the loan agreements, and had been spent on the Project already.  (FAC, ¶ 65.)

Due to the actions of the previous owners of KRC, USCIS terminated KRC's designation as a regional center.  (FAC, ¶ 69.)   Following the termination, the nine previously approved I-526 petitions were revoked and Plaintiff Guiying Wang's I-526 application was denied.  (FAC, ¶ 71.)  Plaintiffs were thus unable to receive visas for conditional residency.  (FAC, ¶ 72.)  Plaintiffs' immigration status, however, did not affect the investments themselves.

Taking these facts as true, Plaintiffs' FAC fails to state claims against the SV ARX Defendants, many of whom have no relationship with Plaintiffs, made no representations to Plaintiffs and owed no duty to Plaintiffs.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The Court must construe the complaint in the light most favorable to the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions.  *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).

Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  But the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  In short, a complaint's factual allegations "must be enough to raise a right to relief

above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  It must

contain "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

## LAW & ARGUMENT

None of Plaintiffs' claims asserted in the FAC against the SV ARX Defendants survive a

motion to dismiss.  Plaintiffs have failed to state a cause of action against any of the SV ARX

Defendants for breach of contract, breach of fiduciary duty, common law fraud, conversion,

unjust enrichment/quantum meruit, gross negligence, securities fraud or civil conspiracy.

## I.  PLAINTIFFS MAKE NO ALLEGATIONS AGAINST ANGIULLI, INC. OR DANTE BELLA, LLC.

As an initial matter, there are no direct allegations made against Angiulli, Inc. or Dante

Bella, LLC that give rise to <u>any</u> cause of action.  The FAC is completely devoid of any

allegations of wrongdoing against these Defendants that resulted in an injury to Plaintiffs.  The

only paragraphs in the FAC which address these two defendants are merely descriptive,

identifying these entities as owned and operated by Martin Angiulli.  (*See* FAC, ¶¶ 6, 31, 53,

111-117.)   Therefore, on the face of the FAC, Plaintiffs have failed to allege any wrongful

conduct on the part of Angiulli, Inc. or Dante Bella, LLC and these two defendants should be

dismissed with prejudice from this suit.

To the extent Plaintiffs attempt to rely on their "lumping" together of defendants

collectively in the FAC as an argument against dismissal, such reliance is improper.  As this

Court has recently and correctly recognized, under Federal Rule of Civil Procedure 8, a plaintiff

must provide proper notice to *individual* defendants of what they have allegedly done wrong.

*See Aaron v. Durrani*, Nos. 1:13-cv-202, 1:13-cv-214, 2014 WL 996471, *3 (S.D. Ohio Mar. 13,

2014) (ruling that a proposed amended complaint which failed to specify the harms allegedly

caused by each defendant  violated Federal Rule of Civil Procedure 8 and therefore denying a

motion to amend).  As *Aaron* recognized and held, Plaintiffs may not simply make broad allegations against "all named defendants." *Id.*   For these reasons, Plaintiffs have failed to state a claim against Angiulli Inc. or Dante Bella LLC.

## II.    PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR BREACH OF CONTRACT.

Plaintiffs fail to state a cause of action for breach of contract against any of the SV ARX Defendants.  Under Ohio law, in order to establish a breach of contract claim, a party must establish four elements: "(1) the existence of a binding contract or agreement; (2) the non-breaching party performed its contractual obligations; (3) the other party failed to fulfill its contractual obligations without legal excuse; and (4) the non-breaching party suffered damages as a result of the breach." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1266 (Ohio Ct. App. 1996).  Here, Plaintiffs identify the contracts which have allegedly been breached as the PPM and the Limited Partnership Agreement LPA.  However, the PPM is not a contract and will not support a breach of contract action against any Defendant.   Further, Plaintiffs have failed to identify <u>any</u> actionable breach of  the LPA between Plaintiffs and Martin Angiulli, Angiulli, Inc., KRC, SV ARX, Dante Bella, LLC, or Jeffrey Jacobs.

### A.    The PPM is not a contract.

The PPM is not a binding agreement between parties and there can be no action for breach of provisions in a PPM.  It is well settled that a private placement memorandum which does no more than disclose information about an investment opportunity is not a contract between any parties.  *See McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*, 339 F.3d 1087, 1092 (9th Cir. 2003); *Mazzolin v. Lehman Bros. Real Estate Fund III, L.P.*, No. 1–13–1275, 2015 WL 729659, at *7 (Ill. App. Ct. Feb. 18, 2015); *Atl. St. John, LLC v.*

*Yoemans*, 799 N.Y.S. 2d 158, 2004 WL 2941402, *4-5 (N.Y. Sup. Ct. Oct. 21, 2004). Thus, Plaintiffs' breach of contract claim based on alleged breach of provisions in the PPM must fail.

**B.   Martin Angiulli, Angiulli, Inc., Dante Bella, LLC, and Jeffrey Jacobs are not parties to the LPA and SV ARX has never been a general partner.**

It is well established that "a contract is binding only upon the parties to the contract and those in privity with them …." *Am. Rock Mechanics, Inc. v. Thermex Energy Corp.*, 608 N.E.2d 830, 833 (Ohio Ct. App. 1992). Thus, courts in Ohio often dismiss claims for breach of contract asserted against those who not parties to the contract in question. *See*, *e.g.*, *Samadder v. DMF of Ohio, Inc.*, 798 N.E.2d 1141, 1147 (Ohio Ct. App. 2003) (dismissing breach of employment contract claim against individual defendants where employment contracts were between plaintiff and corporate defendants).

The LPA is an agreement between Kentucky Regional Center, LLC d/b/a Midwest EB-5 Regional Center, SV ARX, LLC as the Initial Limited Partner, and any future Limited Partners. Thus, there can be no cause of action for breach of contract based on the LPA against Martin Angiulli, Angiulli, Inc., Dante Bella, LLC, or Jeffrey Jacobs.

To the extent Plaintiffs rely on SV ARX's role as an initial limited partner in the LPA as a basis for asserting a breach of contract claim against SV ARX, this argument is unavailing. SV ARX as an initial limited partner of the Fund had the same interests as Plaintiffs (also limited partners). Under the clear terms of the LPA, SV ARX, as an initial limited partner, owed no contractual duties to its fellow limited partners and withdrew from the partnership all together once Plaintiffs were admitted to the Partnership. (FAC, Exhibit I, D.E. #4-9, pp. 4-5.) All contractual obligations flowed between the general partner and the limited partners. Thus, if there was a breach of the LPA, SV ARX and Plaintiffs would have the same entitlement to relief,

as they were all limited partners. Plaintiffs thus cannot state a cause of action for breach of contract action against SV ARX.

      **C.**     **Plaintiffs have not adequately alleged a breach of contract against KRC.**

KRC is a party to the LPA and was the initial general partner. However, the allegations of general mismanagement in the FAC do not give rise to a cause of action for breach of contract because the LPA specifically provides that the "General Partner shall have no personal liability for the repayment of the capital contribution of any Limited Partner." (FAC, Exhibit I, D.E. #4-9, p. 5.) This specific provision precludes the Plaintiffs' claim for a return of their capital contribution. This is especially true given that the allegations of the FAC make it clear any alleged breach of the LPA, *i.e.,* failing to conduct the affairs of the Partnership in the best interest of the Partnership, occurred prior to the change in ownership of KRC.

According to the FAC, any mismanagement of the affairs of the Fund was completed, at the latest, by October 2013, when, as the Plaintiffs have alleged, "the Project was in shambles and the Plaintiffs' funds were gone." (FAC, ¶ 65.) Because the subsequent owners did not purchase KRC until January of 2014, there can be no liability as to the current owners of KRC for alleged misconduct occurring prior to that date. Accordingly, Plaintiffs have failed to state a cause of action for breach of contract against SV ARX Defendants.

**III.**    **PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY.**

Similarly, Plaintiffs have failed to state a cause of action for breach of fiduciary duty against any of the SV ARX Defendants. A breach of fiduciary duty claim has three elements: (1) the existence of a duty arising from a fiduciary relationship, (2) a failure to observe such duty, and (3) an injury proximately resulting therefrom. *See Strock v. Pressnell,* 527 N.E.2d 1235, 1243 (Ohio 1988); *McConnell v. Hunt Sports Ent.,* 725 N.E.2d 1193, 1215 (Ohio Ct. App. 1999).

Plaintiffs have failed to show the existence of a fiduciary relationship with Martin Angiulli, Angiulli, Inc., SV ARX, LLC, Dante Bella, LLC or Jeffrey Jacobs. Plaintiffs have also failed to show how KRC, under its current ownership, failed to observe its fiduciary duty.

### A. Plaintiffs have failed to make any specific allegations alleging breach of fiduciary duty against any specific Defendant.

With regard to the fiduciary duty claim, Plaintiffs again lump together all "Defendants" without making any specific allegations as to which Defendants specifically breached any fiduciary duty. Under Federal Rule of Civil Procedure 8, a plaintiff must provide proper notice to individual defendants of what they have allegedly done wrong. *See Aaron*, 2014 WL 996471, at *3 (ruling that a proposed amended complaint which failed to specify the harms allegedly caused by each defendant violated Federal Rule of Civil Procedure 8 and therefore denying a motion to amend). As *Aaron* recognized and held, Plaintiffs may not simply make broad allegations against "all named defendants." *Id*. For these reasons, Plaintiffs have failed to state a claim against any particular Defendant for breach of fiduciary duty.

### B. No fiduciary relationship exists between Plaintiffs and Martin Angiulli, Angiulli, Inc., SV ARX, LLC, Dante Bella, LLC or Jeffrey Jacobs.

A fiduciary relationship is a relationship "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence acquired by virtue of this special trust." *Ed Schory & Sons, Inc. v. Society Nat'l. Bank*, 662 N.E.2d 1074, 1081 (Ohio 1996). A party cannot, however, *unilaterally* elevate a relationship to a fiduciary level. *Cf. Cedar View, Ltd. v. Colpetzer,* No. 5:05-CV-007822006, WL 456482, *2–3, (N.D. Ohio Feb. 24, 2006). "[B]oth parties must understand that a special trust or confidence has been reposed." *Id.* at *3 (quoting *Anchor v. O'Toole,* 94 F.3d 1014, 1024 (6th Cir.1996)). No fiduciary relationship is created, moreover, where the parties interact at "arms length [sic], each protecting his own interest." *Umbaugh Pole Bldg. Co. v. Scott,* 390 N.E.2d 320, 323 (Ohio

15

1979).  Under such circumstances, it would be unreasonable for either party to expect the other

to act as their fiduciary.  *See id.*  Thus, where no evidence that any special level of trust or

confidence over and above an ordinary arm's length business relationship exists, there can be no

fiduciary relationship.  *Hoyt v. Nationwide Mut. Ins. Co.*, No. 04AP-941, 2005 WL 3220192, *7

(Ohio Ct. App. Dec. 1, 2005).

Here, Plaintiffs have failed to allege the existence of a fiduciary relationship with Martin

Angiulli, Angiulli, Inc., SV ARX, LLC, Dante Bella, LLC or Jeffrey Jacobs.  The FAC does not

identify any formal agreement with any of these Defendants which would give rise to a fiduciary

relationship.  Moreover, Plaintiffs have not alleged that both sides mutually understood and

entered into any alleged relationship in which special trust and confidence was reposed in order

to create an informal fiduciary agreement.  Instead, Plaintiffs unilaterally fabricate and allege the

existence of a fiduciary relationship with these Defendants without any factual support for the

existence of such a relationship that would give rise to a cause of action under Ohio law.  In fact,

there are no allegations in the FAC that Martin Angiulli, Angiulli, Inc., SV ARX, LLC, Dante

Bella, LLC or Jeffrey Jacobs even interacted or communicated with Plaintiffs.

Moreover, the FAC clearly alleges that Plaintiffs were limited partners of the Fund which

loaned money to SV ARX to finance the job-creating activities of the Project.  (FAC, ¶ 32.)  The

described interaction therefore amounts to no more than an ordinary creditor-debtor relationship,

with both sides acting in their own interest.   Thus, any relationship between Plaintiffs and any of

these Defendants was no more than an ordinary arm's length business relationship, and,

accordingly, no fiduciary relationship exists.  Plaintiffs thus fail to establish an essential element

of a breach of fiduciary duty claim against Martin Angiulli, Angiulli, Inc., SV ARX, LLC, Dante

Bella, LLC, and Jeffrey Jacobs.

## IV. PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR CONVERSION.

Plaintiffs have stated no cause of action for conversion under Ohio law.  In Ohio, a tort claim for common-law conversion is one that alleges the defendant wrongfully exercised dominion or control over the property of another, in denial of or under a claim inconsistent with his rights.  *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.*, 493 N.E.2d 289, 292 (Ohio Ct. App. 1985).  The elements of a conversion cause of action are: (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of the plaintiff's property rights; and (3) damages.  *Dice v. White Family Cos.*, 878 N.E.2d 1105, 1109 (Ohio Ct. App. 2007).

Under Ohio law, "[a]n action will not lie for the conversion of a mere debt . . . ."  *Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 761 (S.D. Ohio 2013)(internal citations and quotations omitted); *see also Fairbanks Mobile Wash, Inc. v. Hubbell*, Nos. 2007-05-062, 2007-05-068, 2009 WL 294936, *7 (Ohio Ct. App. Feb. 9, 2009).  "[W]here there is only a relationship of debtor and creditor, not an obligation to return identical money, an action for conversion of the funds representing the indebtedness will not lie against the debtor."  *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 82 (S.D. Ohio 1996); *accord Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 768 (N.D. Ohio 2013); *Fairbanks Mobile Wash*, 2009 WL 294936, at *7.

As alleged in the FAC, Plaintiffs are improperly attempting to assert a conversion claim as to their contributions to the Fund, which were underlined loaned to SV ARX.  No action can lie for a conversion claim as to plaintiffs who are merely creditors who have loaned money to the defendant.  Further, as the PPM and Subscription Agreements make clear, the SV ARX

17

defendants had no obligation to return identical money to the Plaintiffs. On these facts, a conversion claim is not available to them and should be dismissed as a matter of law.

## V. PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR COMMON LAW FRAUD OR SECURITIES FRAUD.

### A. Plaintiffs have failed to allege fraud with the requisite particularity.

Parties pleading fraud are obligated to place defendants on notice of the "precise misconduct" with which they are accused. *U.S., ex rel SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 503 (6th Cir. 2008). The purpose of Rule 9(b)'s particularity requirement "is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir.1988); *see also Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir. 1999).

Under Federal Rule of Civil Procedure 9(b), a plaintiff's complaint must "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Indiana State Dist. Council of Laborers and Hod Carriers Pension Welfare Fund v. Omnicare, Inc.,* 583 F.3d 935, 942-3 (6th Cir. 2009) (internal citations omitted.). At a minimum, a plaintiff "must allege the time, place and contents of the misrepresentations upon which they relied." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). A complaint may not rely on blanket allegations against all defendants because "each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *Benoay v. Decker*, 517 F. Supp. 490, 493 (E.D. Mich. 1981) (internal quotations and citations omitted); *see also Heinrichs v. Dunn*, No. 2:13-CV-00929, 2014 WL 3572404, *10 (S.D. Ohio July 21, 2014). Allegations of securities fraud must also be

stated with particularity. *In re Comshare Inc. Sec. Litig.,* 183 F.3d 542, 548 (6th Cir. 1999) ("Allegations of securities fraud must . . . satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure."); *In re SmarTalk Teleservices Securities, Inc. Litigation*, 124 F.Supp.2d 505, 511 (S.D. Ohio 2000) ("As with all fraud claims, allegations of securities fraud must satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.")

Plaintiffs fail to meet these heightened burdens because their fraud allegations are vague. The FAC alleges the following misrepresentations in relation to Plaintiffs' purchase of the limited partnership units: 1) that their funds would remain in escrow until the I-526 applications were approved; 2) that there would be other, non-EB-5 funding in the Project; and 3) that the investments were backed by a government guarantee. However, Plaintiffs once again improperly lump all "Defendants" as making material misrepresentations to Plaintiffs regarding their investments and having knowledge of their falsity. (FAC, ¶¶ 87-90; 105.) Plaintiffs do not sufficiently allege the fraudulent conduct attributable to each specific defendant. This is insufficient under the pleading standards applicable to both fraud and securities fraud.

### B.    Plaintiffs' claim for securities fraud is time-barred.

Notwithstanding the issues with pleading, Plaintiffs must bring an action for securities fraud within two years after the discovery of facts constituting the violation. 28 U.S.C. § 1658(b)(1). The limitations period in § 1658(b)(1) begins to run once the plaintiff discovered or a reasonably diligent plaintiff would have "discover[ed] the facts constituting the violation"— whichever comes first. *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 653 (2010).

Under the "inquiry notice" standard applicable to securities fraud claims, Plaintiffs were under a duty to begin investigating the possibility of fraud when they became aware of suspicious facts, or "storm warnings" of such facts. *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). The dates of such

"storm warnings" are helpful in identifying when discovery of the facts constituting the violation occurred. *Merck*, 559 U.S. at 653. For example, the date that a plaintiff is put on notice regarding the potential falsity of an alleged representation is likely the date upon which his cause of action for securities fraud accrues. *Id.* at 649-50 ("We recognize that certain statements are such that to show them false is normally to show scienter as well. It is unlikely, for example, that someone would falsely say 'I am not married' without being aware of the fact that his statement is false.").

In this case, Plaintiffs' FAC recaps the allegations in the litigation between the Fund and SV ARX that funds had been improperly diverted, which were pled in December of 2012 and January of 2013. (*See* FAC, ¶¶ 62-63.) These allegations, made in a public court filing, should have put any reasonable investor on notice of the very claims that are being pled in this action. Further, Plaintiffs openly allege that in October of 2013, they knew that the money in the project had been spent and the Project was stalled. (*See* FAC ¶ 65.) Based on this allegation alone, any alleged misrepresentation regarding holding funds in escrow or about the alleged guarantees of the project were known to Plaintiffs no later than October 2013. Plaintiffs' cause of action for securities fraud thus accrued, at the latest, in October of 2013, making any timely complaint due no later than October of 2015. Yet, Plaintiffs did not file their Complaint until November 4, 2015. Accordingly, Plaintiffs' securities fraud claim is barred as a matter of law by the statute of limitations.

### C. Plaintiffs' purchases of units in a limited partnership are not "securities."

Plaintiffs' cause of action for securities fraud further fails because the investments in question do not involve "securities" as that term is defined by the federal securities laws. Under the seminal Supreme Court case of *Securities and Exchange Commision v. W.J. Howey Co. et al,* courts are instructed to determine "whether the scheme involves an investment of money in a

common enterprise with profits to come solely from the efforts of others." 328 U.S. 293, 301 (1946). Additionally, *Howey* requires that investors show that "profits [are sought] on their investment" and not just from "the scheme in which they invest." *SEC v. Edwards*, 540 U.S. 389, 394 (2004). In other words, if the primary motivating factor for the investment is something other than a direct economic profit from the investment, then the transaction does not involve a "security." *See United Housing Fund, Inc. v. Forman*, 421 U.S. 837, 852-53 (1975) (finding that the transaction was not a security where the primary motivating factor for the investment was a desire to obtain a place to live rather than the seeking of any direct economic profit from the investment).

Here, very clearly, the primary motivating factor for Plaintiffs to subscribe to the Fund and contribute capital was their desire to obtain conditional residency status in the United States through the EB-5 Program. Indeed, the PPM states that "[t]he primary investors targeted by this offering are immigrants seeking to enter the United States under the fifth employment based visa preference category ("EB-5")." (Exhibit A, D.E. 4-1, p. 1.) Any return to be earned, which at best .05% of the interest paid on the loans made by the Fund, was miniscule and was not the motivating factor for the investment. Since Plaintiffs' primary motivating factor for the investment was their desire to obtain a visa to enter the United States, their contribution into the Fund did not involve the purchase of a security. Accordingly, Plaintiffs' claim for securities fraud should be dismissed as a matter of law.

> **D.** **Plaintiffs fail to plead the elements of a claim for fraud or securities fraud.**

Plaintiffs' claims for common law fraud and securities fraud also fail because they have not properly pled the elements of these claims.

"A complaint for fraud must include five elements: (1) a false representation; (2) knowledge by the person making the representation that it is false; (3) intent by the person

21

making the representation to induce the other to rely on the representation; (4) rightful reliance by the other to his detriment; and (5) an injury as a result of the reliance." *Garofalo v. Chicago Title Ins. Co.*, 661 N.E.2d 218, 224 (Ohio Ct. App. 1995).

> To establish a violation of Rule 10b–5 a plaintiff must show:
>
> (1) a misrepresentation or other fraudulent device; (2) a purchase or sale of securities in connection with the fraudulent device; (3) scienter by defendant in making the misrepresentation or omission; (4) materiality of the misrepresentation or omission; (5) justifiable reliance on the fraudulent device by plaintiff (or due diligence against it); and (6) damages resulting from the fraudulent device.

*Platsis v. E.F. Hutton & Co., Inc.,* 946 F.2d 38, 40 (6th Cir. 1991) (internal citations omitted). "Misrepresented or omitted facts are material only if a reasonable investor would have viewed the misrepresentation or omission as 'having significantly altered the total mix of information made available.'" *In re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 232 (1988) (internal quotation marks and citation omitted)). Misrepresentations are not material if the investors are privy to the truth. *Basic*, 485 U.S. at 248.

    i.   <u>Plaintiffs have not sufficiently alleged that the SV ARX Defendants made material misrepresentations.</u>

Plaintiffs have failed to allege essential elements of a fraud or a securities fraud claim. First, Plaintiffs have not properly alleged that any of the SV ARX Defendants made material misrepresentations. Plaintiffs allege that the following misrepresentations were made: 1) that their funds would remain in escrow until the I-526 applications were approved; 2) that there would be other, non-EB-5 funding in the Project; and 3) that the investments were backed by a government guarantee. (FAC, ¶¶ 35, 37, 39.) However, Plaintiffs fail to allege that any of the SV ARX Defendant made these alleged misrepresentations. (*Id.*) Under both common law fraud and federal securities fraud, an essential element is that the defendant made the representation.

*See Platsis*, 946 F.2d at 40 (requiring scienter of the defendant making the representation to be an essential element of claim); *see Garofalo*, 661 N.E.2d at 224 (holding essential element of fraud claim to be person making the representation knowingly making a false statement with the intent to induce reliance).  SV ARX Defendants cannot be held accountable for the alleged fraudulent misrepresentations of those  over whom they have no control.

<blockquote>ii.      <u>Plaintiffs cannot allege reasonable reliance.</u></blockquote>

Based on disclosures set forth in the PPM and the Subscription Agreements, Plaintiffs cannot claim that they reasonably relied on oral representations regarding the Project, when the PPM stated explicitly that no representations other than those in the PPM could reasonably be relied upon.  (FAC, Exhibit A, D.E. 4-1, p. 2.)  In determining whether reliance is justifiable, courts consider such factors as the sophistication of the parties, the nature of their relationship, their access to relevant information, whether the plaintiff initiated the transaction or sought to expedite it, the nature of the alleged misrepresentation, and the content of any agreement they entered into. *See Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 921 (6th Cir. 2007) (federal securities law context).  And although not a *per se* rule, provisions directing the reader not to rely on certain representations can be a fairly convincing factor of unjustifiable reliance upon any alleged misrepresentation.  *In re Nat'l Century Fin. Enters., Inc., Investment Litigation*, 905 F. Supp. 2d 814, 823 (S.D. Ohio 2012).

Here, the following disclosures were made in the PPM:

> A purchase of Units involves a high degree of risk. For the reasons set forth in this memorandum the purchase of Units offered hereby is suitable only for certain persons who (i) can afford to <u>hold their Units for an indefinite period</u> and do not expect that they will be required to sell their Units in the foreseeable future, and (ii) <u>have a sufficient net worth to sustain a loss of their entire investment</u> in the Fund in the event such loss should occur.

(FAC, Exhibit A, D.E. 4-1, p. 3)(emphasis supplied).

***

**Risk Factors Relating to the Offering**

The purchase of the Units offered hereby involves various risks. In addition to the factors set forth elsewhere in this memorandum, investors should consider the following:

1.        The business of identifying, acquiring, operating and selling businesses and income producing real estate assets, and loaning capital to such businesses, is highly competitive and subject to numerous inherent risks, including changes in general or local economic conditions.  <u>The Project may not succeed, and InvestCo may not succeed.</u>  The GP may not succeed in identifying suitable opportunities, and the businesses identified for investment by the GP may fail.

2.        The GP will have complete discretion in identifying, acquiring and selling businesses and real estate. Partners in the Fund will not have the opportunity to evaluate the merits of any investment in any such business nor will they be able to influence the decision to make any such investment in any particular business.

3.        <u>The proceeds used from loans made by the Fund or InvestCo to, or the sale and issuance of equity to the Fund or InvestCo by, TechCo or other similar Project businesses will be used for working capital, development, sales, initiatives and other expenses that may not result in the generation of significant revenue to TechCo. TechCo may also need additional capital in the future. It is possible that TechCo may be unable to raise additional capital on terms that are attractive to or that protect the Fund.</u>  There can be no assurance that TechCo will be able to raise such additional funds.

4.        The Fund may experience a deficiency in cash flow. Revenues may be insufficient to pay expenses. The GP is not obligated to fund shortfalls in cash flows.

5.        <u>Units should only be purchased as a long-term investment and by investors who have a substantial net worth and no need for liquidity</u>.

6.        <u>There is no assurance that the Fund will be profitable or successful. Units should be purchased only by persons who can afford the entire loss of their investment.</u>

7.        There is no assurance there will be any cash distributions to the Partners. Except as otherwise provided by law, the GP will not be liable for the return of any contribution by an investor.

8.        <u>All decisions with respect to the management of the Fund will be made exclusively by the GP.</u> The Partners have no right or power to take part in the management or control of the business of the Fund. Accordingly, no person

24

should purchase any of the Units offered unless he or she is willing to entrust all aspects of the Fund to the GP.

9.      The Units have not been registered under the Act or the securities laws of any other jurisdiction, and may not be sold or transferred unless the sale is registered or qualified under the Act, the Securities Exchange Act of 1934, as amended (the "Exchange Act"), or applicable securities laws of any other jurisdiction (which, together with the Act and the Exchange Act, and all rules and regulations promulgated thereunder, are hereinafter referred to as the "Securities Laws") or unless an opinion of counsel, satisfactory to the GP and its counsel, is obtained that registration is not required. While a partner may assign his or her economic interest in the Fund, the transferee may not become a substitute partners without the approval of the GP. There is no public market for the Units, and it is not expected that a public market will develop. Adverse tax effects also may result from a transfer of Units.

10.      The GP reserves the right to purchase, or cause affiliates to purchase, Units for cash or contributions of property. These Units may be purchased at any time.

11.      The Fund may generate taxable income for the Partners without generating the necessary cash flow to allow for distributions by the Fund to the Partners to pay the tax liability.

(FAC, Exhibit A, D.E. 4-1, p. 13)(emphasis supplied).

***

**Risk Factors Relating to the EB-5 Program**

1.      Congress and/or USCIS may change the law, regulations, or interpretations of the law without notice and in a manner that may be detrimental to an investor or the Fund.

***

4.      USCIS requires proof of direct and indirect employment creation as part of the removal of conditions process. There is no assurance that the actual number of direct employees and indirect job creation will be the same as the number predicted in the economist's report. Depending on the disparity, there may be insufficient employment to remove conditional resident status.

5.      The process of obtaining conditional and permanent resident status involves several factors and circumstances which are not within the control of the Fund. These include the investor's past history and quotas established by the United States government limiting the number of immigrant visas available to qualified individuals seeking permanent resident status under the EB-5 Program. Although the Fund has been structured so that each Unit holder may maximize

eligibility for conditional and permanent residency under the EB-5 Program, no assurance can be given that each investor will obtain approval of his or her particular immigrant petition. Purchase of a Unit does not guarantee conditional or permanent residency in the United States. Furthermore, no advice can be given that conditions to permanent residency will be removed. Each prospective investor should consult competent immigration counsel to review the likelihood that the investor's immigrant petition will be granted.

6.      The investment must be at risk to qualify for the EB-5 Program. As part of the green card application, an immigrant investor must show evidence that he or she has placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk.

(FAC, Exhibit A, D.E. 4-1, p. 14.)

Additional disclosures as to the risk involved and the speculative nature of these investments were also disclosed in the Subscription Agreements.  Importantly, these agreements were signed by each of the Plaintiffs.  Included in the disclosures contained in the Subscription Agreements were the following disclosures:

The undersigned understands that the Units have not been registered under the Federal Securities Act of 1933, as amended (the "Act"), or under the securities laws of any jurisdiction, and that the Units are being offered and sold pursuant to exemptions from registration under Section 4(2) of the Act and/or Regulation D thereunder, and from applicable securities laws.  The undersigned further understands that this transaction has not been reviewed by, passed on, or submitted to the Securities and Exchange Commission (the "SEC"), nor has that agency or any other agency made any finding or determination as to the fairness of this investment, nor any recommendation or endorsement of the Units. Accordingly, the undersigned further represents and warrants to the Fund that:

1.      The undersigned understands that: (i) the Units constitute a speculative investment involving a high degree of risk of loss by the undersigned of the undersigned's investment therein, and (ii) there are substantial restrictions on the transferability of the Units. Accordingly, it may not be possible for the undersigned to liquidate the undersigned's investment in the Fund in case of emergency.

2.      The undersigned is able: (i) to bear the complete loss of this investment, and (ii) to hold the Units for an indefinite period of time. The undersigned represents that the undersigned has adequate means of providing for the undersigned's current needs and possible personal contingencies and that the undersigned has no need for liquidity in this particular investment.

3.      The undersigned has such knowledge and experience in financial and business matters that the undersigned is able to evaluate the risks in any investment in the Fund. The undersigned acknowledges that the undersigned has been advised to discuss this investment with the undersigned's legal or other professional advisors, or with other investment representatives who have knowledge of business and financial matters. If the undersigned has not done so it is because, in the undersigned's opinion, the undersigned is personally capable of evaluating this investment and the Fund and does not need the advice of other persons. The undersigned and, to the extent deemed necessary by the undersigned, any of the persons mentioned above have been afforded the opportunity to ask questions concerning this investment of officers of the Fund and its general partner and have been furnished with such information with respect to the Fund and its proposed operations as the undersigned has requested to the undersigned's satisfaction.

(*See, e.g.*, FAC, Exhibit B, D.E. 4-2, p. 2.)

Thus, Plaintiffs were not justified in relying on any oral representations made by the

Chans, especially those that directly contradicted written representations contained in the PPM.

*See Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 260-61 (6th Cir.

2012)(affirming grant of motion to dismiss on reliance grounds where offering documents fully

contradicted and qualified representations allegedly relied upon by plaintiffs).  Specifically,

Plaintiffs cannot state a claim for fraud or securities fraud based on the alleged

misrepresentations that there would be other, non-EB-5 funding in the Project or that the

investments were backed by a government guarantee.   Given that the PPM and/or subscription

agreements clearly contradicted such statements, any reliance on such representations was

unreasonable as a matter of law.

iii.      Plaintiffs have not sufficiently alleged that any damages were caused by the alleged misrepresentations.

Finally, Plaintiffs fail to allege damages caused by the alleged misrepresentations.  Under

a common law fraud claim, the claimant must show that the injury resulted from reliance on the

misrepresentation.  To recover under Rule 10b–5, a plaintiff must satisfy a two-pronged

causation standard: First, the plaintiff must prove "transaction causation" by showing that the

defendant's representations caused the plaintiff to make the investment.  *Bruschi v. Brown*, 876 F.2d 1526, 1530 (11th Cir. 1989). Second, the plaintiff must prove "loss causation" by showing that the representations relate to the reasons for the loss or caused the loss itself in some reasonably direct way.  *Id.*  In other words, the claimant must be able to show that the economic loss suffered by Plaintiffs was directly related to their reliance on the alleged misrepresentations. Plaintiffs cannot do so with regard to the alleged misrepresentation regarding the escrow of funds.

As Plaintiffs allege, their losses were caused by the mismanagement of funds that were loaned to SV ARX.   The alleged misrepresentations regarding the Project or the escrowing of funds do not touch upon the alleged reasons for the loss.  Additionally, the provision of the PPM stated that funds would have been held in escrow until the applications were approved or denied, which they were approved in January of 2014.  Thus, if Plaintiffs' losses are their capital contributions that they allege have been mismanaged and improperly spent, their capital contributions would have been released into the Fund and would have been available for SV ARX to borrow and spend anyway.  Accordingly, any representation regarding escrowing of funds would have no bearing on the ultimate outcome.  Thus, for these reasons, Plaintiffs have not alleged damages resulting from the alleged fraud.

      iv.    <u>Plaintiffs have not properly alleged scienter.</u>

With regard to the securities fraud claim, a plaintiff bringing such a cause must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A).  The Supreme Court has interpreted this provision to require dismissal of a complaint unless "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); *Ashland,*

*Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 469 (6th Cir. 2011).  Plaintiffs wholly fail to pled with particularity the requisite state of mind for a  securities fraud claim. Nowhere in the FAC are facts giving rise to a strong inference that SV ARX Defendants acted with the required state of mind.  Instead, Plaintiffs have conclusorily stated that Defendants have violated the Securities and Exchange Act of 1934, 15 U.S.C. §78j(b), by procuring Plaintiffs' investment by fraud. Plaintiffs have failed to plead the requisite state of mind for a securities fraud claim.

## VI.    PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR GROSS NEGLIGENCE.

The Ohio Supreme Court has defined gross negligence as the "failure to exercise any or very slight care." *Johnson v. State*, 63 N.E. 607, 609 (Ohio 1902). It has also been defined as a "failure to exercise even that care which a careless person would use." *Thompson Elec. v. Bank One, Akron, N.A.*, 525 N.E.2d 761, 768 (Ohio 1988) (internal quotations and citation omitted). To establish gross negligence, all elements of negligence must exist. *See Johnson*, 63 N.E. at 609.  The essential elements for a negligence claim are duty, breach of duty, and damage or injury that is a proximate result of the breach.  *Winkle v. Zettler Funeral Homes, Inc.*, 912 N.E. 2d 151, 161-62 (Ohio Ct. App. 2009).

Plaintiffs  cannot state a cause of action for gross negligence against the SV ARX Defendants.  In the same vein as their failure to establish any fiduciary relationship, Plaintiffs have failed to establish a duty of care owed by Martin Angiulli, Angiulli, Inc., SV ARX, LLC, Dante Bella, LLC, or Jeffrey Jacobs.  Plaintiffs have also failed to show how KRC, under its current owners, breached its duty of care.

### A.    Martin Angiulli, Angiulli, Inc., SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs do not owe a duty of care to Plaintiffs.

"The duty to exercise reasonable care does not arise unless there is a special duty or relationship between the parties, such as a fiduciary duty, a contractual duty, or a professional

relationship between service provider and customer." *Advantage Renovations, Inc. v. Maui Sands Resort, Co.*, *L.L.C.*, No. E–11–040, 2012 WL 1493826, at *7 (Ohio Ct. App. Apr. 27, 2012). Here, there is no special relationship between these parties giving rise to a duty of care. There is only a lending relationship whereby the Fund, which is comprised of the Plaintiffs as limited partners, loaned money to SV ARX to complete the Project. There are no additional obligations owed by Martin Angiulli, Angiulli, Inc., SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs to the Plaintiffs individually. Plaintiffs' negligence claim thus fails.

    **B.**    **Plaintiffs' gross negligence claim is barred by the economic-loss rule.**

At the core of Plaintiffs' FAC is their claim that they have lost their contributions into the Fund because the money which was loaned to SV ARX has been improperly spent without anything to show for it. Under Ohio law, "where a plaintiff has suffered only economic harm as a result of a defendant's breach of duty, the economic-loss rule will bar the tort claim if the duty arose only by contract. In that case, the plaintiff's remedy would be in contract law, which requires privity of contract between the parties." *Campbell v. Krupp*, 961 N.E.2d 205, 211 (Ohio Ct. App. 2011). "Thus, where a contract between parties exists, a tort claim must be analyzed to determine whether it is merely a recapitulation of the breach-of-contract claim or whether it alleges a breach of an independent duty." *Ineos USA L.L.C. v. Furmanite Am., Inc.*, No. 1–14–06, 2014 WL 5803042, at *5 (Ohio Ct. App. Nov. 10, 2014); *see also id at *6.* ("Where the tort claim alleges a breach of an independent duty, it must also allege damages that are separate and distinct from the breach of contract.").

Here, Plaintiffs are essentially demanding the return of their funds which were loaned to SV ARX through loan agreements with the Fund. These are economic damages arising from the loan agreements, and they do not support a tort claim for negligence. Thus, Plaintiffs' gross negligence claim is barred by the economic loss doctrine.

30

## VII. PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR UNJUST ENRICHMENT/QUANTUM MERUIT.

In a two paragraph claim, Plaintiffs have generically alleged that Plaintiffs "conferred a substantial benefit on Defendants by investing" into this project and as a result of Defendants' conduct, Plaintiffs are entitled to relief under an unjust enrichment/quantum meruit theory. (FAC, ¶¶ 105-106.) Aside from the woefully deficient pleading of this claim, Plaintiffs cannot establish any entitlement to this equitable relief.

A claim for unjust enrichment requires the following elements: (1) a benefit was conferred upon the defendant by the plaintiff; (2) the defendant accepted/appreciated the benefit conferred; (3) retention of the benefit without compensation for its value would, under the circumstances, be inequitable. *See, e.g., Hambleton v. R.G. Barry Corp.,* 465 N.E.2d 1298, 1302 (Ohio 1984). However, an unjust enrichment claim is only available where there is no contract or where there would otherwise be no remedy. *See Glimcher Co., LLC v. Deavers*, No. 2:09-cv-797, 2010 WL 1610709, *10 (S.D. Ohio Apr. 19, 2010). Such is not the case here. As explained above, Plaintiffs contributed capital to the Fund, who then loaned this money to SV ARX for development of the Project. The alleged benefits conferred upon Defendants arose from Plaintiffs' contributions to the Fund and the Fund's subsequent loan to SV ARX. Therefore, there is a contractual agreements that governs the relationship: the loan agreement between the Fund and SV ARX. As it relates to the SV ARX Defendants, this is the agreement under which Plaintiffs, through the Fund and the General Partner, could seek relief. Thus, an unjust enrichment claim is not available to Plaintiffs and should be dismissed as a matter of law.

## VIII. PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR CIVIL CONSPIRACY.

Plaintiffs have failed to state a claim for civil conspiracy. "The elements of a civil conspiracy claim are: '(1) a malicious combination; (2) two or more persons; (3) injury to person

or property; and (4) existence of an unlawful act independent from the actual conspiracy.'"  *In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d 287, 326 (S.D. Ohio 2007) (quoting *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993)). Plaintiffs fail to allege an underlying unlawful act and/or damages resulting from the conspiracy.

### A.  Plaintiffs have failed to allege an underlying unlawful act.

The fourth element requires the existence of an unlawful act independent from the actual conspiracy.  Without an underlying wrongful act, a civil-conspiracy claim fails.  *See Morrow v. Reminger & Reminger Co., L.P.A.*, 915 N.E.2d 696, 711-12 (Ohio Ct. App. 2009) ("A civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy."); *Orbit Elecs., Inc. v. Helm Instrument Co.*, 855 N.E.2d 91, 100 (Ohio Ct. App. 2006) ("An action for civil conspiracy cannot be maintained unless an underlying unlawful act is committed.").  Here, because Plaintiffs fail to sufficiently plead an underlying wrongful act of fraud against any of the SV ARX Defendants, their claim for civil conspiracy must also fail.

### B.  Plaintiffs have failed to sufficiently allege damages to state a claim for conspiracy.

In addition, Plaintiffs have failed to allege any actual damages stemming from the conspiracy itself.  Under Ohio law, to state a claim for civil conspiracy, plaintiff must plead actual damages caused by acts committed pursuant to a formed conspiracy. *See generally Minarik v. Nagy,* 193 N.E.2d 280 (Ohio 1963).  A plaintiff must thus allege actual damages attributable to the conspiracy in addition to actual damages caused by the underlying tort. *Avery v. Rossford, Ohio Transp. Improvement Dist.*, 762 N.E.2d 388, 395 (Ohio Ct. App. 2001). Plaintiffs have completely failed to allege any additional damages attributable to any civil conspiracy separate and apart from the damages allegedly stemming from the underlying

wrongdoing.  Instead, Plaintiffs have only pled as damages the amount of their contributions to the Fund which thereafter loaned  those funds to SV ARX.  Plaintiffs have thus insufficiently pled their cause of action for civil conspiracy, and this claim should be dismissed.

## IX.    PIERCING THE CORPORATE VEIL IS NOT A CAUSE OF ACTION.

Plaintiffs have also alleged a "Ninth Claim" of Piercing the Corporate Veil against Martin Angiulli.  (FAC, p. 20.)  However, there is no such cause of action recognized under Ohio law.  "Piercing the corporate veil" is not a cause of action in and of itself, but rather, is a legal rule or doctrine that permits a court to disregard the formal corporate structure so that individual shareholders may then be held liable for the actions of the corporation. *See Boehnlein-Pratt v. Ventus Corp.*, No. 14CA011, 2015 WL 4170354, at *6 (Ohio Ct. App. July 10, 2015) ("We note piercing the corporate veil is not a claim, it is a remedy encompassed within a claim.  It is a doctrine wherein liability for an underlying tort may be imposed upon a particular individual. Generally corporations are distinct legal entities, and shareholders, officers and directors are not normally liable for the debts of the corporation.") (internal quotation marks, citations, and alteration omitted"); *Trinity Health System v. MDX Corp.*, 907 N.E. 2d 746, 754 (Ohio Ct. App. 2009) ("'Piercing the corporate veil' is not a cause of action in and of itself, but rather, is a legal rule or doctrine that permits a court to disregard the formal corporate structure so that individual shareholders may then be held liable for the actions of the corporation.")  Any claim to pierce is derivative of some underlying claim establishing a right to damages.  Here, Plaintiffs have failed to sufficiently allege any claim against any entity of which Mr. Angiulli is an owner.  Thus, to the extent piercing the corporate veil is pled as a claim, this claim should be dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss the First Amended Complaint against Martin Angiulli, Angiulli, Inc., Kentucky Regional Center, LLC d/b/a Midwest EB-5

Regional Center, SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs.  Plaintiffs have failed to state a cause of action against any of these SV ARX Defendants.

**WHEREFORE**, the Defendants, Martin Angiulli, Angiulli, Inc., Kentucky Regional Center, LLC d/b/a Midwest EB-5 Regional Center, SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs, respectfully request that this Court grant this Motion and enter an Order dismissing the First Amended Complaint against SV ARX Defendants.

Respectfully submitted,

s/ Martha L. Boyd

Martha L. Boyd (Ohio Bar No. 0071550)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, Tennessee 37201
Telephone:  615.726.5600
Fax:  615.744.5652
mboyd@bakerdonelson.com

Mark D. Griffin (Tenn. Bar No. 017381)
Lori H. Patterson (Tenn. Bar No. 019848)
Mary Wu (Tenn. Bar No. 031339)

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Ave., Suite 2000
Memphis, Tennessee 38103
Telephone:  901.526.2000
Fax: 901.577.2303
mgriffin@bakerdonelson.com
lpatterson@bakerdonelson.com
mwu@bakerdonelson.com

*Counsel for Defendants Martin Angiulli,
Angiulli, Inc., Kentucky Regional Center,
LLC d/b/a Midwest EB-5 Regional Center,
SV ARX, LLC, Dante Bella, LLC, and
Jeffrey Jacobs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 25, 2016, a true and exact copy of the foregoing was filed electronically and notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, as follows:

Christopher D Cathey
Porter Wright Morris & Arthur LLP
250 East Fifth Street, Suite 2200
Cincinnati, OH 45202
ccathey@porterwright.com

*Counsel for Plaintiffs*

Jennifer K. Nordstrom
Garvey Shearer, PSC
11260 Chester Road, Suite 110
Cincinnati, OH 45246
jnordstrom@garveyshearer.com

Mason N. Floyd
Clark Hill PLC
135 South LaSalle Street, Suite 3200
Chicago, IL 60603
mfloyd@clarkhill.com

Leigh D. Roadman
Clark Hill PLC
135 South LaSalle Street, Suite 3200
Chicago, IL 60603
lroadman@clarkhill.com

*Counsel for Terry Chan & Gary Chan*

s/ Martha L. Boyd
_____