UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

JIAXI HU, MENGFANT LI, XIAOYAN
WU, WEI REN, RUIMIN CHEN, JIANLI
DU, JIMEI ZHANG, ZHENPING HAO, JIE
CIU AND GUIYING WANG,

        Plaintiffs,

v.

TERRY CHAN, GARY CHAN, MARTIN
ANGIULLI, ANGIULLI, INC., KENTUCKY
REGIONAL CENTER, LLC D/B/A
MIDWEST EB-5 REGIONAL CENTER,
SV ARX, LLC, DANTE BELLA, LLC AND
JEFFREY JACOBS

        Defendants.

Case No. 1:15-cv-709-SSB-SKB

The Honorable Sandra S. Beckwith
District Judge

Honorable Stephanie K. Bowman
Magistrate Judge

**TERRY CHAN'S AND GARY CHAN'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

NOW COME Defendants Terry Chan and Gary Chan ("Movants"), by and through their

counsel, Mason N. Floyd and Leigh D. Roadman, and in support of their Motion to Dismiss

Plaintiffs' First Amended Complaint ("FAC") submit the following Memorandum of Law.

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................................. 1

    A.     Overview of Case and Motion to Dismiss ................................................................. 1

    B.     The Plaintiffs ........................................................................................................... 2

    C.     Legal Standard on a Motion to Dismiss .................................................................... 2

    D.     Federal Rule Of Civil Procedure 9(B) Requires Plaintiffs To Plead Details About The Purported Fraudulent Scheme ......................................................................... 3

II.    ARGUMENT ...................................................................................................................... 4

    A.     Plaintiffs' First Claim (Breach Of Contract) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6) ............................................... 4

    B.     Plaintiffs' Second Claim (Breach Of Fiduciary Duty) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6) and For Failure To Allege Claims With Particularity Under 9(B) ......................................................... 6

    C.     Plaintiffs' Third Claim (Fraud/Fraud In The Inducement) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6) For Failure To Allege Claims With Particularity Under 9(B) ............................................................. 7

    D.     Plaintiffs' Fourth Claim (Conversion) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6) ...................................................... 12

    E.     Plaintiffs' Fifth Claim (Unjust Enrichment/Quantum Meruit) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6) ...................... 14

    F.     Plaintiffs' Sixth Claim (Gross Negligence) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6) ............................................. 15

    G.     Plaintiffs' Seventh Claim (Securities Law Violations) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6) And For Failure To Allege Claims With Particularity Under 9(B) ...................................................... 18

    H.     Plaintiffs' Eighth Claim (Conspiracy) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6) ...................................................... 21

    I.     Plaintiffs' Tenth Claim (Piercing The Corporate Veil) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6) ............................. 23

III.    CONCLUSION ................................................................................................................. 24

i

# I. INTRODUCTION

## A. Overview of Case and Motion to Dismiss

Plaintiffs bring this action against Movants, and six other defendants, stemming from their investment in KRC Fund I, LP (the "Fund"). The Fund is an Ohio limited partnership organized to finance the expansion and operations of income-producing real estate assets and businesses in Cincinnati, Ohio through the EB-5 Immigrant Investor Program. FAC, Exhibit 1, p. 1. The EB-5 Program grants lawful permanent resident status in the United States to foreign investors. *Id.*, p. 8. The EB-5 program began in accordance with a Congressional mandate aimed at stimulating economic activity and creating jobs for U.S. workers, while simultaneously affording eligible aliens the opportunity to become lawful permanent residents. *Id.*

Plaintiffs' FAC is long on pejorative, but short on facts. Defendants and this Court are left to sift through the bare-bones and conclusory allegations in search of factual support for the claims alleged. Plaintiffs identify nine purported theories of liability in the FAC: breach of contract, breach of fiduciary duty; fraud/fraud in the inducement; conversion; unjust enrichment; gross negligence; securities law violations; conspiracy and piercing the corporate veil. Missing from each theory are many of the elements required and, as a result, dismissal pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) is required. Also, many of the claims asserted by Plaintiffs sound in fraud and thus, must comply with FRCP 9(b). All of Plaintiffs' fraud based claims are utterly bereft of the particularity required by FRCP 9(b). Plaintiffs' failure to plead specifics in relation to those claims is fatal.

1

### B.     The Plaintiffs

Plaintiffs are ten citizens and residents of the People's Republic of China.  FAC, ¶ 1.

Plaintiffs allege that they each invested $500,000 into the Fund.  FAC, ¶ 24. They are all persons

with a "net worth, or joint net worth with the person's spouse, of over $1 million (excluding the

value of the person's primary residence) or who had individual income in excess of $200,000, or

joint income with the person's spouse in excess of $300,000."  FAC, Exhibit 1, p 4. All plaintiffs

understood that their investments involved a "high degree of risk" and represented that they (1)

could afford to hold their Units for an *indefinite period* and did not expect that they would be

required to sell their Units in the foreseeable future, and (2) had sufficient net worth to sustain a

loss of their *entire* investment.  *Id.*, p. 12.

### C.     Legal Standard on a Motion to Dismiss

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the

Federal Rules of Civil Procedure a complaint must contain sufficient factual matter, accepted as

true, to "state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007).  The Court must construe the complaint in the light most favorable to the

Plaintiff and accept as true all well pleaded factual allegations. *Scheuer v. Rhodes*, 416 U.S. 232,

236 (1974).  The Court need not accept as true legal conclusions or unwarranted factual

inferences. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 405 (6th Cir. 1998).

Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a

Complaint must give "the defendant fair notice of what the . . . claim is and the grounds upon

which it rests." *Bell Atlantic*, 550 U.S. at 555. The complaint, however, "must contain more than

2

labels, conclusions, and formulaic recitation of the elements of the claim." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (*citing Bell Atlantic*, 550 U.S. at 555). A complaint must "raise a right to relief above a speculative level." *Id.* If the allegations do not suggest such a right to relief, "the plaintiff pleads itself out of court." *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

### D. Federal Rule Of Civil Procedure 9(B) Requires Plaintiffs To Plead Details About The Purported Fraudulent Scheme

In Plaintiffs' Third and Seventh Claims, they allege violations of common law "fraud/fraud in the inducement" and securities laws violations pursuant to 15 U.S.C. § 78j(b). Also, Plaintiffs' claim for breach of fiduciary duty (Second Claim) sounds in fraud. All of these claims are governed by Federal Rule of Civil Procedure 9(b), which "applies to 'all averments of fraud or mistake,' (and) requires that 'the circumstances constituting fraud...be stated with particularity." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). The Sixth Circuit reads this rule liberally, requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which plaintiff relied, the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud. *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993).

The purpose of Rule 9(b) is to provide a defendant with "at least the minimum degree of detail necessary to begin a competent defense." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008). Another purpose of the rule is to discourage fishing expeditions and strike suits which appear more likely to consume a defendant's resources than to reveal evidences of wrongdoing. *Id.* "Because the defendant is informed of which of its specific actions

3

allegedly constitute fraud, it can limit discovery and subsequent litigation to matters relevant to these allegations." *Id.*

## II.     ARGUMENT

### A. Plaintiffs' First Claim (Breach Of Contract) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6)

Plaintiffs' First Claim attempts to plead a claim for breach of contract against all "Defendants." FAC, ¶¶ 73-80.  In order to allege breach of contract under Ohio law, a Plaintiff must establish: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach. *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 466 (6th Cir. 2012). In order to bring a breach of contract claim, one must be a party to the contract. *Arts Rental Equip. v. Bear Creek Constr.*, 2011 Ohio Misc. LEXIS 155, *4 (citing *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, (1991)). Similarly, a party may not be liable for a breach of contract to which he is not a party. *Id.*, *Jackson v. Sunnyside Toyota, Inc.*, 175 Ohio App.3d 370, 376 (12th Dist. 1995).

The only contract that Plaintiffs allege they entered into are the Subscription Agreements (the "Agreements") attached as Exhibits C-H, J-L.  The Agreements were for the purchase of Units in the Fund. FAC, Exhibit A.  The Limited Partnership Agreement (FAC, Exhibit B) identifies Kentucky Regional Center, LLC ("KRC, LLC") doing business as Midwest EB-5 Regional Center as the General Partner of the Fund and SV ARX, LLC as the initial Limited Partner.  The Agreements' express terms demonstrate, at best, that the Plaintiffs contracted with KRC, LLC and SVARX, LLC.  Terry Chan and Gary Chan were not parties to those agreements, nor do Plaintiffs offer any allegations to suggest they were.  While Gary Chan signed the

4

Subscription Agreements, he did so not individually, but on behalf of the Fund as "Director of Investor Relations" (FAC, Exhibts C-H) or "Managing Director" (Exhibits J-K). Plaintiffs do not attach any contract to the FAC, nor do they include any allegation of any contract, between themselves and Terry Chan.

Generally, corporate officers are not individually liable on a breach of contract claim unless they personally signed the contract in their individual capacity. *Mulch Mfg. Inc. v. Advanced Polymer Solutions, LLC*, 947 F. Supp. 2d 841, 867 (S.D. Ohio 2013). So long as the signature line states that the officer of the entity is signing the contract on behalf of the entity, members of the LLC cannot be in privity with the other contracting party. *See Ayad v. Radio One, Inc.,* 2007 Ohio App. LEXIS 2345 at *25 (8th Dist. 2007). Here, Plaintiffs cannot be in privity of contract with Gary Chan.

Moreover, Ohio Revised Code bars any recovery against members and managers of an LLC. *See Arts Rental Equip.*, at *4, (*citing* ORC Ann. 1705.48 (where the members and managers had no personal liability for breach of the LLC's contracts solely by being members and managers)); *see also Ling Tie v. Peng Chan,* 2014 U.S. Dist. LEXIS 172440 at *21 (holding that plaintiffs, who invested in EB-5 center, could not allege a breach of contract action against members of LLC where funds were invested in because plaintiffs did not contract with the members).

Plaintiffs fail to allege any facts which could establish that Terry Chan or Gary Chan entered into any contract with them and should be individually responsible for any breach of the Agreement. Plaintiffs First Claim should be dismissed for failure to comply with FRCP 12(b)(6).

5

B.   **Plaintiffs' Second Claim (Breach Of Fiduciary Duty) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6) and For Failure To Allege Claims With Particularity Under 9(B)**

For their Second Claim, Plaintiffs generally allege that "Defendants owed Plaintiffs a statutory, contractual and common law duty of the utmost good faith and loyalty in the handling of the Project and their investment funds." FAC, ¶82. In Ohio, a breach of fiduciary duty claim has three elements: (1) the existence of a duty arising from a fiduciary relationship, (2) a failure to observe such duty, and (3) an injury proximately resulting therefrom. *Glimcher v. Ety*, 2010 U.S. Dist. LEXIS 38214 at *22 (citing *Strock v. Pressnell*, 38 Ohio St.3d 207, 216 (1988)). When a breach of fiduciary duty claim rests on averments of fraud, the allegations of the fraudulent conduct must satisfy Rule 9(b). *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 735 (S.D. Ohio 2009); *In re National Century Financial Enterprises, Inc., Investment Litigation*, 504 F. Supp. 2d 287, 311 (S.D. Ohio 2007).

Plaintiffs fail to identify any statutory duty supporting this claim. Also, as discussed above, Plaintiffs have not alleged (and cannot allege) the existence of a contract between themselves and Terry Chan or Gary Chan. As a result, Plaintiffs have not identified any contractual duty on which their Second Claim could be based. Plaintiffs are left with their conclusory allegation that "Defendants" owed Plaintiffs a "common law duty." FAC, ¶ 82. Plaintiffs fail to identify which Defendants owed this duty. Plaintiffs allege that "Defendants" misappropriated and wasted their investment dollars. FAC, ¶83. But Plaintiffs fail to provide any particular allegations against Terry Chan or Gary Chan in support of these alleged breaches. Instead, as is all too common throughout the FAC, Plaintiffs continuously lump all "Defendants"

6

together. Plaintiffs claim is devoid of factual support sufficient to state with particularity the circumstances constituting these alleged breaches.

In addition, under Ohio Law, the economic loss rule generally prevents recovery in tort of damages for purely economic loss. *Wells Fargo Bank, N.A. v. Firth Third Bank*, 931 F. Supp.2d 834, 838 (S.D. Ohio 2013) (citing *Corporex Dev. & Constr. Mgmt. v. Shook, Inc.*, 106 Ohio St. 3d 412, 415 (2005)). "The well established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manger which is legally cognizable or compensable." *Id.*, (citing *Floor Covering, Inc. v. Parma Community General Hosp. Ass'n.*, 54 Ohio St. 3d 1, 3 (Ohio 1990)). "'Tort law is not designed...to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. *DQ Ohio, LLC v. IDC Ohio Mgmt., LLC*, 2012 Ohio Misc. LEXIS 59, at *20-21 (Ohio Ct. Com. Pl. Feb. 8, 2012)(where court found plaintiff's claims for negligence and breach of fiduciary were founded on contractual relationship and granted defendants' motions to dismiss). There is no dispute that the damages sought in this case are purely economic. Thus, absent a preexisting duty in tort, tort claims based on a contract's terms or rights gained through privities of contract in which economic damages being sought, are barred. *Id.* As a result, Plaintiffs' Second Claim should be dismissed.

### C. Plaintiffs' Third Claim (Fraud/Fraud In The Inducement) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6) And For Failure To Allege Claims With Particularity Under 9(B)

Plaintiffs' Third Claim purports to allege that Defendants made material, false, and misleading representations upon which Plaintiffs relied in making their investments. FAC, ¶ 89.

7

In Ohio, the elements of fraud are as follows: (1) There must be an actual or implied representation of a matter of fact; (2) which relates to the present or past, (3) which was material to the transactions, and (4) which was false when made. (5) The statement must be made with knowledge of its falsity, or with reckless disregard for whether it is true or not and (6) with the intent to mislead the other party into relying on it. (7) The other party must be ignorant of the fact averred, causing (8) justifiable reliance and (9) injury. *Dunn Appraisal v. Honeywell Information Systems*, 687 F.2d 877, 882 (6th Cir. 1982).

Because claims based on fraud pose "a high risk of abusive litigation," a party making such allegations "must state with particularity the circumstances constituting fraud or mistake." FRCP 9(b); *Twombly*, 550 U.S. at 569 n.14. To satisfy this requirement, the plaintiff must detail specifically the facts and circumstances that are claimed to constitute the defendant's fraudulent conduct. *See Albert Fadem Trust v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 995 (S.D. Ohio 2004) (citing *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir.1999) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir.1993)) (plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud"); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (pleader must identify "the who, what, when, where, and how: the first paragraph ofany newspaper story").

The Sixth Circuit has held that dismissal of fraud claims is proper if the claims allege only generalized fraud against a number of defendants. *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 509 (6th Cir. 2007). A complaint "may not rely upon blanket

inferences to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *Id.*

Plaintiffs' Third Claim consists of generalized allegations, not directed at any one defendant. Plaintiffs allege "Defendants made material misrepresentations," which "Defendants knew were false." FAC, ¶¶ 85-91. Nowhere in the FAC do Plaintiffs attribute any single, purported misrepresentation to any particular Defendant. Rather, Plaintiffs lump Defendants together as "Defendants" or "the Chans." See *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742 (6th Cir. 1992) (holding that plaintiffs' claim was properly dismissed where plaintiffs had not alleged with specificity who had made particular misrepresentations and when they were made but rather plaintiffs had articulated general averments of fraud attributed to "the defendants"). Plaintiffs provide few details relating to the alleged misrepresentations. Who made them? When, where and how were they made? To whom were they made? The FAC fails to comply with FRCP 9(b) and Plaintiffs' Third Claim should be dismissed as a result.

Plaintiffs base their Third Claim on three purported misrepresentations. The first misrepresentation that Plaintiffs allege is found in paragraph 86 of the FAC. Plaintiffs allege that "Defendants made material misrepresentations to Plaintiffs that their funds would remain in escrow until the I-526 applications were approved ..." FAC, ¶86. In support of this allegation, Plaintiffs cite to the Fund's Private Placement Memorandum ("PPM") (attached to the FAC as Exhibit A) which states in relevant part,

9

Pending USCIS's decision on the prospective investor's I-526 Petition, the subscription payment will be held in an escrow account.  If the USCIS approves the prospective investor's I-526 Petition…[t]he subscription payment…will be released to the Fund for the Fund's use consistent with the then applicable EB-5 Program Requirements.

FAC, ¶39.

This statement is not actionable fraud against Terry Chan and Gary Chan.  A claim for fraud cannot be predicated on a breach of a contractual duty.  Otherwise every breach of contract would also create a tort cause of action.  *Nat'l Strategies, LLC v. NaphCare, Inc.*, 2011 U.S. Dist. LEXIS 85841 at *40 (N.D. Ohio).  "A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently only if the breaching party also breaches a duty owed separately from that created by the contract, that is a duty owed even if no contract existed." *Id.*; *Textron Financial Corp. v. Nationwide Mutual Ins. Co.*, 115 Ohio App.3d 137, 151 (9th Dist. 1996).  Even an intentional breach does not convert a breach of contract claim into a tort claim.  *Id.*  Plaintiffs' allegation that "Defendants" violated the provision of the PPM stating that their funds would remain in escrow until the I-526 Petitions were approved is an allegation that Defendants breached a contractual duty, nothing more.  Plaintiffs' fraud claim is merely a breach of contract claim cloaked in the language of tort.

The second and third misrepresentations alleged by the Plaintiffs are found in paragraphs 87 and 88.  Plaintiffs allege that "Defendants made material misrepresentations to Plaintiffs that their investments were backed by a government guarantee, the only project of its kind in the United States." FAC, ¶87.  Plaintiffs also allege that "Defendants made material misrepresentations that they would have other, non-EB-5 funding in the Project." FAC, ¶88.  Neither of these misrepresentations are actionable because Plaintiffs cannot show reliance.

10

When the Plaintiffs executed the Subscription Agreements, which incorporated the PPM, it included the following that they agreed to:

> The recipient should rely only on the information contained in this memorandum. The information contained in this memorandum supersedes any other information provided to potential investors. Neither the GP nor the Fund has authorized any person to provide any information or to make any representations except to the extent contained in this memorandum. If any such representations are given or made, such information and representations must not be relied upon as having been authorized by the Fund or the GP.

FAC, Exhibit A, p. 2.

> No representations or warranties of any kind are intended nor should any be inferred with respect to the economic viability of this investment or with respect to any benefits which may accrue to an investment in the Units.

FAC, Exhibit A, p. 2.

> No person is authorized to give any information or make any representation in connection with this memorandum, except such information as is contained or referenced in this memorandum. Only information or representations contained or referenced herein may be relied upon as having been made by the Fund and the GP.

FAC, Exhibit A, p. 2.

> A purchase of Units involves a high degree of risk. For the reasons set forth in this memorandum, the purchase of Units offered hereby is suitable only for certain persons who (i) can afford to hold their Units for an indefinite period and do not expect that they will be required to sell their Units in the foreseeable future, and (ii) have sufficient net worth to sustain a loss of their entire investment in the fund in the even such loss should occur.

FAC, Exhibit A, p. 3. These statements, included in the PPM, preclude Plaintiffs from establishing their reliance on any purported statement or representation made prior to signing the Subscription Agreements, nor any statement or representation that is inconsistent with the PPM and its attachments. Plaintiffs cannot show that their reliance on the alleged fraudulent

11

misrepresentations was reasonable. As a result, Plaintiffs' claim for fraud/fraud in the inducement fails as a matter of law.

Plaintiffs fraud allegations also fail to allege facts sufficient to establish the necessary elements for fraudulent inducement. To allege fraudulent inducement a plaintiff is required to show that the defendants made a knowing material misrepresentation with the intent of inducing plaintiff's reliance. *King v. Hertz Corp.*, 2011 U.S. Dist. LEXIS 35610 at *19 (N.D. Ohio). Plaintiffs have not alleged facts sufficient to establish that Movants had knowledge that the alleged misstatement was false when made. Instead, Plaintiffs rely on the generalized and conclusory allegations that "Defendants" "never had any intention of keeping Plaintiffs' funds in escrow." (FAC, ¶86). The Sixth Circuit has held that plaintiffs "may not simply rely on the proposition that Defendants must have known or should have known of, and participated in, the fraud." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). Generalized and conclusory allegations are insufficient. *Id.*

### D. Plaintiffs' Fourth Claim (Conversion) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6)

Plaintiffs' Fourth Claim purports to allege a claim for conversion. The only factual allegation offered in support of this claim is found in paragraph 93. Plaintiffs allege that, "[d]efendants exercised wrongful dominion and control over Plaintiffs' investment fund and refused to return them despite demand from Plaintiffs." FAC, ¶ 93. Under Ohio law, to bring a claim for conversion, the Plaintiff must allege facts that set forth that: (1) the plaintiff has ownership or right to possession of the property at the time of the conversion, (2) the defendant's conversion was by a wrongful act or disposition of plaintiff's property rights, and (3) damages.

12

*Parlin Fund LLC v. Citibank N.A.,* 2013 U.S. Dist. LEXIS 106511 at *24. Where conversion is premised on the unlawful retention of property, the plaintiff must establish: "(1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner." *Dice v. White Family Cos.*, 173 Ohio App. 3d 472, 477 (2007) (citing *Barnes v. First American Title Ins. Co.* 2006 U.S. Dist. LEXIS 54984 at *24 (N.D. Ohio) (citing *Tabar v. Charlies's Towing Serv.* 97 Ohio App.3d 423, 427-28 (1994))). A claim for conversion of monies will only lie if identification is possible and there is an obligation to deliver the specific money in question as opposed to merely a certain sum of money. *NPF IV v. Transitional Health Servs.*, 922 F. Supp. 77, 81-82 (S.D. Ohio 1996).

Plaintiffs have failed to establish that Terry Chan and Gary Chan wrongfully converted Plaintiffs initial EB-5 investment. Plaintiffs fail to identify which of the "Defendants" exercised control; nor do they allege any allegations that the "Defendants" exercised control over specific money. *See Haul Transport of VA, Inc. v. Morgan,* 1995 Ohio App. LEXIS 2240 at *9-10 (Ohio Ct. App. June 2, 1995) ("An action alleging conversion of cash lies only where the money involved is "earmarked" or is specific money capable of identification"). Further, Plaintiffs make no allegation that they made any demand from any Defendant.

Plaintiffs made an investment in the Fund in exchange for an interest as a Limited Partner in the Fund. FAC, Exhibits C-H, J-L. Once Plaintiffs made their investments into the Fund, the Plaintiffs received their interest in the Fund. At that point, the Fund assumed lawful control of

13

the Plaintiffs' investments. Plaintiffs' Fourth Claim fails to comply with FRCP 12(b)(6) and should be dismissed.

**E.    Plaintiffs' Fifth Claim (Unjust Enrichment/Quantum Meruit) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6)**

In their Fifth Claim, Plaintiffs fail to plead allegations that entitle them to relief against Terry Chan and Gary Chan for unjust enrichment.  Under Ohio law, to establish a prima facie case for unjust enrichment, the Plaintiff must allege facts that show: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under the circumstances where it would be unjust to do so without payment. *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 1983 (1984). "Recovery under unjust enrichment is designed to compensate the plaintiff for the benefit he has conferred upon another, not to compensate him for a loss suffered." *Id.* (citing *Jones v. Jones*, 179 Ohio App. 3d 618, 629 (Ohio Ct. App. 2008)).  Unjust enrichment is a quasi-contractual remedy that acts to prevent a party from harm "in the absence of an express contract or a contract implied in fact." *Id.* "Ohio law is clear that a party may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject." *Id.*

In the instant case, the Plaintiffs claim is entirely based on an express contract between the Fund and the Plaintiffs as Limited Partners.  As a result, Plaintiffs' claim for unjust enrichment fails.

14

Moreover, Plaintiffs' allegations do not support a claim of unjust enrichment. Plaintiffs have failed to demonstrate that any benefit was conferred upon Terry Chan and Gary Chan by any of the Plaintiffs. While Plaintiffs allege that "Mr. Angiulli purchased KRC from the Chans for $300,000 in January 2014 with investor funds" (FAC, ¶64), this allegation does not demonstrate that "the Chans" were conferred a benefit from Plaintiffs. Terry Chan and Gary Chan sold their interest to Mr. Angiulli for an agreed upon price. Plaintiffs conclusory and unsupported allegations do not suffice. Plaintiffs unjust enrichment fails to state a claim upon which relief can be granted and should be dismissed.

**F.** **Plaintiffs' Sixth Claim (Gross Negligence) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6).**

Plaintiffs' Sixth Claim purports to allege gross negligence against all "Defendants." Gross negligence is not a well-defined concept under Ohio law. The Ohio Supreme Court has defined it as the "failure to exercise any or very slight care." *Johnson v. State*, 66 Ohio St. 59, 63 (1902). It has also been defined as a "failure to exercise even that care which a careless person would use." *Thompson Elec. v. Bank One, Akron, N.A.*, 37 Ohio St. 3d 259, 265 (1988). What is clear is that all elements of negligence must exist to establish gross negligence. *See Johnson*, 66 Ohio St. at 63. The elements of a negligence claim are: (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach. *In re Nat'l Century Fin. Enters., Inv. Litig.*, 504 F. Supp.2d 287, 324 (S.D. Ohio 2007); *Wallace v. Ohio Dep't of Commerce*, 96 Ohio St.3d 266, 274 (2002).

15

Plaintiffs base their Sixth Claim on the allegation that "Defendants owed Plaintiffs a duty of care to properly manage the Project and their investment funds consistent with the offering documents, EB-5 rules and regulations, and the representations made to Plaintiffs." FAC, ¶101. First, Plaintiffs do not identify the EB-5 rules or regulations with which "Defendants" allegedly acted inconsistent. And, as discussed above, the few alleged misrepresentations contained in the FAC are not actionable regardless of whether Plaintiffs label them fraud or gross negligence. What remains is Plaintiffs' conclusory allegation that "Defendants" violated a duty of care to manage the Project consistent with the offering documents. FAC, ¶101. The only paragraph which attempts to assert any factual support for this allegation, in connection with Terry Chan or Gary Chan, is found in paragraph 52. Plaintiffs allege that investment funds were invested in technology companies, "which was inconsistent with the Fund's business plan and KRC's regional charter." FAC, ¶52. Plaintiffs do not explain how those investments were inconsistent with the Fund's business plan or KRC's regional charter. The first sentence of the PPM states that the intention of the Fund is "to *finance the expansion and operations* of income-producing real estate assets *and businesses*..." (emphasis added) FAC, Exhibit A, p. 1. The PPM specifically states that the Project anticipates making an investment in "an early-stage technology company." FAC, Exhibit A, p. 7, 11. The Limited Partnership Agreement states, in relevant part, "The purpose of the Partnership shall be to invest in...emerging companies in the Healthcare, Technology, Life Sciences and Research and Development Industries..." FAC, Exhibit B, p. 1, Article II(B). Also, Plaintiffs fail to attach a copy of the Fund's business plan(s) or KRC's regional charter. The business plan(s) is an exhibit to and thus part of the PPM. A copy of the October 2011 Comprehensive Business Plan of KRC Fund I, LP ("October 2011

16

Business Plan") is attached hereto as Exhibit 1.[1]  The October 2011 Business Plan specifically identifies that approximately 310 jobs will be created from technology related companies. Exhibit 1, p. 21.  A copy of the February 2012 Comprehensive Business Plan of KRC Fund I, LP ("February 2012 Business Plan") is attached hereto as Exhibit 2.  The February 2012 Business Plan states that Project will make a direct investment into Wearcast and includes a five page business summary relating to Wearcast.  Exhibit B, p. 16, 54-58.  A copy of the November 2013 Comprehensive Business Plan of KRC Fund I, LP ("November 2013 Business Plan") is attached hereto as Exhibit 3.  The November 2013 states that the Fund "will make an investment in a comprehensive restaurant marketing platform called Zipscene…"  Exhibit 3, p. 9.  Plaintiffs' allegation that an investment in "technology companies, like Zipscene and Wearcast" was not consistent with the Business Plan or offering documents is belied by the very documents they acknowledge that they accepted and agreed to.  Plaintiffs' claim for gross negligence should be dismissed.

Plaintiffs also fail to identify a duty independent of the contract they entered into with the Fund.  In Ohio, "generally, the existence of a contract action excludes the opportunity to present the same case as a tort claim." *Wells Fargo Bank,* 931 F. Supp. 2d at 838 (citations omitted).  A party may not transform a breach of contract claim into a tort claim by simply additionally alleging that the opposite party intentionally, wantonly, or maliciously failed to perform its contractual duties.  *Id.*  "Nevertheless, a plaintiff may state a tort claim in addition to a breach of

---

[1] A court may consider documents that a defendant attaches to a motion if the documents "are referred to in the plaintiff's complaint and are central to her claims" without converting the motion to one for summary judgment. *McLaughlin v. Cnx Gas Co.,* 2016 U.S. App. LEXIS 1138, at *5 (6th Cir. 2016) (citing *Weiner v. Klais & Co.,* 108 F. 3d 86, 89 (6th Cir. 1997)).

17

contract claim if the plaintiff is able to demonstrate tortious conduct by the defendant that breached "a duty owed separately from that created by the contract, that is a duty owed even if no contract existed." *Id.* (citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 149 (9th Dist. 1996). In addition, a tort claim arising out of a breach of contract "*must* include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of the contract." *Textron*, 115 Ohio App. 3d at 151.

Plaintiffs' gross negligence claim fails to identify a duty owed independent of those created by the Agreements, including the PPM, Limited Partnership Agreement and exhibits thereto. Plaintiffs' gross negligence claim is premised on the "Defendants" alleged failure to "properly manage the Project and their investment funds consistent with the offering documents . . . ." FAC, ¶101. Clearly, these duties are contractual. Defendants would have no duty to manage Plaintiffs' investment in the absence of the Agreements. Moreover, assuming Plaintiffs could establish a separate duty arising independent of the Agreements, their gross negligence claim is insufficient because it fails to allege actual damages beyond Plaintiffs' investment and the administration fees. As a result, Plaintiffs' gross negligence claim fails as a matter of law.

In addition, under Ohio Law, the economic loss rule generally prevents recovery in tort of damages for purely economic loss. *Wells Fargo Bank,* 931 F. Supp. 2d at 838 (citing *Corporex Dev. & Constr. Mgmt. v. Shook, Inc.*, 106 Ohio St. 3d 412, 415 (2005). "The well established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Id.* (citing *Floor*

18

*Covering, Inc. v. Parma Community General Hosp. Ass'n.*, 54 Ohio St. 3d 1, 3 (1990). Plaintiffs allege in paragraph 103 that "[a]s a direct and proximate result of Defendant's gross negligence, Plaintiffs have been damaged in excess of $5,000,000 . . ." These alleged damages exactly mirror the total amount of Plaintiffs' investment. Consequently, Plaintiffs' gross negligence claim constitutes a claim sounding in negligence seeking economic damages and is, therefore, barred by Ohio's economic loss rule.

> **G.**   **Plaintiffs' Seventh Claim (Securities Law Violations) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6) And For Failure To Allege Claims With Particularity Under 9(B)**

Plaintiffs allege fraud in violation of federal securities laws in their Seventh Claim. "To succeed on that claim, plaintiffs must establish: (1) a misrepresentation or omission, (2) of a material fact, (3) made with scienter, (4) justifiably relied on by plaintiffs, and (5) proximately causing them injury." *Pub. Sch. Teachers Pension & Retirement Fund v. Ford Motor Co.*, 381 F.3d 563, 567 (6th Cir. 2004). Claims under Section 10(b) (15 U.S.C. § 78j(b)) of the Exchange Act are subject to the pleading requirements of Rule 9(b). *Tellabs*, 551 U.S. at 313. Unlike their state law fraud claim, Plaintiffs' federal fraud claims are also governed by the "exacting pleading requirements" described in the Private Securities Litigation Reform Act ("PLSRA"), 15 U.S.C. § 78j(b). *Id.* The PLSRA imposes heightened pleading requirements. Adding to the Rule 9(b) requirement that plaintiffs state their fraud allegations with particularity, the PLSRA "insists that securities fraud complaints 'specify' each misleading statement; that they set forth facts 'on which [a] belief 'that a statement is misleading was 'formed'; and that they 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state

19

of mind.'" *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (*quoting* 15 U.S.C. §§ 78u-4(b)(1), (2)).

Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 2. (1976). The Sixth Circuit has instructed that, a court's "task is thus to determine whether the Complaint alleges facts that, if true, would, by forming the basis for a strong inference, 'convince a reasonable person that the defendant knew a statement was false or misleading.'" *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 683 (6th Cir. 2005) (citation omitted). Therefore, courts must employ a "totality of circumstances" test in assessing whether a plaintiff has adequately alleged scienter, and among the factors that the Sixth Circuit has considered in the past are

> (1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs.

*Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 917 (6th Cir. 2007) (*quoting City of Monroe Employees Ret. Sys.*, 399 F.3d at 683).

"[S]cienter 'is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers' which is

20

either known to the defendant or is so obvious that the defendant must have been aware of it."
*Earthboard Sports USA, Inc.*, 481 F.3d at 917-18 (quoting *Platsis v. E.F. Hutton & Co.*, 946 F.2d
38, 40 (6th Cir. 1991)).

Plaintiffs' Seventh Claim rests on the identical factual grounds as their state law fraud
claims and should be dismissed for those same reasons articulated above in Section C of this
Memorandum. The arguments set forth above establishing that Plaintiffs' state law fraud claims
fail as a matter of law are incorporated and asserted against Plaintiffs' Seventh Claim as if fully
stated herein.

Even if Plaintiffs claim met those pleading requirements, their securities fraud claim still
fails because they have not adequately alleged scienter. The FAC is completely devoid of any
factual support that gives rise to a strong inference that the Defendants acted with the required
state of mind. The conclusory allegations that "Defendants knew" and that "Defendants" "never
had any intention" are insufficient. FAC, ¶¶ 86-88. For this reason, and those incorporated from
above, Plaintiffs' Seventh Claim should be dismissed.

## H.     Plaintiffs' Eighth Claim (Conspiracy) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6)

For their Eighth Claim, plaintiffs allege conspiracy. A civil conspiracy under Ohio law is
"a malicious combination of two or more persons to injure another in person or property, in a
way not competent for one alone, resulting in actual damages." *LeFort v. Century 21-Maitland
Realty Co.*, 32 Ohio St. 3d 121,126 (1987). The elements of a civil conspiracy are as follows:
(1) a malicious combination; (2) of two or more persons; (3) injury to person or property; and

21

(4) existence of an unlawful act independent from the actual conspiracy.  *Universal Coach, Inc. v. New York City Transit Authority, Inc.*, 90 Ohio App.3d 284, 292 (1993).  Also, a conspiracy claim must be pled with some degree of specificity; vague or conclusory allegations unsupported by material facts are not sufficient to state a claim.  *Avery v. Rossford, Ohio Transportation Improvement Dist.*, 145 Ohio App.3d 155, 165 (2001).

Conspiracy in and of itself does not normally establish a basis for recovery in a civil action in Ohio; rather, there must be an actionable wrong committed as a result of the conspiracy.  *In re Nat'l Century Fin. Enters., Inv. Litig.*, 504 F. Supp. 2d 287, 326-27 (S.D. Ohio 2007); *NPF IV, Inc. v. Transitional Health Services*, 922 F. Supp. 77, 83 (S.D. Ohio 1996).  An action for civil conspiracy cannot be maintained unless an underlying unlawful act is committed.  *Id.* (citing *Orbit Elecs., Inc. v. Helm Instrument Co., Inc.*, 167 Ohio App. 3d 301, 313 (8th Dist. 2006).

Plaintiffs predicate their conspiracy claim on alleged fraudulent misrepresentations of Defendants and their alleged conversion.  *See* FAC, ¶ 108.  However, because Plaintiffs' claims for fraud and conversion fail, so must their claim for conspiracy.

Assuming *arguendo*, that Plaintiffs' had alleged an underlying tort on which to base their claim for conspiracy, it still fails as a matter of law.  Plaintiffs have again lumped all defendants together and failed to identify any particulars about any purported unlawful agreement.  Other than the conclusory allegations that "the Chans and Angiulli conspired to come up with a plan to line their own pockets," Plaintiffs offer no other allegations to support their claim for conspiracy. "A general allegation of conspiracy without a statement of facts is an allegation of a legal

22

conclusion and insufficient of itself to constitute a cause of action. Although detail is unnecessary, the plaintiffs must plead the facts constituting the conspiracy, its object, and accomplishment." *Schell v. Kaiser-Frazer Sales Corp.*, 28 Ohio App. 2d 16, 21 (2d Dist. 1971). Plaintiffs have included none of these details. Plaintiffs fail to identify when the alleged conspiracy was formed. Nor is it averred who made the alleged fraudulent statements or which Defendants converted any of Plaintiffs' property. Plaintiffs' claim for conspiracy fails as a matter of law.

I. **Plaintiffs' Tenth Claim (Piercing The Corporate Veil) Must Be Dismissed For Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(B)(6)**

In their Tenth Claim, Plaintiffs purport to bring a claim for "piercing the corporate veil." Plaintiffs' Tenth Claim fails to state a cognizable legal claim. In Ohio, "piercing the corporate veil is not a cause of action in and of itself, but rather, is a legal rule or doctrine that permits a court to disregard the formal corporate structure so that individual shareholders may then be held liable for the actions of the corporation." *See Hitachi Med Sys. Am., Inc. v. Branch*, 2010 U.S. Dist. LEXIS 107345 at *6 (N.D. Ohio) (citing *Trinity Health Sys. v. MDX Corp.*, 180 Ohio App.3d 815, 826 (7th Dist. 2009); *see also Taylor Steel Inc. v. Keeton*, 417 F.3d 598, 606 (6th Cir. 2005)(interpreting Ohio law and recognizing that piercing the corporate veil is an equitable remedy). As a result, Plaintiffs' Tenth Claim should be dismissed pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted.

23

## III.   CONCLUSION

WHEREFORE, Defendants Terry Chan and Gary Chan respectfully request that

Plaintiffs' First Amended Complaint be dismissed with prejudice, and for such other relief as the

Court deems just.

Dated: January 25, 2016               Respectfully submitted

                                      /s/ Mason N. Floyd_____
                                      Mason N. Floyd (06282874)
                                      Admitted *Pro Hac Vice*

                                      /s/ Leigh D. Roadman_____
                                      Leigh D. Roadman (06193461)
                                      Admitted *Pro Hac Vice*

                                      CLARK HILL PLC
                                      135 South LaSalle Street, Suite 3200
                                      Chicago, IL 60603
                                      Telephone (312) 360-5000
                                      Facsimile: (312) 360-5026
                                      E-Mail: mfloyd@clarkhill.com
                                      E-Mail: lroadman@clarkhill.com

                                      Attorneys for Gary Chan and Terry Chan

                                      /s/ Jennifer K. Nordstrom_____
                                      Jennifer K. Nordstrom
                                      GARVEY SHEARER NORDSTROM PSC
                                      11260 Chester Road
                                      Suite 260
                                      Cincinnati, OH  45246
                                      Telephone (513) 445.3373
                                      Facsimile (866) 675-3676
                                      E-Mail: jnordstrom@garveyshearer.com

24