## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| JIAXI HU, MENGFANG LI, XIAOYAN WU, WEI REN, RUIMIN CHEN, JIANLI DU, JIMEI ZHANG, ZHENPING HAO, JIE CIU AND GUIYING WANG, | Case No. 1:15-cv-709-SSB-SKB<br><br>The Honorable Sandra S. Beckwith<br>District Judge |
|                Plaintiffs, | The Honorable Stephanie K. Bowman<br>Magistrate Judge |
| v. | |
| TERRY CHAN, GARY CHAN, MARTIN ANGIULLI, ANGIULLI, INC., KENTUCKY REGIONAL CENTER, LLC D/B/A MIDWEST EB-5 REGIONAL CENTER, SV ARX, LLC, DANTE BELLA, LLC AND JEFFREY JACOBS | |
|                Defendants. | |

## <u>MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

Now come Plaintiffs, Jiaxi Hu, Mengfang Li, Xiaoyan Wu, Wei Ren, Ruimin Chen, Jianli Du, Jimei Zhang, Zhenping Hao, Jie Cui, and Guiying Wang ("Plaintiffs"), and for their Memorandum in Opposition to the Civil Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 29] filed by Defendants, Martin Angiulli, Kentucky Regional Center, LLC d/b/a Midwest EB-5 Regional Center, SV ARX, LLC Dante Bella, LLC, and Jeffrey Jacobs, state as follows:

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ……………………………………………………………......4

SUMMARY OF THE ARGUMENT ………………………………………………………4

STANDARD OF REVIEW …………………………………………………………10

LAW AND ARGUMENT…………………………………………………………………11

I.   SV ARX's and its Co-defendants' unlawful acts make Each defendant individually liable under a "piercing The Corporate Veil" theory …………………………………………..12

    a.   Elements necessary to "pierce the corporate veil"………………………………12

        i.   Complete Control………………………………………………………...13

        ii.   Control used in a manor to commit fraud……………………………14

        iii.   Injury or unjust lost………………………………………………………15

    b.   Piercing the corporate veil as a remedy…………………………………………15

II.   SV ARX and its co-defendants Conspired to perpetrate frauds and other unlawful acts against plaintiffs …………………………………………………………………16

    a.   The FAC is replete with allegations of unlawful conduct against SV ARX ……16

    b.   Plaintiffs are not required to allege additional conspiracy damages ……………17

III.   Plaintiffs' allegations against Angiulli, Inc. and Dante Bella, LLC are valid…………17

IV.   Plaintiffs have properly stated a cause of action for breach of contract………………..20

    a.   The PPM, Partnership Agreement, and conduct of the Parties form an enforceable contract ………………………………………………………………20

    b.   Martin Angiulli, A-Inc., Dante Bella, and Jeffrey Jacobs are all liable to Plaintiffs for unlawful breach of contract……………………………………………21

    c.   Plaintiffs have adequately alleged a breach of contract against KRC…………22

V.   Plaintiffs have properly stated a cause of action for breach of fiduciary duty………… 24

     a.   Plaintiffs allegations of breach of fiduciary duty are appropriately alleged against all Defendants……………………………………………………………24

VI.    Plaintiffs have properly stated a cause of action for conversion………………………26

VII.   Plaintiffs have properly stated a cause of action for common law and securities fraud…27

     a.   Plaintiffs have alleged fraud with requisite particularity………………………28

     b.   Plaintiffs' claim for securities fraud is not time-barred…………………………29

     c.   Plaintiffs' purchases of units in a limited partnership qualify as "securities"…30

     d.   Plaintiffs sufficiently plead the elements of common law fraud and securities fraud …..……………………………………………………………………32

         i.   Material Misrepresentations………………………………………………32

        ii.  To the extent necessary, Plaintiffs have adequately alleged reasonable reliance ………………………………………………………………32

       iii.  Plaintiffs have adequately alleged that their damages were cause by Defendants' misrepresentations………………………………………34

       iv.  Plaintiffs have properly alleged scienter…………………………………35

VIII.  Plaintiffs have properly stated a cause of action for gross negligence………………35

     a.   SV ARX owed a duty of care to Plaintiffs………………………………………35

     b.   Plaintiffs Gross Negligence claim is not barred by the economic loss rule……36

IX.    Plaintiffs have properly stated a cause of action for unjust enrichment…………………36

    CONCLUSION AND MOTION TO AMEND………………………………………………37

## INTRODUCTION

The Motion to Dismiss ("MTD") characterizes Plaintiffs' lawsuit as an attempt to "seek a refund on their venture and turn Defendants into guarantors of their financial decisions… " This is grossly inaccurate. A more accurate characterization is that Plaintiffs are seeking recovery of funds that were misappropriated by the Defendants in this case, not by innocent market forces.

Defendants, Martin Angiulli, Kentucky Regional Center, LLC d/b/a Midwest EB-5 Regional Center, SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs (hereafter, collectively "SV ARX"), in concert with the other Defendants, engaged in a wide-ranging, multi-year scheme to defraud the Plaintiffs and embezzle their substantial investments through gross mismanagement and rampant self-dealing. SV ARX now asks this Court to dismiss the Plaintiffs' claims and forestall the discovery that will reveal the true nature and extent of their misdeeds.  For the legal and factual reasons to be set forth in detail herein, the Court should deny SV ARX's Rule 12(b)(6) Motion to Dismiss in its entirety.  In the event that the Court finds any credence to any of SV ARX's arguments, Plaintiffs respectfully move the Court, in accordance with Civil Rule 15(a), for leave to amend the Complaint so that this matter may be heard and determined on the merits.

## SUMMARY OF THE ARGUMENT

Based on SV ARX's and other Defendants' unlawful conduct, each of the individual defendants are liable to Plaintiffs under the doctrine of piercing the corporate veil. To successfully pierce the corporate veil in Ohio, one must demonstrate: (1) control over the corporation… was so complete that the corporation has no separate mind, will, or existence of its own; (2) control over the corporation… was exercised in such a manner as to commit fraud, an illegal activity, or similar unlawful act against the person seeking to disregard the corporate

entity; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. *Dombroski v. Wellpoint, Inc.*, 119 Ohio St. 3d 506, 895 N.E.2d 538 (Ohio 2008). The FAC demonstrates that Martin Angiulli had complete control over the "corporate" SV ARX defendants and used this control to commit unlawful breach of contract, conversion of Plaintiffs' investment, and gross negligence. Further, Ohio Courts recognize that "corporate veil" is a remedy within a claim. *Geier v. Nat'l GG Indus.*, CASE NO. 98-L-172, 1999 Ohio App. LEXIS 6263, at *10 (Ct. App. Dec. 23, 1999). Consequently, the FAC sufficiently demonstrates that SV ARX's and its Co-defendants' unlawful acts make each defendant individually liable under a piercing the corporate veil theory.

The FAC also appropriately demonstrates that SV ARX and its co-defendants conspired to perpetrate frauds and other unlawful acts against Plaintiffs. Under Ohio law, the elements of a civil conspiracy claim are: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. *Universal Coach, Inc. v. N.Y.C. Transit Auth.*, 90 Ohio App. 3d 284, 292 (1993). The FAC clearly demonstrates that the "malicious combination" of the Defendants in this case committed multiple unlawful acts and thereby caused financial injury to plaintiff. Contrary to SV ARX's motion, Plaintiffs do not need to prove additional damages beyond those caused by Defendants' unlawful activity. They only need demonstrate that those damages were attributable to the conspiracy. *Avery v. City of Rossford*, 145 Ohio App. 3d 155, 762 N.E.2d 388 (2001). Plaintiffs have sufficiently plead as much. Consequently, Plaintiffs claims for conspiracy are sufficiently plead.

SV ARX argues that Angiulli, Inc. and Dante Bella, LLC should be dismissed because "the FAC is completely devoid of any allegations of wrongdoing against Angiulli, Inc. and Dante

5

Bella, LLC that resulted in an injury to Plaintiffs." This is not accurate. This memorandum discusses at length the multiple unlawful acts that SV ARX and it co-defendants perpetrated against Plaintiffs. Further, in conspiring to perpetrate these unlawful activities, SV ARX "lumped" themselves together to such an extent that, without discovery, Plaintiffs cannot consistently and with specificity distinguish which conduct is attributable to which party. "Rule 8 does not require [the] Plaintiff[ ] to identify each of the [ ] Defendants by name each time the Complaint makes an allegation that applies equally to all." *Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 561-62 (S.D.N.Y. 2011). From Plaintiffs' perspective, each of its claims apply equally to any or all defendants. Thus, the FAC, as filed, is appropriate.

SV ARX cites *McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*, 339 F.3d 1087 (9th Cir. 2003) for the proposition that the PPM is not a contract. In *McKesson*, however, the offering at issue was a formal "prospectus" as defined by 15 USC §77b(10) using Form S-4 as published by the Securities and Exchange Commission. *Id.* at 1092. According to the United States Supreme Court, "a prospectus under § 10 is confined to documents related to *public* offerings by an issuer or its controlling shareholders." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995). As such, a *private* placement memorandum is not a prospectus. While a prospectus may not be a contract, a private placement memorandum may be. Whether or not the PPM is a binding contract depends upon the document itself and the facts surrounding it. Construing all such facts in Plaintiffs' favor, this Court should conclude that the PPM *is* a part of the contract.

Plaintiffs have also adequately plead breach of contract. In *R.L.R. Invs., LLC v. Wilmington Horsemens Grp., LLC,* 22 N.E.3d 233, 239 (Ohio Ct. App. 2014), the court

6

acknowledged that Plaintiffs alleged a proper corporate veil argument "by demonstrating that the Individuals *unlawfully* breached the contract." (Emphasis added). Based on this "unlawful breach" argument, the *R.L.R.* court further stated that plaintiffs were not even *required* to allege fraud to maintain a corporate veil claim. *Id.* In this case, Plaintiffs have plead that KRC unlawfully breached the Partnership Agreement. Plaintiffs also plead that KRC [and other defendants] perpetrated frauds against them. Construing these allegations in Plaintiffs' favor, this Court should find that there was an unlawful breach of contract and that all Defendants are liable under a corporate veil theory.

Plaintiffs have also properly stated  a cause of action for breach of fiduciary duty. In *Schafer v. RMS Realty*, 138 Ohio App. 3d 244, 273 (2000), the court stated that "actions taken in accordance with a partnership agreement can still be a breach of fiduciary duty if partners have improperly taken advantage of their position to obtain financial gain." The *Schafer* Court further stated that "the fiduciary duty [amongst partners] exists concurrently with the obligations set forth in the partnership agreement whether or not expressed therein." *Id.* at 276-77. Accordingly, SV ARX's argument that there was no fiduciary relationship between it and Plaintiffs is meritless. Finally, the FAC alleges repeatedly that this duty was breached by SV ARX's unlawful conduct.

Plaintiffs have stated a valid claim for conversion against SV ARX.  SV ARX argues that Plaintiffs' cause of action for conversion cannot lie because it is for the conversion of a "mere debt." However, money can be the subject of conversion where the money is earmarked for a specific purpose or intended to be otherwise sequestered.  Here, nearly all of the Plaintiffs' investment dollars were to be escrowed and not touched by Defendants until their conditional visa applications were approved and the money was only to be spent towards the promotion of

economic growth consistent with the EB-5 program. As such, Plaintiffs have adequately plead their cause of action for conversion.

Plaintiffs have properly plead their claims for common law fraud and securities fraud. In Ohio, an action for fraudulent concealment requires proof of (1) a misrepresentation or concealment of a fact when there is a duty to disclose, (2) that is material to the transaction, (3) made falsely, or with knowledge of or reckless disregard as to its falsity, (4) with the intent of misleading another into relying on it, (5) justifiable reliance on the misrepresentation or concealment, and (6) resulting injury proximately caused by the reliance." *Doane v. Givaudan Flavors Corp.*, 184 Ohio App. 3d 26, 36 (2009). SV ARX concealed critical, material, partnership information from its partners knowing that Plaintiffs reasonably relied on its representations. As such, SV ARX is as culpable to Plaintiffs as the Defendants who made affirmative misrepresentations to Plaintiffs.

Plaintiffs' fraud claims are *not* time barred. In *Merck & Co. v. Reynolds*, 559 U.S. 633,652, 130 S. Ct. 1784 (2010), the court explicitly stated that it "reject[s] 'inquiry notice' as the standard generally… [because it] cannot reconcile it with the statute, which simply provides that 'discovery' is the event that triggers the 2-year limitations period--for all plaintiffs." Plaintiffs filed their lawsuit with 2-years of the absolute earliest date that Plaintiffs could have arguably "discovered" SV ARX's fraudulent conduct. The claim is, therefore, timely.

The statutory definition of "securities" includes investments "designated by such descriptive terms as 'certificate of interest or participation in any profit-sharing agreement,' 'investment contract' and in general, any interest or instrument commonly known as a 'security.'" *SEC v. W. J. Howey Co.*, 328 U.S. 293, 297-99 (1946). In *SEC v. W. J. Howey Co.*, the Supreme Court of the United States defined "investment contract" as, "a contract, transaction or scheme

8

whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party…." An investment contract is precisely what the Plaintiffs entered into with defendants. As such, the Securities Act applies to SV ARX's misconduct.

SV ARX argues that Plaintiffs could not have reasonably relied on SV ARX's representations because of disclaimer language in the Private Placement Memorandum ("PPM"). Under *Pharos Capital Partners, L.P. v. Touche, L.L.P. (In re Nat'l Century Fin. Enters.)*, 905 F. Supp. 2d 814 (S.D. Ohio 2012), however, "general disclaimers do not preclude a claim for fraud in the inducement" and "disclaimers do not preclude a party from claiming reliance on an alleged misrepresentation of a fact that is peculiarly within the other party's knowledge… [where] those parties have no independent means of ascertaining the truth." *Pharos Capital Partners, L.P.* at 826. Plaintiffs were not sophisticated in this type of investment, did not have access to fully disclosed investment data, and did not knowingly and willfully "close their eyes" to potential red flags. Disclosing that an investment has risk is not a license to steal the investors' money as happened in this case. SV ARX's argument that Plaintiffs' reliance was not justified is without merit.

With regard to scienter, the United States Supreme Court has held, "a court must consider plausible non-culpable explanations for a defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable… it must be cogent and compelling, thus strong in light of other explanations." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Assuming all facts in the light most favorable to Plaintiffs, SV ARX knowingly and intentionally took advantage of Plaintiffs. This is as cogent a

theory as any, particularly given that no other theories are presented. Accordingly, Plaintiffs have sufficiently plead scienter.

Ohio's economic loss rule "does not bar plaintiff's tort claims where the defendant's conduct "went beyond the failure to perform promises contained in the contract." *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F. Supp. 2d 834, 842 (S.D. Ohio 2013). As plead in the FAC, SV ARX's conduct went well beyond breach of contract, including fraud and conversion. As such, an exception to the economic loss rule applies and SV ARX is consequently liable.

Finally, SV ARX correctly states that there cannot be an unjust enrichment claim where there is a contract. That contract, however, must be between the party seeking the relief and the other contracting party. *See, Glimcher Co., LLC v. Deavers the Shops at Ety Vill. LLC*, No. 2:09-cv-797, 2010 U.S. Dist. LEXIS 38214, at *29 (S.D. Ohio Apr. 19, 2010). In this instance, the contract that SV ARX relies on is between KRC and SV ARX, LLC. Plaintiffs were *not* a party. Consequently, Plaintiff's claim for unjust enrichment is proper.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of an action for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  As the Supreme Court held in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007), the pleading standard set forth in Rule 8 does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *See Iqbal*, 556 U.S. at 678.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*

**<u>LAW  AND ARGUMENT</u>**

The First Amended Complaint (the "FAC") alleges multiple well-pled causes of action against the Defendants that should not be dismissed under Rule 12(b)(6). These include breach of contract, breach of fiduciary duty, conversion, unjust enrichment, common law and securities fraud, and gross negligence. SV ARX's motion attacks each and every one of these separate claims. In so doing, SV ARX repeatedly emphasizes the ostensible separation or distinction

between Martin Angiulli, Terry and Garry Chan, and all of the other "corporate" defendants in this case. This distinction, however, is a farce perpetrated to shield the individual defendants from the legal consequences of their disreputable conduct. As such, discussing Plaintiffs' conspiracy and "corporate veil" claims *first* will provide this Court with a proper context for its evaluation of Plaintiffs' other, more distinct, claims, and deny defendants' motion.

## I.  SV ARX'S AND IT CO-DEFENDANTS' UNLAWFUL ACTS MAKE EACH DEFENDANT INDIVIDUALLY LIABLE UNDER A "PIERCING THE CORPORATE VEIL" THEORY

The machinations of the individual defendants, shrouded behind the veils of various business entities, is at the core of this case and is the common thread omitted from most of SV ARX's arguments. It is from behind these "veils" that the individual defendants conspired to perpetrate frauds, breach contracts, and commit other unlawful acts against Plaintiffs.

### a.  Elements necessary to "pierce the corporate veil"

Prior to *Dombroski v. Wellpoint, Inc.*, 119 Ohio St. 3d 506, 895 N.E.2d 538 (Ohio 2008), to successfully pierce the corporate veil, a claimant needed to prove that:

(1)   Control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own;

(2)   Control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and

(3)   Injury or unjust loss resulted to the plaintiff from such control and wrong. *Id.* at 543.

In *Dombroski*, the Ohio Supreme Court expanded the type of conduct necessary to satisfy the second element to include fraud, an illegal activity, *or a similar unlawful act. Id*. at 545. Defendants' *unlawful acts* are at the root of most of Plaintiffs' claims. Consequently, the expanded standard in *Dombroski* is significant in this litigation. As discussed in the FAC and

12

below, Martin Angiulli exploited his complete control over SV ARX, LLC, Kentucky Regional Center, LLC d/b/a Midwest EB-5 Regional Center ("KRC"), Angiulli, Inc. ("A-Inc."), and Dante Bella, LLC ("Dante Bella") to perpetrate multiple unlawful acts resulting in injury and loss to Plaintiffs.

#### i.  *Complete Control*

The FAC alleges that:

- Martin Angiulli has complete control of Dante Bella, A-Inc., SV ARX LLC, and KRC such that those entities do not have a separate mind, will or existence of their own and that they are a mere façade for the operations of Angiulli. FAC at ¶111.

- Dante Bella, A-Inc., SV ARX LLC have been grossly inadequately capitalized.  For instance, SV ARX LLC was organized with little to no assets to achieve the business purpose for which it was formed and contrary to the representations made to Plaintiffs.  A-Inc. was inadequately capitalized because it did not have the funds to pay its own expenses and instead siphoned thousands of dollars from SV ARX to pay its expenses. *Id.* at ¶112.

- KRC has also been grossly inadequately capitalized such that it had no money at the outset of the Project and is currently insolvent.  Like A-Inc., KRC siphoned investor money from SV ARX.  *Id.* at ¶113.

- Dante Bella is also nothing more than a shell company formed to shield Angiulli from personal liability and was not adequately capitalized. *Id.* at ¶114.

- Angiulli directed assets of SV ARX to fund the costs of A-Inc., which had no benefit to the Project and only benefitted Angiulli personally.  Angiulli also disregarded corporate formalities by using investor money that SV ARX held in order for Dante Bella to acquire KRC from the Chans.  *Id.* at ¶115.

- SV ARX has failed to pay the Fund interest payments due under an Amended, Restated and Consolidated Promissory Note executed on or about June 10, 2013, which evidences Angiulli's failure to observe corporate formalities.  *Id.* at ¶116.

Construing these allegations in the light most favorable to Plaintiffs, the "complete control" element of Plaintiffs' "corporate veil" argument is easily satisfied. Further, SV ARX admits that SV ARX LLC is a limited liability company and that Martin Angiulli is its sole member. (MTD pg. 8). SV ARX also admits that Angiulli, Inc. is Martin Angiulli's Company (*Id.*), that he is a member of Dante Bella, LLC (MTD pg. 9), and that Dante Bella owns KRC. *Id.*

### ii. Control used in a manor to commit fraud

The FAC generally alleges that Martin Angiulli "controlled SV ARX, KRC, A-Inc., and Dante Bella in such a manner as to commit fraud, breach of fiduciary duty, negligence, conversion and other unlawful acts. (FAC at ¶111). More specifically, the FAC further alleges the following fraudulent and unlawful acts:

- Martin Angiulli funneled approximately $700,000 to his family members that provided no meaningful services on the project. *Id.* at ¶51. Family members were hired and paid for positions like human resources manager for a company that had less than five actual employees. *Id.*

- Martin Angiulli used several thousands of dollars of the Plaintiffs' investments to pay the mortgages and taxes on properties he and/or his alter ego company defendant, Angiulli, Inc. owned. *Id.* at ¶53.

- Martin Angiulli also diverted thousands of investor dollars to pay expenses for his restaurant, Martino's. *Id.*

- Martin Angiulli used investor funds to purchase property but paid the associated rental income to himself rather than SV ARX. *Id.* at ¶54.

- The property purchased with SV ARX/investor funds was used as collateral for a $250,000 line of credit. The line was drawn on and the property sold with no proceeds paid toward the project. *Id.* at ¶55.

- Defendants made material misrepresentations to Plaintiffs that their funds would remain in escrow until the I-526 applications were approved and never had any intention of keeping Plaintiffs' funds in escrow. *Id.* at ¶86.

14

- Defendants made material representations that they would have other, non-EB-5 funding in the Project, which Defendants knew were false. *Id.* at ¶87.

- Defendants made material representations to Plaintiffs that their investments were backed by a government guarantee, the only project of its kind in the United States, which Defendants knew was false. *Id.* at ¶88.

- The representations of Defendants were material, false, misleading, and Plaintiffs reasonably relied upon them to their detriment in making their investments in the Project. *Id.* at ¶89.

In spite of all of this, Defendants argue that "Plaintiffs have failed to sufficiently allege any claim against any entity of which Mr. Angiulli is an owner." (MTD pg. 13). This is obviously not accurate. In fact, the opposite is true. Martin Angiulli is an owner or principal member of almost *every* entity that Plaintiffs have alleged claims against. Hence, the FAC demonstrates that the "[c]ontrol over the corporation[s] by [Martin Angiulli] was exercised in such a manner as to commit fraud or an illegal act against the [Plaintiffs]." *Dombroski*, at 545. Thus, the second element of the corporate veil argument is satisfied.

### iii.  Injury or unjust lost

Finally, the FAC states, "[a]s a direct and proximate result of Defendants' fraud and misrepresentation, Plaintiffs have been damaged in excess of $5,000,000." (FAC at ¶80). The allegations in the FAC and concessions enumerated above, when construed favorably for Plaintiffs, readily fulfill the final element of Plaintiffs' corporate veil argument.

### b.  Piercing the corporate veil as a remedy

SV ARX argues that "'Piercing the Corporate Veil' is not a cause of action in and of itself, but rather, is a legal rule or doctrine that permits a court to disregard the formal corporate structure so that individual shareholders may be held liable for the actions of the corporation."

(MTD pg. 33, *citing Boehnlein-Pratt v. Ventus Corp.*, 2015-Ohio-2794 (Ct. App.)).  Even if this is correct, however, this Court should still grant Plaintiffs the relief they seek against the separate defendants. "Corporate veil" is a remedy within a claim. *Geier v. Nat'l GG Indus.*, CASE NO. 98-L-172, 1999 Ohio App. LEXIS 6263, at *10 (Ct. App. Dec. 23, 1999).

Because the FAC, when construed as favorable to Plaintiffs, readily meets the pleading standard required to pierce the corporate veil, the complete and unjust loss of each of the ten Plaintiffs' $545,000 is attributable to each defendant in this dispute in this dispute individually.

## II.    SV ARX AND ITS CO-DEFENDANTS CONSPIRED TO PERPETRATE FRAUDS AND OTHER UNLAWFUL ACTS AGAINST PLAINTIFFS

Under Ohio law, the elements of a civil conspiracy claim are: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. *Universal Coach, Inc. v. N.Y.C. Transit Auth.*, 90 Ohio App. 3d 284, 292 (1993).  Plaintiffs are not, however, required to plead each and every element of the claim of civil conspiracy with particularity. *Id.* As discussed below, Plaintiffs easily meet their pleading standard with regard to civil conspiracy because the FAC clearly demonstrates that, (1) the malicious combination of; (2) the Defendants in this case; (3) caused financial injury to plaintiffs; (4) by committing multiple unlawful acts as enumerated in the previous section.

### a.    The FAC is replete with allegations of unlawful conduct against SV ARX

SV ARX alleges that Plaintiffs failed to fulfill only one of the aforementioned elements of civil conspiracy. Specifically, SV ARX argues that Plaintiffs failed to allege an underlying unlawful act. This is simply not true. As discussed in the previous section, Plaintiffs have alleged, in detail, multiple unlawful acts. Based on these specific allegations, Plaintiffs have

16

generally alleged that SV ARX unlawfully breached the contract, committed common law fraud and securities fraud, was grossly negligent, etc.

### b.  Plaintiffs are not required to allege additional conspiracy damages

SV ARX cites *Avery v. City of Rossford*, 145 Ohio App. 3d 155, 762 N.E.2d 388 (2001), for the propositions that "a plaintiff must… allege damages attributable to the conspiracy <u>in addition to</u> actual damages caused by the underlying tort." (MTD pg. 32, e*mphasis in original*.) SV ARX, however, takes this case out of context. The *Avery* Court found that damages are only recoverable against a conspiring party when there are *actual* underlying tort damages. *Id.* at 165. Stated differently, the tort damages have to be in some way attributable to the conspiracy. *Avery* does not state that a party must incur two separate and distinct sets of damages – tort damages and conspiracy damages. In many, if not most, cases, there is no difference between the two.

## III.  PLAINTIFFS' ALLEGATIONS AGAINST ANGIULLI, INC. AND DANTE BELLA, LLC ARE VALID

With the elements of "piercing the corporate veil" and conspiracy in place, a contextual evaluation of the remainder of SV ARX's motion is appropriate. SV ARX begins its motion by arguing that Angiulli, Inc. and Dante Bella, LLC should be dismissed because "the FAC is completely devoid of any allegations of wrongdoing against [A-Inc. and Dante Bella] that resulted in an injury to Plaintiffs." (Pg. 11). That's simply not accurate based on the arguments discussed above. If the Court finds in Plaintiffs' favor on any of the claims enumerated in the FAC, then Plaintiffs' remedy for that claim can include a claim against Angiulli, Inc., Dante Bella, LLC, or any of Martin Angiulli's corporate "alter egos" under conspiracy and  corporate veil theories.

Further, Plaintiffs are not arbitrarily "lumping" Defendants together as SV ARX argues. (MTD pg. 11). Conversely, the defendants "lumped" themselves together by conspiring to

perpetrate unlawful activities against Plaintiffs to such an extent that, without discovery, Plaintiffs cannot consistently and with specificity distinguish which conduct is attributable to which party.

SV ARX's motion paints a very distinct line between the "SV ARX, LLC Defendants" and Terry & Garry Chan. But the line between the two is quite blurry, if it exists at all. As noted in the FAC, Martin Angiulli is much more than Terry Chan's business associate or colleague. He is his *father-in-law*. The FAC avers that the Chans and Angiulli, with whom they knew from the restaurant Angiulli operated on Short Vine for many years, conspired with each other to come up with this scheme to lure Plaintiffs' investments under the EB-5 program. FAC at ¶¶28, 29. The FAC further alleges that in late 2010, the Chans, Anguilli and defendant Jacobs worked together to seek EB-5 investors in China in order to raise funds for the Project. Id. at ¶33. Further, Gary Chan spent six months in China in 2011 making presentations to lure Chinese investors and Angiulli and Jacobs participated in the planning and attendance at several of these marketing presentations in China, where the misrepresentations were perpetrated to Plaintiffs. Id. at ¶¶34,35. Simply stated, the close business and personal relationship between Martin Angiulli and the Chans, along with their overlapping roles in the KRC project, the tangled web of corporate entities that they have controlled in furtherance of the KRC project, conspiracy to develop the project, lure Plaintiffs money, market and solicit Plaintiffs' investments, show that the Defendants are all responsible to Plaintiffs and make it difficult to draw any line or distinction among the Defendants for the wrongful conduct and claims alleged in this litigation.

The only case that Plaintiffs site to advance their "lumping" argument is *Aaron v Durrani*, No. 1:13-cv-202, 2014 U.S. Dist. LEXIS 32693, at *7 (S.D. Ohio Mar. 12, 2014). In *Aaron*, however, a very exasperated court had grown sick and tired of having to sift through 976

paragraphs of largely irrelevant factual summaries to attempt to determine the basis of Plaintiffs' RICO claims. *Id*. at *14. The consolidated cases at issue in *Aaron* consisted of six complaints and 93 plaintiffs filed by a particularly litigious plaintiff's attorney that this Court named explicitly in its opinion [Eric Deters]. *Id*. at *6. The Court described the complaints as "unintelligible, inappropriately incorporate[ing] by reference numerous allegations from other civil cases in violation of the rules, and… anything but short and plain." *Id*. at *7. Further, the Court had previously given counsel an opportunity to amend. *Id*. Once it reached its wit's end, this Court cited a case from the southern district of New York for the proposition that it was inappropriate to "lump" defendants together. *Id*. at *15. In a different case, however, the Southern District of New York found that defendants were not being "lumped" under circumstances similar to the case before this Court. Specifically, the court found that, "[r]ule 8 does not require [the] Plaintiff[ ] to identify each of the [ ] Defendants by name each time the Complaint makes an allegation that applies equally to all." *Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 561-62 (S.D.N.Y. 2011). Here, from Plaintiffs' perspective, each of its claims apply equally to any or all defendants. Thus, the FAC, as filed, is appropriate.

Finally, A-Inc. and Dante Bella must remain in the case because they are both real parties in interest and alter egos of Angiulli. A-Inc. owns Martino's Restaurant and the remainder of the property that is supposed to be a part of the project. SV ARX, Angiulli and Jacobs improperly diverted investor funds to pay taxes and other expenses of A-Inc. without any consideration in return. FAC at ¶53. Dante Bella is the owner of the KRC and is nothing more than a shell company organized to shield Angiulli from personal liability, but Dante Bella has no separate mind, will or existence of its own. Further, Dante Bella improperly used investor monies to buy

19

KRC from the Chans.  Id. at ¶64.  The FAC sufficiently alleges that both of these Angiulli-dominated entities have received benefits from the misappropriation of Plaintiffs' investments. Consequently, A-Inc. and Dante Bella are necessary and proper party defendants to this litigation.

## IV. PLAINTIFFS HAVE PROPERLY STATED A CAUSE OF ACTION FOR BREACH OF CONTRACT

### a. The PPM, Partnership Agreement, and conduct of the Parties form an enforceable contract

SV ARX states that "it is well settled that a private placement memorandum which does no more than disclose information about an investment opportunity is not a contract." (MTD pg. 12). In support of this representation, Plaintiff cites three cases, none of which are binding on this Court (including a case from a New York State trial court), and all of which are distinguishable from the facts before this Court. Whether or not the PPM is a Contract is, in fact, pointedly *unsettled*.

The primary case that SV ARX cites is *McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*, 339 F.3d 1087 (9th Cir. 2003). In *McKesson*, the offering at issue was a formal "prospectus" as defined by 15 USC §77b(10) using Form S-4 as published by the Securities and Exchange Commission. *Id.* at 1092. According to the United States Supreme Court, "a prospectus under § 10 is confined to documents related to *public* offerings by an issuer or its controlling shareholders." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995). As such, a *private* placement memorandum is not a prospectus and the *McKesson* holding does not apply. While a prospectus may not be a contract, a private placement memorandum may be.

In the other two cases that SV ARX cites (*Mazzolin v. Lehman Bros. Real Estate Fund III*, L.P., 2015 IL App (1st) 131275-U and *Atl. St. John, LLC v. Yoemans*, 2004 NY Slip Op

51650(U), 5 Misc. 3d 1031(A), 799 N.Y.S.2d 158 (Sup. Ct.)), the courts carefully scrutinized the documents at issue along with their factual contexts before ruling whether or not they constituted a contract. Such an examination is merited on each, private, non-prospectus offering. These cases do *not* stand for the conclusion that *no* Private Placement Memorandum is *ever* a contract.

In the case before this Court, whether or not the PPM is a binding contract depends upon the document itself and the facts surrounding it. Construing all such facts in Plaintiffs' favor, this Court should conclude that the PPM *is* a part of the contract. Further, even if the PPM was not *part* of the Contract, it *induced* Plaintiffs to enter into the Partnership Agreement and the Partnership Agreement clearly *is* a contract. Furthermore, the PPM was incorporated by reference into the Plaintiffs subscription agreements attached to the FAC; those subscription agreements are clearly contracts.

### b. Martin Angiulli, A-Inc., Dante Bella, and Jeffrey Jacobs are all liable to Plaintiffs for unlawful breach of contract

Under the previously-discussed doctrine of piercing the corporate veil, SV ARX's arguments regarding breach of contract are also unavailing. In *R.L.R. Invs., LLC v. Wilmington Horsemens Grp., LLC,* 22 N.E.3d 233, 239 (Ohio Ct. App. 2014), the court acknowledged that Plaintiffs alleged a proper corporate veil argument "by demonstrating that the Individuals *unlawfully* breached the contract." (Emphasis added). Based on this "unlawful breach" argument, the *R.L.R.* court further stated that plaintiffs were not even *required* to allege fraud to maintain a corporate veil claim. *Id.*

In this case, Plaintiffs have plead that KRC unlawfully breached the Partnership Agreement. Plaintiffs also plead that KRC [and other defendants] perpetrated frauds against them. Construing these allegations in Plaintiffs' favor, this Court should find that there was an unlawful breach of contract and that all Defendants are liable under a corporate veil theory.

21

SV ARX also argues that it had the same interest as Plaintiffs. This is not true. The only similarities between SV ARX and Plaintiffs is that Plaintiffs were relying on SV ARX and its principals to use their investment funds consistent with the representations made to them both orally and in the written documents governing their relationship instead of wasting $5.45 million on a project that is in the infancy stages more than 3 years after Plaintiffs invested their hard-earned money. Further, Plaintiffs relied upon SV ARX and its principals to complete the Project and create the jobs necessary to enable these Plaintiffs to get their green cards. Instead, the Plaintiffs have lost $545,000 each and their dreams of U.S. Citizenship are slipping away, yet Angiulli, Jacobs, the Chans and the corporate defendants that they control have funneled Plaintiffs' dollars into their own pockets and that of their family members.

### c. Plaintiffs have adequately alleged a breach of contract against KRC

Defendants' opposing memorandum concedes that, "[o]nce the Fund started receiving capital contributions from investors, the general partner, KRC, loaned the funds to SV ARX to begin work on the Project." (MTD pg. 9). This confirms the FAC's allegation that, "the Chans did not hold the Plaintiffs' funds in an escrow account and began spending the money as soon as it was deposited into the KRC's operating account." FAC at ¶48. This is a clear breach of the contract and demonstrates KRC's bad faith and unlawful conduct.

Article VII Section (D)(5) of the Partnership Agreement also states that, "[t]he General Partner shall be under a fiduciary duty to conduct the affairs of the Partnership in the best interests of the Partnership, including the safekeeping and use of all Partnership funds and assets for the exclusive benefit of the Partnership." The FAC alleges, in detail, that KRC badly breached this duty. SV ARX now argues that "[b]ecause the subsequent owners did not purchase

KRC until January 2014, there can be no liability as to the current owners of KRC for alleged misconduct prior to that date." (MTD pg. 14)."

The "subsequent owner" that SV ARX refers to is Dante Bella, an entity controlled by Martin Angiulli. SV ARX, LLC, also controlled by Angiulli, knew that Plaintiffs' investment was to be deposited into escrow. Further, as their business partner, SV ARX LLC owed Plaintiffs a fiduciary duty of care. Simply put, Martin Angiulli was aware of Plaintiffs' predicament yet accepted their money (on behalf of SV ARX LLC) from KRC and spent it on things that had nothing to do with the Short Vine project. Now that he has owns KRC (through Dante Bella) he seeks to disclaim all liability arising under KRC's "previous ownership."

In *Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St. 3d 344, 346-47 (1993), the Ohio Supreme Court defined successor liability and its exceptions stating,

> The well-recognized general rule of successor liability provides that the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation.
>
> Equally well recognized are the four exceptions to this general rule. A successor corporation may be held liable when:
>
> (1) the buyer expressly or impliedly agrees to assume such liability;
>
> (2) the transaction amounts to a de facto consolidation or merger;
>
> (3) the buyer corporation is merely a continuation of the seller corporation; or
>
> (4) the transaction is entered into fraudulently for the purpose of escaping liability. (*Internal citations omitted*).

In the case before this Court, exceptions three and four both apply. Dante Bella and KRC, the present and past owner of the fund respectively, are the mere continuation of each other. The differences between the two, both before and after the transfer, are paper thin. Further, the

transfer of the KRC's ownership is one of the many devices employed by the Defendants to defraud Plaintiffs out of over half of a million dollars.

## V.  PLAINTIFFS HAVE PROPERLY STATED A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

### a.  Plaintiffs allegations of breach of  fiduciary duty are appropriately alleged against all Defendants

SV ARX argues that Plaintiffs' cause of action for breach of fiduciary duty fails because: (1) Plaintiffs have failed to make any specific allegations regarding breach of fiduciary duty against any specific Defendant; and (2) No fiduciary relationship exists between Plaintiffs and Martin Angiulli, Angiulli, Inc., SV ARX, LLC, Dante Bella, LLC or Jeffrey Jacobs. For the reasons previously discussed, and for the reasons discussed below, this argument is invalid.

In *Schafer v. RMS Realty*, 138 Ohio App. 3d 244, 273 (2000), the court stated that "actions taken in accordance with a partnership agreement can still be a breach of fiduciary duty if partners have improperly taken advantage of their position to obtain financial gain." It continued, "actions allowed by an agreement can be a breach of fiduciary duty when they are not taken in good faith and for legitimate business purposes." *Id.*

SV ARX argues that there is no fiduciary relationship amongst it, KRC, and the Plaintiffs. However, as Justice Cardozo has famously stated,

> co-partners, owe to one another… the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone but the punctilio of an honor the most sensitive, is then the standard of behavior." *Id.* at 276, *citing Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928).

The *Schafer* court cited Justice Cardozo for the proposition that "general partners are to act toward each other with the utmost good faith and integrity." *Id.* at 281. Further,  "each partner is

24

required to consult and inform his co-partner as to partnership matters or material questions not covered by the partnership agreement." *Id.* The *Schafer* Court further stated that "the fiduciary duty [amongst partners] exists concurrently with the obligations set forth in the partnership agreement whether or not expressed therein." *Id.* at 276-77. In fact, "[m]any courts have held that an action can be maintained by one partner against another, even where the partnership transaction is the basis of the suit." *Hanes v. Giambrone*, 14 Ohio App. 3d 400, 404 (1984).

The *Schafer* court also cited Ohio corporate case law for the proposition that "[t]he law is clear, concerning close corporations, that majority or controlling stockholders are liable, absent a legitimate business purpose, if they breach their heightened fiduciary duty to the minority by using their majority control to their own advantage and do not provide minority shareholders with an equal chance to benefit." *Schafer* at 274 (*internal citations omitted*). *Schafer* also noted that, "the law governing close corporations… closely resemble partnerships." *Id.* at 273.

SV ARX's motion describes the partnership between itself and Plaintiffs as "arm's length" and "unilateral" and states that there was "no evidence of any special level of trust or confidence." (MTD pg. 15-16). Nothing could be further from the truth. It is undisputed that KRC was the general partner, SV ARX LLC was the primary limited partner, and that all ten Plaintiffs were limited partners. Furthermore, because the Plaintiffs' investments were lured under the EB-5 visa program, SV ARX is under a heightened duty of special trust to run the project and utilize the investment funds so that at least 10 jobs per investor are created and Plaintiffs get the green cards they coveted.  As such, they owed each other the heightened fiduciary duty contemplated by Ohio law as discussed above. SV ARX unlawfully breached those duties in all of the ways discussed in the FAC and again in this memorandum. Based on the

unlawful nature of these breaches *all* defendants are exposed to liability under the corporate veil doctrine.

Finally, "[u]nder Ohio law, a corporate officer can be held personally liable for tortious acts he or she has committed and, under such circumstances, plaintiffs need not pierce the corporate veil to hold individuals liable who have personally committed such acts." *DeHoff v. Veterinary Hosp. Operations of Cent. Ohio, Inc.*, 2003-Ohio-3334, ¶ 89 (Ct. App.)(*internal quotations omitted*). Based on *DeHoff*, this Court can find that the individual SV ARX defendants are individually liable to Plaintiffs in that their tortious conduct amounts to breach of fiduciary duty, as well as the other tort claims plead in the FAC.

## VI. PLAINTIFFS PROPERLY STATED A CAUSE OF ACTION FOR CONVERSION

SV ARX argues that Plaintiffs' cause of action for Conversion cannot lie because it is for the conversion of a "mere debt." The $5M+ dollars that SV ARX misappropriated from Plaintiffs is *not* a mere debt. It is well-settled that "[m]oney can be the subject of an action for conversion." *NPF IV, Inc., et al. v. Transitional Health Services*, 922 F. Supp 77, 81, 1996 U.S. Dist. LEXIS 4274 (N.E. Ohio 1996). As the Court noted in *NPF IV*, courts have held that a conversion of money occurs "where the money involved is 'earmarked' or is specific money capable of identification, such as money in a bag, coins or notes that have been entrusted to the defendant's care, or *funds that have otherwise been sequestered*." *Id.* (emphasis added) The *NPF IV* Court then goes on to string-cite 4 cases in which courts found that a claim for conversion would not lie because the money at issue had not been "segregated in a separate account," thus clearly implying that a claim for conversion would lie if the money had been so sequestered or was required to have been sequestered. *See id.* As the Court stated in *NPF IV*, "[c]onversion claims have been allowed where the funds in question were *specific or*

26

*sequestered*, identifiable monies or funds *entrusted to the defendant's care for a specific purpose*." *Id.* (emphasis added) (citing *Saydell v. Geppetto's Pizza & Ribs Franchise Sys., Inc.*, 100 Ohio App. 3d  111, 652 N.E.2d 218 (1994) (franchise fee which defendant was contractually obligated to return if condition precedent to performance of contract was not met was subject to conversion); *see also Central Benefits Mut. Ins. Co. v. RIS Admrs. Agency, Inc.*, 93 Ohio App. 3d 397, 638 N.E.2d 1049 (1994) (defendant required under agreement to hold collected funds in a fiduciary capacity for plaintiff and remit them to plaintiff).

In this case, Plaintiffs' funds were clearly subject to conversion. (FAC at ¶ 39)  Plaintiffs' FAC specifically alleges that each prospective investor's subscription payment was "to be held in an escrow account" and would not be "released to the Fund for the Fund's use" unless and until "the USCIS approves the prospective investor's I-526 Petition."   (FAC at ¶¶ 39, 40-46, 59-61)  Furthermore, under the plain language of the PPM, "[i]f the USCIS denies the prospective investor's I-526 Petition, *the* subscription payment will be released from the escrow account and returned to the prospective investor, who will be released from his or her obligation to purchase the Unit."  (FAC at ¶ 39) (emphasis added)  The use of the word "the" clearly implies that each prospective investor was to contribute specific, identifiable funds that were required to be sequestered in escrow and which would be returned to each or any prospective investor in the event that the immigration process did not turn out as hoped.  (FAC at ¶ 39) As such, Plaintiffs' FAC clearly states a valid claim for conversion, and SV ARX's Motion must be denied.

## VII.    PLAINTIFFS PROPERLY STATED A CAUSE OF ACTION FOR COMMON LAW FRAUD AND SECURITIES FRAUD

Plaintiffs have alleged that SV ARX perpetrated a fraud in the PPM and, by extension, fraud in the inducement of the entering into the Partnership Agreement. This fraudulent

inducement renders the Partnership Agreement voidable and SV ARX liable for associated damages.

### a. Plaintiffs have alleged fraud with requisite particularity

SV ARX argues that Plaintiffs failed to meet the pleading standard set out in F.R.C.P. 9(b). This is, again, not true. Plaintiffs allege that while "pitching" the Plaintiffs in China in 2011, Terry and Gary Chan promised the following:

- This was the first project to be guaranteed by government funds.

- Ohio law guaranteed the return of their investment through the Ohio government.

- The Project would receive funds through bank loans and tax credit financing. (FAC 85-88).

Plaintiffs also allege that Defendants Angiulli and Jacobs were aware of these misrepresentations and actively conspired with the Chans to promote this false information in China in order to fraudulently induce Plaintiffs to invest in the Project. (FAC at ¶36). This amounts to fraudulent concealment.

Under Ohio law,

> [a]n action for fraudulent concealment requires proof of (1) a misrepresentation or concealment of a fact when there is a duty to disclose, (2) that is material to the transaction, (3) made falsely, or with knowledge of or reckless disregard as to its falsity, (4) with the intent of misleading another into relying on it, (5) justifiable reliance on the misrepresentation or concealment, and (6) resulting injury proximately caused by the reliance." *Doane v. Givaudan Flavors Corp.*, 184 Ohio App. 3d 26, 36 (2009).

Further, the Southern District of Ohio has recognized that "[t]he elements of fraudulent inducement are essentially the same as those for fraudulent misrepresentation, fraudulent concealment, and fraudulent nondisclosure." *Stuckey v. Online Res. Corp.*, 909 F. Supp. 2d 912, 940 (S.D. Ohio 2012).

SV ARX concealed critical, material, partnership information from its partners. These include the knowing falsity of the representations above, along with the fact that the project was stalled, the money was gone, and that there was a dispute amongst the general partner and SV ARX LLC. SV ARX knew that Plaintiffs reasonably relied on its representations and intentionally concealed information to mislead Plaintiffs by investing their money in the project. As such, SV ARX is as culpable to Plaintiffs as the Defendants who made affirmative misrepresentations to Plaintiffs.

### b. Plaintiffs' claim for securities fraud is not time-barred

Contrary to SV ARX's argument, Plaintiffs' claims are *not* time barred. SV ARX cites *Merck & Co. v. Reynolds*, 559 U.S. 633, 130 S. Ct. 1784 (2010) for the argument that "inquiry notice" triggers commencement of the 2-year statutory period within which a claim may be brought. This is not accurate. In fact, the *Merck* court actually found the opposite and explicitly stated that it "reject[s] 'inquiry notice' as the standard generally… [because it] cannot reconcile it with the statute, which simply provides that 'discovery' is the event that triggers the 2-year limitations period--for all plaintiffs." *Id.* at 652. Further, even if "inquiry notice" were the standard, Plaintiffs claims are still not time barred.

SV ARX first argues that Plaintiffs, residents of China, had "public notice" of a lawsuit that was filed in Cincinnati, Ohio. This argument is simply absurd. It suggests that Plaintiffs should have kept a careful watch from across the globe on the Hamilton County court dockets just in case their partners were secretly up to no good. Such a bizarre argument demonstrates SV ARX's desperation.

SV ARX further points out that Plaintiffs "openly allege" that it was not until October 2013 that Plaintiffs learned that the project was stalled. But a "stalled" project does not

necessarily provide "inquiry notice." And even if it did, it triggered Plaintiffs' duty to investigate, *at best*. The "discovery" of facts that put a plaintiff on "inquiry notice" does not automatically begin the running of the limitations period" – only discovery does. Even if Plaintiffs began their "inquiry" sometime in October of 2013, it is reasonable to conclude that their investigation extended past November 4, 2013 before they "discovered" defendants' fraudulent and unlawful conduct. This is particularly true since Plaintiffs' I-526 applications were approved in January 2014.

Plaintiffs filed suit November 4, 2015. Construing facts in Plaintiffs favor, this clearly occurred within the time set out in the statute of limitations.

### c.  Plaintiffs' purchases of units in a limited partnership qualify as "securities"

The statutory definition of "securities" includes investments "designated by such descriptive terms as 'certificate of interest or participation in any profit-sharing agreement,' 'investment contract' and in general, any interest or instrument commonly known as a 'security.'" *SEC v. W. J. Howey Co.*, 328 U.S. 293, 297 (1946). In *SEC v. W. J. Howey Co.*, the Supreme Court of the United States defined "investment contract" as,

> a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise. *Id.* at 298-99.

An investment contract is precisely what the Plaintiffs entered into with defendants. Specifically, Plaintiffs entered in to a contract in which they anticipated profits solely from the efforts of Defendants. In *Howey*, the Court found an investment contract where potential investors were solicited with an opportunity to contribute money and to share in the profits of a large citrus fruit enterprise managed and partly owned by the respondents. This opportunity was

offered to persons who resided in distant localities and who lacked the equipment and experience requisite to the cultivation, harvesting and marketing of the citrus products. *Id.* at 299-300 (1946). The opportunity in *Howey* is substantially similar to the opportunity offered to Plaintiffs by SV ARX.

SV ARX cites *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 95 S. Ct. 2051 (1975) in support of its argument. But Plaintiffs take the *United Hous. Found., Inc.* case badly out of context. In *United Hous. Found.*, the "securities" at issue were "stock" in a low-income public housing cooperative. The court disregarded the fact that the shares of the cooperative were referred to as "stock" stating that the "form [of the word chosen] should be disregarded for substance and the emphasis should be on economic reality." *Id.* at 840. More importantly, the Court noted that there was *no possibility of any kind of profit* on the stock. In fact, the "non-profit" nature of the endeavor was repeatedly emphasized to group participants. Participants purchased the "stock" exclusively for the purpose of obtaining affordable housing. *Id.* at 840. The Court thus concluded that the stock at issue were not "securities" under federal law. *Id.* at 854.

Further, SV ARX's recognizes that the obtainment of permanent residency status was an important objective for Plaintiffs. (MTD pg. 21). It was not, however, the *only* factor. Nothing in the authority that SV ARX sites stands for the proposition that profit has to be the *sole* reason for engaging in a given transaction or even the *primary* reason. The Limited Partnership Agreement clearly shows that the Plaintiffs expected a return on investment. Thus, because Plaintiffs justifiably had an anticipation of profit based solely on the efforts of Defendants, the partnership interests purchased by Plaintiffs qualify as securities.

**d. Plaintiffs sufficiently plead the elements of common law fraud and securities fraud**

*i. Material Misrepresentations*

SV ARX argues that it made no misrepresentations to Plaintiffs. It does not, however, deny that it was aware of misrepresentations made by the other Defendants and that they knowingly concealed these representations. As previously discussed, knowing concealment is actionable the same as an affirmative misrepresentation.

*ii. To the extent necessary, Plaintiffs have adequately alleged reasonable reliance*

SV ARX cites three pages worth of disclosures in its memo that can be summed up by saying that investment in their scheme involved a "high degree of risk." But losing money in an aggressive investment and having money pointedly misappropriated are not the same thing. In other words, Plaintiffs have not alleged that their money was lost due to ordinary market forces. They allege that Defendants actively engaged in malfeasance that directly and proximately caused their losses. In fact, given that the project never progressed to a point where the bar and restaurant concepts were developed, Defendants misappropriated and wasted Plaintiffs' investment dollars before ordinary market risk came to fruition.

In determining whether reliance is justifiable, courts consider such factors as the sophistication of the parties, the nature of their relationship, their access to information, whether the plaintiff initiated the transaction or sought to expedite it, the nature of the alleged misrepresentation, and the content of any agreement they entered into. *Pharos Capital Partners, L.P. v. Touche, L.L.P. (In re Nat'l Century Fin. Enters.)*, 905 F. Supp. 2d 814, 823 (S.D. Ohio 2012). In this case, the Plaintiffs are from China and not sophisticated in American law, business practices, and most do not speak English fluently. Their relationship with the Defendants is by

no means intimate or familiar. They had access only to the information provided to them by Defendants. Nothing in the agreements with Plaintiffs permits Defendants to spend Plaintiffs' investment capital on non-project related expenses and on items inconsistent with the promotion of economic growth. Accordingly, the case that SV ARX cites actually enhances Plaintiffs' argument that it justifiably relied on the SV ARX's representations.

SV ARX also cites *Pharos Capital Partners, L.P. v. Touche, L.L.P. (In re Nat'l Century Fin. Enters.)*, 905 F. Supp. 2d 814 (S.D. Ohio 2012) for the proposition that "although not a *per se* rule, provisions directing the reader not to rely on certain representations can be a fairly convincing factor of justifiable reliance." (MTD pg. 23). This case does not *per se* say anything close to this. In fact, the *Pharos* court held that "general disclaimers do not preclude a claim for fraud in the inducement" and that "disclaimers do not preclude a party from claiming reliance on an alleged misrepresentation of a fact that is peculiarly within the other party's knowledge… [where] those parties have no independent means of ascertaining the truth." *Pharos Capital Partners, L.P.* at 826.

In *Pharos*, the Plaintiff represented during the negotiation of the investment that it was a "sophisticated investor [and] had the 'knowledge and expertise' to independently conduct due diligence and assess the merits and risks of the equity investment… [and that it had] boxes of data room materials, conducted extensive due diligence, and communicated directly with [key parties]." *Id.* at 824. The *Pharos* claimant also acknowledged and ignored information that later lead to the issues giving rise to its claims. *Id.* at 826. Based on its level of sophistication and degree of due diligence, the court found that the *Pharos* claimant did *not* justifiably rely on the respondent's representations. *Id.*

Simply stated, *Pharos* stands for the proposition that a sophisticated investor who willfully "clos[es] his eyes" during due diligence cannot later claim that he relied on other representations that support his cause of action. *Id.* at 828-829. The case before this Court is quite different. In this case, Plaintiffs were not sophisticated in this type of investment, did not have unfettered access to fully disclosed investment data, and did not knowingly and willfully "close their eyes" to potential red flags. Disclosing that an investment has risk is not a license to steal the investors' money as happened in this case. SV ARX's argument that Plaintiffs' reliance was not justified is without merit.

> iii. *Plaintiffs have adequately alleged that their damages were cause by Defendants' misrepresentations*

SV ARX argues that Plaintiffs failed to adequately plead that their damages were caused by the Defendants' misrepresentations. This argument is bizarre. SV ARX claims that Plaintiffs alleged neither "transaction causation" nor "loss causation." With regard to transaction causation, the FAC explicitly states that "[t]he representations of Defendants were material, false, misleading, and Plaintiffs relied upon them in making their investments in the project." With regard to loss causation, the FAC states, "[a]s a direct and proximate result of Defendants' fraud and misrepresentation, Plaintiffs have been damaged in excess of $5,000,000, plus interest, punitive damages, attorney's fees and costs."

SV ARX continues by arguing that, even if it had not misappropriated Plaintiffs' money prior to the approval of Plaintiffs' I-526 applications, the funds would have been released in January 2014 after the I-526 applications were approved. What possible sense this makes is a mystery. Just because the funds "would have been available for SV ARX to borrow and spend anyway" in January of 2014 does not forgive or explain the Defendants' prior behavior consisting of numerous bad acts with Plaintiffs' funds that led to USCIS revoking Plaintiffs' I-

526 approvals, and the case of Plaintiff Guiying Wang, denying his. Plaintiffs misuse of Plaintiffs money, prior to January of 2014, also led to USCIS' termination of KRC's regional center charter which then caused Plaintiffs' conditional visa approved to be revoked and/or denied.  If the funds would have been held until the appropriate time and then spent appropriately, there would be no cause for this lawsuit.

<em>iv.    Plaintiffs have properly alleged scienter</em>

Next, SV ARX alleges that Plaintiffs failed to properly allege scienter. With regard to scienter, the United States Supreme Court has held,

> To determine whether a plaintiff in a securities fraud action under 15 U.S.C.S. § 78j(b) has alleged facts that give rise to the requisite strong inference of scienter, a court must consider plausible nonculpable explanations for a defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, i.e., of the smoking-gun genre, or even the most plausible of competing inferences. The inference of scienter must be more than merely reasonable or permissible--it must be cogent and compelling, thus strong in light of other explanations." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

Defendants offer no alternative theory to Plaintiffs' allegations that Defendants defrauded Plaintiffs. Perhaps it is because *there isn't one.* Further, Plaintiffs do not, as SV ARX suggests, allege simple mismanagement of the funds. Plaintiffs allege wholesale deceit and misappropriation. Assuming all facts in the light most favorable to Plaintiffs, SV ARX knowingly and intentionally took advantage of Plaintiffs. This is as cogent a theory as any, particularly given that no other theories are presented.

## VIII.    PLAINTIFFS PROPERLY STATED A CAUSE OF ACTION FOR GROSS NEGLIGENCE

### a.  SV ARX owed a duty of care to Plaintiffs

Contrary to SV ARX's representation, and as noted above, SV ARX LLC owed Plaintiffs a duty of care as their partner and as the job-creating entity upon which Plaintiffs' visa applications relied. It bears repeating that "co-partners, owe to one another . . . the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties." *Schafer v. RMS Realty*, 138 Ohio App. 3d 244, 276 (2000) *citing Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928).

SV ARX owed Plaintiffs a heightened duty to make knowing representations, to provide full disclosure, and to be fair and honest. SV ARX willfully and carelessly breached this duty. Further, as the alter ego of Martin Angiulli and his confederates, each of the individual defendants and  sham business enterprises owed this duty to Plaintiffs under the corporate veil theory, breached the duty, and are liable to Plaintiffs for their gross negligence.

### b.  Plaintiffs Gross Negligence claim is not barred by the economic loss rule

SV ARX argues that Plaintiffs claims are barred by Ohio's economic loss rule. SV ARX is again mistaken. Ohio's economic loss rule "does not bar plaintiff's tort claims where the defendant's conduct "went beyond the failure to perform promises contained in the contract." *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F. Supp. 2d 834, 842 (S.D. Ohio 2013). As plead in the FAC, SV ARX's conduct went well beyond breach of contract, including fraud and conversion. As such, an exception to the economic loss rule applies and SV ARX is consequently liable.

## IX.  PLAINTIFFS PROPERLY STATED A CAUSE OF ACTION FOR UNJUST ENRICHMENT

SV ARX correctly states that there cannot be an unjust enrichment claim where there is a contract. That contract, however, must be between the party seeking the relief and the other contracting party. *See, Glimcher Co., LLC v. Deavers the Shops at Ety Vill. LLC*, No. 2:09-cv-

797, 2010 U.S. Dist. LEXIS 38214, at *29 (S.D. Ohio Apr. 19, 2010). In this instance, SV ARX claims that because there was a contract between KRC and the fund, that somehow that contract bars Plaintiffs' unjust enrichment claim. It also argues that it was not a party to the contract and therefore no breach of contract claim can be had by Plaintiffs against SV ARX. SV ARX cannot have it both ways. Furthermore, SV ARX improperly diverted EB-5 funds to other defendants and insider family members in this case, like A-Inc., Dante Bella, Angiulli and his family members that did no work yet received thousands of Plaintiffs dollars  If Plaintiffs are not a party to the "contract" upon which SV ARX bases its argument, then an unjust enrichment claim is proper.

## CONCLUSION AND MOTION TO AMEND

SV ARX's lengthy memorandum supporting its motion to dismiss attacks the FAC with a multitude of arguments. As discussed above, however, none of these arguments stand up to careful scrutiny. Consequently, Plaintiffs respectfully request that this Court deny SV ARX's motion entirely. To the extent that the Court finds any portion of the FAC deficient, Plaintiffs respectfully move the Court, in accordance with Civil Rule 15(a), for leave to amend the Complaint so that this matter may be heard and determined on the merits.

Under Rule 15(a) of the Federal Rules of Civil Procedure, a plaintiff may amend its pleadinds as a matter of course if the amendment is filed within 21 days after the service of a 12(b)(6) motion.  Fed.R.Civ.P. 15(a)(1)(B). If a plaintiff wishes to file an amended complaint after the 21 day grace period, he is required to seek leave of court do so, and Rule 15 provides that "[t]he court should freely give leave when justice so requires."  Fed.R.Civ.P. 15(a)(2). Whether to grant or deny a request to amend a complaint is left to the broad discretion of the District Court.  *Gen. Elec. Co. v. Sargeant & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990).

However, it is well-settled that motions for leave to amend should be liberally granted unless the motions are brought in bad faith or the proposed amendments would cause undue delay, be futile, or unfairly prejudice the opposing parties.  *Foman v. Davis*, 371 U.S. 178, 183, 83 S.Ct. 227 (1962).

Respectfully submitted,

*/S/ Christopher D. Cathey*
Christopher D. Cathey (0071231)
Brian J. Augustine (0084818)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
250 E. Fifth Street, Suite 2200
Cincinnati, OH 45202-5118
Telephone:  (513) 369-4214
Facsimile:  (513) 421-0991
Email:  ccathey@porterwright.com
Email:  baugustine@porterwright.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 16, 2016, a true and exact copy of the foregoing was filed electronically and notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, as follows:

Martha L. Boyd, Esq.
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 800
Nashville, TN 37201

Jennifer K. Nordstrom, Esq.
GARVEY SHEARER, PSC
11260 Chester Road, Suite 110
Cincinnati, OH 45246

Mark D. Griffin, Esq.
Lori H. Patterson, Esq.
Mary Wu, Esq.
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
165 Madison Ave., Suite 2000
Memphis, TN 38103

Mason N. Floyd, Esq.
CLARK HILL PLC
135 South LaSalle Street, Suite 3200
Chicago, IL 60603

*/S/ Christopher D. Cathey*

CINCINNATI/235150v.1