**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JIAXI HU, MENGFANG LI, XIAOYAN WU,
WEI REN, RUIMIN CHEN, JIANLI DU,
JIMEI ZHANG, ZHENPING HAO, JIE CIU,
AND GUIYING WANG,

                                    Plaintiffs,


v.                                                          Case No. 1:15-cv-709-SSB-SKB


TERRY CHAN, GARY CHAN, MARTIN
ANGIULLI, ANGIULLI, INC., KENTUCKY
REGIONAL CENTER, LLC D/B/A
MIDWEST EB-5 REGIONAL CENTER, SV
ARX, LLC, DANTE BELLA, LLC AND
JEFFREY JACOBS

                                    Defendants.


**REPLY OF SV ARX DEFENDANTS PLAINTIFFS' MEMORANDUM**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

        Martin Angiulli, Angiulli, Inc., ("A-Inc."), Kentucky Regional Center, LLC d/b/a

Midwest EB-5 Regional Center ("KRC"), SV ARX, LLC ("SV ARX"), Dante Bella, LLC

("Dante Bella"), and Jeffrey Jacobs (collectively, the "SV ARX Defendants"), through

undersigned counsel, submit this Reply to Plaintiffs' Memorandum in Opposition to Defendants'

Motion to Dismiss (hereinafter, "Response" or "D.E. 39").

        Consistent with their inadequately pled First Amended Complaint ("FAC"), Plaintiffs

have continued to generalize and improperly rely upon group pleading in their Response without

sufficiently identifying actionable conduct against specific Defendants.  Plaintiffs' FAC does not

pass Rule 12(b)(6) scrutiny.  Plaintiffs erroneously assert that by alleging the remedy of

"piercing the corporate veil," rather than sufficiently pleading underlying actionable conduct of

specific parties, they can survive the SV ARX Defendants' Motions to Dismiss.  Alleging,

insufficiently, the remedy of piercing the corporate veil is not a substitute for adequately

pleading causes of action as to each of the Defendants against whom this action is brought. Instead, a piercing remedy only allows a plaintiff who has proved wrongdoing to reach the assets of people and entities beneath the veil.

For the reasons stated in the SV ARX Defendants' Motion to Dismiss and herein, Plaintiffs' FAC should be dismissed as they have failed to sufficiently plead any causes of action against the SV ARX Defendants.

## I.   PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED.

### A.   Plaintiffs point to no case law in support of their assertion that the PPM is a contract.

Plaintiffs cite no case law in support of their allegation that the PPM—a disclosure document providing information with respect to an investment opportunity—constitutes a contract among the parties in this case. Plaintiffs likewise fail to identify which parties are supposedly bound by the PPM. Instead, Plaintiffs simply contend, without legal or factual support, that the PPM may be a contract and that the Court should disregard the cases cited in the SV ARX Defendants' Motion to Dismiss.

The cases cited in the Motion to Dismiss stand for the proposition that an offering document such as a prospectus or a private placement memorandum does not constitute a contract. *See, e.g.*, *Mazzolin v. Lehman Bros. Real Estate Fund III, L.P.*, No. 1-13-1275, 2015 WL 729659, at *7 (Ill. App. Ct. Feb. 18, 2015) (finding private placement memorandum "was merely the memo describing the investment opportunity" and was not a contract); *Atl. St. John, LLC v. Yoemans*, 799 N.Y.S. 2d 158, 2004 WL 2941402, *4-5 (N.Y. Sup. Ct. Oct. 21, 2004) (finding private placement memorandum was not a contract between plaintiffs and defendants), *aff'd sub nom. Atl. St. John, LLC v. Yoemans*, 810 N.Y.S.2d 154 (2006). Even a specific disclosure document like a prospectus, which is required under the federal securities laws for a

public offering of securities, is not a contract or even an "offer" to contract. *See McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*, 339 F.3d 1087, 1092-93 (9th Cir. 2003). Whether the offering document is a private placement memorandum or a prospectus has no bearing on the holdings of these cases. A disclosure or informational document related to a potential investment opportunity or business transaction does not constitute a contractual offer that may be accepted by potential investors.

Plaintiffs attempt to avoid this law by asserting that the PPM induced Plaintiffs to enter into the Limited partnership Agreement ("LPA"), thus making the PPM somehow part of the LPA. Yet Ohio courts have long held that "where a contract has been induced by [allegedly] false representations, the representations and the contract are separate and distinct," and "the representations are usually not regarded as merged in the contract." *Djubasak v. Taylor*, 128 N.E.2d 849, 850 (Ohio Ct. App. 1955). Thus, merely alleging that the PPM induced the Plaintiffs to enter into the LPA does not make the PPM a part of the LPA.

Finally, to the extent the PPM is considered a "contract" because it is allegedly incorporated into the Subscription Agreement, none of the SV ARX Defendants are parties to those agreements. The Subscription Agreements are between the subscribers, who are the individual plaintiffs, and the KRC Fund. (*See, e.g.*, Ex. I to Pls.' FAC, D.E. 4-2, PageID155-157.) Thus, Plaintiffs fail to establish as a matter of law that the PPM is a contract between Plaintiffs and any of the SV ARX Defendants.

## B. Plaintiffs have not alleged that KRC, under its current ownership, breached the contract.

Having failed to factually allege that the current owner of KRC—Dante Bella—breached the LPA, Plaintiffs claim for the first time in their Response that the current owner is liable under an underline(exception) to the generally well-recognized rule that the purchaser of a corporation's assets is

not liable for the debts and obligations of the seller corporation.  *See Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993).  Plaintiffs' belated allegations, however, are insufficient to support their conclusory statements that the transfer of  KRC falls within two of the four "narrow and limited" exceptions to the general rule of non-liability for successors:  mere continuation and fraud.  *See Rondy & Co., Inc. v. Plastic Lumber Co.*, 2011 WL 5377741, *4 (Ohio Ct. App. Nov. 9, 2011).

In *Welco*, the Supreme Court of Ohio declined to expand the traditional understanding of the "mere continuation" exception to the general rule that does not impose liability on successors.  617 N.E.2d at 1133.  Instead, the Court focused on whether there was a continuation of the corporate entity, not the business operation, after the transaction.  *Id.* at 1134.  "Such would be the case when one corporation sells its assets to another corporation <u>with the same people owning both corporations</u>.  Thus, the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation.  This is actually a reorganization."  *Id.* (internal quotation marks and citation omitted).  Here, the same people do not own the selling corporation and the buying corporation.  As alleged in the FAC, the sellers of KRC were Terry and Gary Chan, and the buyer of KRC was Dante Bella, which is owned by Martin Angiulli.  (FAC, ¶ 7.) Factually, this is not a reorganization of corporate structure, no matter how Plaintiffs try to recast the relationships.

Moreover, *Welco* recognized "inadequacy of consideration" as one of the indicia of mere continuation, which is also absent in this case.  *Welco*, 617 N.E.2d at 1134.  It is undisputed that KRC was purchased for $300,000 in January 2014, and Plaintiffs do not question the adequacy of that consideration.  Thus, Plaintiffs have failed to establish the mere continuation exception to the general rule barring  successor liability.

Plaintiffs also attempt to come within the fraud exception to impose successor liability by stating without explanation that "the transfer of KRC's ownership is one of the many devices employed by the Defendants to defraud Plaintiffs out of over half of a million dollars."  While "[i]ndicia of fraud include inadequate consideration and lack of good faith," the FAC does not allege that the $300,000 paid for KRC was inadequate consideration, nor does it provide any facts to indicate that the transaction was entered into in bad faith.  *Welco*, 617 N.E.2d at 1134. Plaintiffs have failed to establish that any of the exceptions in *Welco* apply to this case.

## II.  PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED.

Plaintiffs' attempt to salvage their breach of fiduciary duty claim by citation to case law discussing the fiduciary duties owed by partners.  But this authority does not suggest liability as to Jeffrey Jacobs, Martin Angiulli, A-Inc., Dante Bella, or SV ARX, because none of these individuals or entities were partners to the KRC Fund during any of the relevant time periods. SV ARX was named the "Initial Limited Partner" in the LPA, but it withdrew as a partner in 2011 when the first Plaintiff subscribed to the Fund.  (*See* Ex. I, D.E. 4-9, PageID 184-185.) Thus, SV ARX, Jacobs, Angiulli, A-Inc., and Dante Bella, having never been partners with any of the Plaintiffs, did not have the fiduciary duties as alleged by Plaintiffs.  In the absence of any duty, Plaintiffs cannot state a claim for breach of fiduciary duty against Jacobs, Angiulli, A-Inc., Dante Bella, or SV ARX under Ohio law.

Plaintiffs claim there is a "heightened duty of special trust" in place for projects under the EB-5 visa program, Response, p. 25, but Plaintiffs fail to support this assertion with citation to case law or any statute.  Plaintiffs attempt to unilaterally impose a special duty where only an ordinary, arm's length business relationship exists.  *Hoyt v. Nationwide Mut. Ins. Co.*, 2005 WL 3220192, *7 (Ohio Ct. App. Dec. 1, 2005).  The law does not support the notion that there is any

distinction between this type of project and any other business transaction.  Thus, Plaintiffs have failed to sufficiently state a claim for breach of fiduciary duty against Martin Angiulli, A-Inc., SV ARX, Dante Bella, or Jeffrey Jacobs.

## III.  PLAINTIFFS' CLAIM FOR CONVERSION SHOULD BE DISMISSED.

In responding to Defendants' Motion to Dismiss their conversion claim, Plaintiffs ignore that the KRC Fund to which they subscribed lawfully loaned money to SV ARX under loan agreements between the Fund and SV ARX.  Plaintiffs dispute that the transfer of these funds is a mere debt, but they fail to explain how it is not.  On these facts, their conversion claim against the SV ARX Defendants fails because there is no conversion by wrongful act.

Plaintiffs attempt to avoid dismissal by arguing that a conversion claim may lie where the funds were sequestered or entrusted to the defendant's care for a specific purpose.  (*See* Response, pp. 26-27.)   However, none of the cases relied upon by Plaintiffs for this proposition involved a claim for conversion where there was a loan agreement in place between the parties. In *Saydell v. Geppetto's Pizza Ribs Franchise Sys., Inc.*, 652 N.E.2d 218 (Ohio Ct. App. 1994), the funds at issue were franchise fees and not funds borrowed by the defendant under a loan agreement.  In *Cent. Benefits Mut. Ins. Co. v. RIS Admrs. Agency, Inc.*, 638 N.E. 2d 1049 (Ohio Ct. App. 1994), the Ohio Court of Appeals provided instruction as to what is meant by funds entrusted to the defendant's care for a specific purpose.  The funds at issue in that case were premium funds which were supposed to be held in trust by a third-party administrator of a benefits program.   None of the cases cited involved a conversion claim where the funds at issue were funds loaned to a borrower pursuant to a loan agreement.

Plaintiffs now attempt to assert that their conversion claim is based on the release of funds from escrow before the occurrence of a condition precedent identified in the PPM (a claim not identified in the FAC).  However, conversion requires a defendant's wrongful act or

disposition of the plaintiff's property rights, *Dice v. White Family Cos.*, 878 N.E. 2d 1105, 1109 (Ohio Ct. App. 2007), and it is founded upon an "intentional exercise of dominion or control over a chattel." *Vienna Beauty Prods. Co. v. Cook*, 2015 WL 8012460, *4 (Ohio Ct. App. Dec. 4, 2015) (emphasis removed). This element is missing from Plaintiffs' claim for conversion as to the SV ARX Defendants because none of them intentionally exercised wrongful control over Plaintiffs' funds. There are no allegations (nor could there be) that any of the SV ARX Defendants were in control of the escrow account, nor were they privy to the status of the Plaintiff's I-526 Petitions. Instead, the FAC makes clear that the escrow account and the disbursements from that account were controlled by the Chans. (*See, e.g.*, FAC, ¶¶ 40-48.) ("[T]he Chans did not hold the Plaintiffs funds in an escrow account and began spending the money as soon as it was deposited into KRC's operating account in violation of the PPM.") Thus, Plaintiffs cannot state a claim of intentional exercise of wrongful dominion or control over any of Plaintiffs' funds against the SV ARX Defendants. The conversion claim against these Defendants fails as a matter of law.

## IV. PLAINTIFFS' CLAIMS FOR COMMON LAW FRAUD AND SECURITIES FRAUD SHOULD BE DISMISSED.

### A. Plaintiffs have not alleged that any of the SV ARX Defendants owed a duty to disclose any alleged concealment of a fact.

One key element of a fraudulent concealment claim under Ohio law is that the alleged concealment of fact is actionable only if there is a duty to disclose. Plaintiffs have failed to show that any of the SV ARX Defendants had a duty to disclose. Though Plaintiffs argue SV ARX, as a partner, had a duty to disclose, SV ARX was never a partner with any of the Plaintiffs. As addressed above, SV ARX's role as the Initial Limited Partner ended as soon as the first limited partner subscribed to the partnership. (Ex. I, D.E. 4-9, PageID 184-185.) At that point, SV ARX

became an ordinary borrower under the loan agreements with the Fund with no special duty to disclose to Plaintiffs.

**B.      Plaintiffs' fraud claims are time barred based on the allegations of the FAC.**

Plaintiffs cannot claim that they did not discover the alleged fraudulent and unlawful conduct of Defendants until after November 4, 2013, given that their allegations of fraud include the misrepresentation that Defendants did not keep their funds in escrow.  Plaintiffs' FAC alleges that they had actual notice of this claim at least as early as October of 2013, when, by Plaintiffs' own admission, "Defendants informed the Plaintiffs that the Project was stalled" and that the funds had been mismanaged and were gone.  (FAC, ¶ 65.)  Contrary to Plaintiffs' assertions, it is not reasonable to conclude that they needed any time after this revelation to "discover" the alleged fraudulent and unlawful conduct.  Obviously, the Plaintiffs' funds did not remain in escrow if the Project was "out of funds" and had "stalled."

The only other misrepresentations alleged by Plaintiffs—that their funds were guaranteed and that there were alternate sources of funding for the Project—were also known to Plaintiffs in October of 2013.  Ignoring the fact that the PPM specifically disclaimed these two alleged representations, the disclosure in October of 2013 that the Project was out of money and was stalled necessarily indicated that alternate sources of funding had not come forward and that the investors' funds were not guaranteed.  Thus, it is clear from the FAC that Plaintiffs were on notice of their fraud claims in October of 2013.   Thus, Plaintiffs cannot reasonably claim that they did not discover the alleged fraudulent conduct until after November 4, 2013.

**C.      Plaintiffs' purchases of units in the limited partnership are not securities because that is not the primary reason for their investments.**

A key distinction between the arrangement presented by the facts of this case and the "investment contracts" found in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) is the fact that the

primary purpose in this case for the contribution of funds into the scheme is the possibility of permanent residency, not to derive profits.  Plaintiffs claim that the prospect of profits does not have to be the primary reason, but cite no authority this assertion.  (Response, p. 31.)  Courts have held that the last prong of the *Howey* test is only satisfied if "investors reasonably expected to realize profits from [the] scheme, and that such expectation was the primary reason for the investment."  *S.E.C. v. Comcoa Ltd.*, 855 F. Supp. 1258, 1261 (S.D. Fla. 1994) (citing *United Hous. Found. v. Forman*, 421 U.S. 837, 852-53 (1975)).  Thus, where the primary reason is not the expectation of profits, there is no investment contract and no "security" under the federal securities law.

**D.**    **Plaintiffs have not adequately pled reasonable reliance.**

In order to bolster their allegations of reliance on the alleged misrepresentations, Plaintiffs now claim they were not sophisticated in law or business practices.  They ignore that they warranted and represented that they were capable of properly assessing and evaluating the risk of investing in this Fund.  (*See, e.g.*, Ex. B, D.E. 4-2, PageID 155-156.)  In executing the Subscription Agreements, Plaintiffs further warranted that they had been properly advised by legal or professional advisors with regard to the business venture, or had the capability of doing so and affirmatively chose not to.  (*See, e.g., id.* at PageID 155.)  Plaintiffs cannot certify to these representations in order to participate in the offering, and then, when convenient for them, claim a complete lack of sophistication.  *See In re National Century Financial Enterprises, Inc.*, 905 F. Supp. 2d 814, 824 (S.D. Ohio 2012), *aff'd sub nom. Pharos Capital Partners, L.P. v. Deloitte & Touche*, 535 F. App'x 522 (6th Cir. 2013).  Plaintiffs attached the Subscription Agreements to the FAC and their representations are now part of the FAC.  On these facts as pled by Plaintiffs, there can be no justifiable reliance on any alleged misrepresentation in this case, especially those disclosed in the offering documents.

### E. Plaintiffs failed to plead the elements of fraud with particularity.

Plaintiffs continue to ignore that, with respect to pleading a claim for fraud, their allegations must go beyond merely concluding that the elements have been met. Plaintiffs assert that they were induced by the material misrepresentations of "Defendants" to contribute funds to this Project, but only allege representations that were made by the Chans. (FAC ¶¶ 34-35, 37, 39.) Further, Plaintiffs do not properly allege loss causation occurring as a result of the alleged material misrepresentations, responding only that, "as a direct and proximate result," Plaintiffs have generally been damaged. (Response, p. 34.) This allegation is insufficient to establish causation between the content of the representations and the damages alleged. Plaintiffs' fraud claims should therefore be dismissed.

### F. Defendants are not required to offer an alternative theory that there is no scienter pled in the FAC.

Plaintiffs argue that Defendants fail to offer an alternative theory to Plaintiffs' allegations that Defendants defrauded Plaintiffs, Response at p. 35, but Defendants have no obligation to provide alternate theories when Plaintiffs themselves fail to sufficiently plead the requisite elements of securities fraud. Plaintiffs cannot meet their pleading obligations by somehow claiming that Defendants have failed to explain Plaintiffs' alleged losses. Plaintiffs have not provided a sufficient inference of anything, let alone a strong inference of the intent to commit securities fraud. To survive a motion to dismiss the inference must be more than "merely reasonable or permissible," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), and certainly the inference must be made by Plaintiffs and not drawn from a lack of an alternative theory by the Defendants. For this additional reason, Plaintiffs have failed to state a claim for securities fraud.

## V.     PLAINTIFFS' GROSS NEGLIGENCE CLAIM SHOULD BE DISMISSED.

Plaintiffs base their gross negligence claim on the inaccurate notion that SV ARX is a partner in the KRC Fund.  Plaintiffs included the LPA as an Exhibit to the FAC and it is incorporated therein.  The LPA makes clear that SV ARX's role as Initial Limited Partner ended as soon as another partner entered the Fund.  (Ex. I, D.E. 4-9, PageID 184-185.)  In the absence of duty, Plaintiffs cannot state a claim for gross negligence against SV ARX under Ohio law. Claims related to piercing the corporate veil do not save Plaintiffs' gross negligence claims against the SV ARX Defendants.  No Ohio court has held that "gross negligence" can even be the basis for piercing the corporate veil under Ohio law.

Further, Plaintiffs have failed to allege that the SV ARX Defendants went "beyond" the failure to perform their contractual duty of repaying monies borrowed from the Fund under their loan agreements.  There is no sufficiently alleged conduct that lies outside of the SV ARX Defendants' duties pursuant to the loan agreements.  Thus, the economic loss doctrine bars Plaintiffs' gross negligence claim, and Plaintiffs do not sufficiently allege otherwise.

## VI.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

Plaintiffs misunderstand or misconstrue the two distinct arguments made by the SV ARX Defendants regarding the contracts at issue.  First, when the SV ARX Defendants assert that they are not parties to the contract which Plaintiffs allege has been breached, the SV ARX Defendants are referring to the LPA and/or the Subscription Agreement.  For purposes of the unjust enrichment argument, SV ARX admits that it is a party to a loan agreement with the KRC Fund, which is the contractual agreement that governs the relationship between those parties.  Plaintiffs allege that they contributed capital to the KRC Fund, which then loaned money to SV ARX.  The alleged "benefits" conferred upon Defendants arose from this relationship and is the contract between the parties from which Plaintiffs could seek relief, if Plaintiffs had alleged that the

contract was breached. This loan agreement is thus the express written contract between the parties that bars Plaintiffs' unjust enrichment claim.

## VII. PLAINTIFFS' PURPORTED CLAIM FOR PIERCING THE CORPORATE VEIL SHOULD BE DISMISSED.

In order to sufficiently pierce the corporate veil and impose liability on parent companies or individual owners under Ohio law, a plaintiff must <u>first</u> sufficiently allege a fraudulent or illegal act. Under the test established by *Belvedere Condominium Unit Owners' Association v. R.E. Roark Companies, Inc.*, a plaintiff seeking to disregard a corporate entity to allege liability against shareholders or parent companies with control over that corporate entity must show:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own; (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

617 N.E.2d 1075, 1086 (Ohio 1993). Thus, a plaintiff must allege that a wrong was committed by a corporate entity that was fraudulent or illegal and then allege that those he seeks to hold personally liable exercised control over that corporate entity in a way so as to commit the fraudulent or illegal activity. *Id.* Plaintiffs cannot claim the remedy of piercing the corporate veil without alleging the wrong that was committed and showing that the control by the individuals was used to perpetrate the corporate misdeed.

*Dombroski v. Wellpoint, Inc.*, the case cited by Plaintiffs for this point, demonstrates how to sufficiently plead a predicate fraudulent or illegal act sufficient to establish a piercing remedy. 895 N.E.2d 538, 544 (Ohio 2008). In *Dombroski*, the plaintiff sued an insurance company that denied coverage under a health insurance contract for her cochlear implant. *Id.* at 541. The insurer was Community Insurance Company ("Community"). *Id.* at 540. Plaintiff sued Anthem UM Services, Inc. ("Anthem UM") and Anthem Insurance Companies ("Anthem Insurance"),

affiliates of Community that participated in the administration of the claim.  *Id.* at 540-41.

WellPoint, Inc., also sued, was the parent company of Community, Anthem UM, and Anthem

Insurance.  *Id.* at 541.  The plaintiff alleged that all defendants had breached the insurance

contract and acted in bad faith, an actionable tort in Ohio.  *Id.*

Anthem Insurance and WellPoint, Inc. filed motions to dismiss, arguing that the plaintiff

had failed to state a claim because she did not have privity of contract with either organization

and because she had failed to allege a legitimate basis for piercing.  *Id.*  The trial court agreed

and dismissed the two defendants for lack of privity and because plaintiff had failed to allege the

type of illegal or unjust result that had been intended by the Court in *Belvedere*.  *Id.*  The

Supreme Court of Ohio also agreed, affirming the dismissal of WellPoint and Anthem Insurance,

because the plaintiff "would be unable to pierce the corporate veil to sue WellPoint and Anthem

Insurance, since she has not alleged that they used their control over Community and Anthem

UM to commit any fraudulent or illegal acts against her."  *Id.* at 544.

*Dombroski* establishes that a plaintiff must sufficiently allege that the corporation

committed fraud or a similarly unlawful act prior to addressing  the second prong of the

*Belvedere* test.  *Id.* at 544-45.  *Dombroski* also requires that the plaintiff must sufficiently plead

that the shareholder or owner exercised control over the target corporation in such a manner as to

commit the specific fraud or unlawful act for which plaintiff is seeking recovery.  *Id.* at 545.  In

other words, the individual shareholder or parent company may only be held liable for those

specific actions of the corporation over which they are alleged to be in complete control and

which are alleged to be fraudulent or similarly unlawful.  *Id.*  Plaintiffs have not alleged unlawful

acts or the type of control necessary to establish a piercing remedy against the SV ARX

Defendants.

Plaintiffs fail to allege that A-Inc., SV ARX, or Jeffrey Jacobs own or have any control over Dante Bella or KRC.  Moreover, the timing of the alleged actionable conduct, reviewed in conjunction with the "control" that is alleged in the FAC, does not suggest liability against any of the SV ARX Defendants.  Plaintiffs have also failed to demonstrate that Jeffrey Jacobs has any liability for any corporate entity's actions under a piercing the corporate veil theory.  Jacobs was nothing more than an employee of SV ARX.  There are no allegations that he is an owner or shareholder of any corporate entity.  All claims against him should be dismissed in their entirety.

Plaintiffs' own allegations regarding the ownership of KRC contradict any allegation they can make regarding piercing the corporate veil with respect to KRC, Dante Bella, or Angiulli.  KRC was not owned by Dante Bella until January of 2014.  (FAC ¶¶ 7, 64.)  The material misrepresentations alleged in the FAC were made almost three and a half years before the change in ownership.  (FAC, ¶¶ 34-37.)  It would have been impossible for Angiulli or Dante Bella to have exercised the requisite control over KRC necessary to commit the alleged misrepresentations to meet the second prong of the *Belvedere* test, and Plaintiffs not only fail to allege such control, they allege the opposite.  Accordingly, Plaintiffs have not sufficiently established any tenable theory of liability against the SV ARX Defendants for the actions of any corporate entity over which they are purportedly individual owners or parent companies.  Considering these principles and the facts alleged in this matter, Plaintiffs' FAC fails to state a claim against any of the SV ARX Defendants that would support a piercing remedy.

## VIII.   PLAINTIFFS' CLAIM FOR CIVIL CONSPIRACY SHOULD BE DISMISSED.

### A.    Plaintiffs have not sufficiently pled the existence of an underlying act independent from the actual conspiracy.

Plaintiffs claim they have "generally alleged" that SV ARX committed multiple unlawful acts to sufficiently plead their civil conspiracy claim.  (Response, 16-17.)  However, "a general

allegation[] of conspiracy without a statement of facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action.  Although detail is unnecessary, the plaintiffs must plead the facts constituting the conspiracy, its object, and accomplishment." *Schell v. Kaiser-Frozer Sales Corp.*, 274 N.E.2d 315, 318 (Ohio Ct. App. 1971).  Plaintiffs fail to plead the facts constituting the conspiracy, its object, or accomplishment in the FAC, only asserting in a conclusory fashion that "the Chans and Angiulli conspired to come up with a plan to line their own pockets," with nothing more.  They also fail to identify any non-conclusory, factual allegations  to support their civil conspiracy claim in their Response.  Instead, Plaintiffs point to allegations of fraudulent and unlawful acts committed by Angiulli or "Defendants" which, at best, are descriptions of independent actions taken by Angiulli or on of the Chans as the makers of the "material misrepresentations."  There are no specific facts supporting the general allegation that "Defendants" conspired to commit any unlawful act or entered into any "malicious combination."

Notwithstanding the fact that Plaintiffs concede that their allegations are "general," Plaintiffs conclude that allegations that "SV ARX unlawfully breached the contract, committed common law fraud and securities fraud, was grossly negligent, etc." are sufficient.  (Response, p. 17.)  For reasons explained in the Defendants' Motions to Dismiss, and further supported herein, Plaintiffs have failed to state a cause of action for common law fraud, securities fraud or gross negligence.  This Court is then left only with alleged unlawful breach of contract or "etc." as the basis for the underlying tort necessary for a claim of civil conspiracy.  A claim for breach of contract, not being a tort, cannot be the basis for a claim of civil conspiracy.  *See All Erection & Crane Rental Corp. v. Acordia Nw., Inc.*, 162 F. App'x. 554, 560 (6th Cir. 2006).  Plaintiffs' claim for civil conspiracy should be dismissed as a matter of law.

**B.     Plaintiffs must allege separate damages for civil conspiracy.**

Plaintiffs contend that *Avery v. Rossford, Ohio Transp. Improvement Dist.* was cited out of context by the SV ARX Defendants, though they do not deny that *Avery* held "the plaintiff must  allege actual damages attributable to the conspiracy in addition to those damages caused by the underlying tort."  762 N.E.2d 388, 395 (Ohio Ct. App. 2001).  Plaintiffs rightly claim that *Avery* found that damages are only recoverable against a conspiring party when there are <u>actual</u> underlying tort damages.  However, *Avery* also held that underlying tort damages and the conspiracy damages must be separate and distinct, which comports with Ohio law.

In *Crosby v. Beam*,  a case cited by *Avery*, the Ohio Court of Appeals found that because the plaintiff had only alleged damages for breach of fiduciary duty, he had not alleged actual damages to support a conspiracy separate from the tortious breach of fiduciary duty.  615 N.E.2d 294, 304 (Ohio Ct. App. 1992)  "Since there were no actual damages alleged with respect to the cause of action for conspiracy to commit a breach of fiduciary duty," the Court of Appeals found that the conspiracy claim had properly been dismissed.  *Id.*  Accordingly, actual damages arising from the civil conspiracy, separate and apart from the underlying tort, must be alleged in order to sufficiently plead a cause of action for civil conspiracy under Ohio law.  Since Plaintiffs have failed to allege such damages, they fail to state a claim for civil conspiracy against the SV ARX Defendants.

**IX.     PLAINTIFFS CANNOT LUMP DEFENDANTS TOGETHER WHERE ALLEGATIONS DO NOT APPLY EQUALLY TO ALL DEFENDANTS.**

Plaintiffs attempt to undermine *Aaron v. Durrani*, 2014 WL 996471 (S.D. Ohio Mar. 13, 2014) by citing a case from another jurisdiction which is not controlling and which is inapplicable here.  Instead, this Court should follow *Aaron* and recognize that Defendants may

not be lumped together because they are entitled to be put on notice of the specific actions or inactions that allegedly give rise to Plaintiffs' claims against them.

## X.      THIS COURT SHOULD DENY ANY "MOTION TO AMEND."

Plaintiffs request that they be given *carte blanche* to amend their FAC to fix any deficiencies this Court finds.  This request should be denied.  Plaintiffs fail to provide any proposed amendments and/or descriptions of how they would amend their FAC.  This Court has been provided no basis on which to find that any of the factors of Rule 15(a) would be served by permitting amendment.  Plaintiffs attempt to unfairly seek an advantage by reserving their motion to amend following this Court's description of any deficiencies so that they have a prescription to follow.  This Court should deny Plaintiffs' motion to amend, to the extent it can be construed as such.  *See Glick v. Farm Credit Services of Mid-America, FLCA*, 2010 WL 3118673, *1 (N.D. Ohio Aug. 6, 2010) ("The court must have knowledge of the substance of the proposed amendment to determine whether 'justice so requires,' and does not abuse its discretion by denying leave where the plaintiff fails to submit a proposed amended complaint or otherwise disclose what amendments he intended to make.") (quoting *Roskam Baking Co. v. Lanham Machinery Co.,* 288 F.3d 895, 906 (6th Cir. 2002)).

For the foregoing reasons, the SV ARX Defendants, Martin Angiulli, Angiulli, Inc., Kentucky Regional Center, LLC, SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs, respectfully request that this Court grant their Motion to Dismiss.

17

Respectfully submitted,


BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

s/ Martha L. Boyd

Martha L. Boyd (Ohio Bar No. 0071550)
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, Tennessee 37201
Telephone:  615.726.5600
Fax:  615.744.5652
mboyd@bakerdonelson.com

Mark D. Griffin (Tenn. Bar No. 017381)
Lori H. Patterson (Tenn. Bar No. 019848)
Mary Wu (Tenn. Bar No. 031339)
165 Madison Ave., Suite 2000
Memphis, Tennessee 38103
Telephone:  901.526.2000
Fax: 901.577.2303
mgriffin@bakerdonelson.com
lpatterson@bakerdonelson.com
mwu@bakerdonelson.com

*Counsel for Defendants Martin Angiulli,
Angiulli, Inc., Kentucky Regional Center,
LLC d/b/a Midwest EB-5 Regional Center,
SV ARX, LLC, Dante Bella, LLC, and
Jeffrey Jacobs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 30, 2016, a true and exact copy of the foregoing was filed electronically and notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, as follows:

Christopher D Cathey
Porter Wright Morris & Arthur LLP
250 East Fifth Street, Suite 2200
Cincinnati, OH 45202
ccathey@porterwright.com

Jennifer K. Nordstrom
Garvey Shearer, PSC
11260 Chester Road, Suite 110
Cincinnati, OH 45246
jnordstrom@garveyshearer.com

*Counsel for Plaintiffs*

Mason N. Floyd
Clark Hill PLC
135 South LaSalle Street, Suite 3200
Chicago, IL 60603
mfloyd@clarkhill.com

Leigh D. Roadman
Clark Hill PLC
135 South LaSalle Street, Suite 3200
Chicago, IL 60603
lroadman@clarkhill.com

*Counsel for Terry Chan & Gary Chan*

s/ Martha L. Boyd
_____