**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| Jiaxi Hu, <u>et al.</u>, | ) |
| | ) |
| Plaintiffs, | ) Case No. 1:15-CV-709 |
| | ) |
| vs. | ) |
| | ) |
| Terry Chan, <u>et al.</u>, | ) |
| | ) |
| | ) |
| Defendants. | ) |

<u>O R D E R</u>

This matter is before the Court on motions to dismiss the first amended complaint filed by Defendants Terry Chan and Gary Chan (Doc. No. 26) and Defendants Martin Angiulli, Angiulli, Inc., Kentucky Regional Center, LLC, SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs. Doc. No. 29. For the reasons that follow, Defendants' motions to dismiss are **GRANTED IN PART AND MOOT IN PART.** Defendants' motion to stay (Doc. No. 31) and motion for joinder in stay (Doc. No. 32) are **MOOT.**

I. <u>Background</u>

The Department of Homeland Security's EB-5 Program awards conditional permanent resident status to an immigrant who invests in new job-creating commercial enterprises. If, after two years, the immigrant satisfies certain other Program criteria, the immigrant-investor will become a lawful permanent resident of the United States. Plaintiffs in this case are ten citizens of the People's Republic of China who sought to obtain lawful permanent resident status through the EB-5 Program. Plaintiffs claim that Defendants in this case solicited their participation and investment in a real estate development project

in Cincinnati under the guise of the EB-5 Program but instead Defendants diverted Plaintiffs' investment for their own personal use.

Plaintiffs in this case are Jiaxi Hu, Mengfang Li, Xiaoyan Wu, Wei Ren, Ruimin Chen, Jianli Du, Jimei Zhang, Zhenpeng Hao, Jie Ciu, and Guiying Wang. As mentioned, Plaintiffs are citizens of China who sought lawful permanent resident status through the EB-5 Program.

Defendants in this case are Terry Chan, Gary Chan, Martin Angiulli, Angiulli, Inc., Kentucky Regional Center, LLC, SV ARX, LLC, Dante Bella, LLC, and Jeffrey Jacobs.

Terry and Gary Chan are residents of Hamilton County, Ohio. The first amended complaint alleges that the Chans established the KRC Fund I limited partnership in October 2010 for the purpose of collecting EB-5 investments to redevelop the 2600 Block of Short Vine Street in Cincinnati by investing or loaning partnership funds to SV ARX, LLC. The Chans also established Defendant Kentucky Regional Center, LLC ("KRC") to be the general partner of KRC Fund I. The Chans were also principals of KRC.

Defendant Martin Angiulli resides in Hamilton County and is a principal of KRC. Angiulli is also Terry Chan's father-in-law. Additionally, Angiulli is the principal and sole member of SV ARX, LLC. He also owns Dante Bella, Inc. and Angiulli, Inc. The complaint alleges that Angiulli and Angiulli, Inc. owned and controlled most of the properties on Short Vine that the KRC Fund was supposed to redevelop. As stated, SV ARX was the entity that was supposed to actually develop the properties. Dante Bella was an entity that acquired KRC from the Chans. Angiulli, Inc., SV ARX, and Dante Bella are alleged to be alter egos of Angiulli, with no substantial capital or existence of their own to distinguish them from Angiulli.

Defendant Jeffrey Jacobs is a resident of Hamilton County, Ohio. He was a principal in SV ARX and the project manager for the redevelopment project at issue in this case.

In April 2010, the United States Citizenship and Immigration Services ("USCIS") designated KRC as a Regional Center to manage and sponsor EB-5 immigrant investor funds to redevelop the 2600 block of Short Vine Street as a mixed use area of retail stores, restaurants, and offices. KRC was designated as a "targeted employment area." This designation required each immigrant to invest at least $500,000 into the commercial enterprise. KRC sought to raise $23 million in EB-5 funds from 46 immigrant investors. The Short Vine project had a total budget of $29 million.

In late 2010, the Chans traveled to China to solicit EB-5 investors for the project. The complaint alleges that Gary Chan spent about six months traveling through China organizing and giving presentations to potential investors. Angiulli and Jacobs allegedly also participated in these presentations.

The complaint alleges that during these presentations, the Chans represented to investors that the project was guaranteed by government funds. Thus, according to the presentation, if the project failed, the State of Ohio would guarantee the return of the investors' funds. In actuality, however, while such a bill had been proposed, it had never been enacted into a law. The Chans, nevertheless, led potential investors to believe that their investments were safe if the project failed. Angiulli and Jacobs allegedly were aware of these misrepresentations and conspired with the Chans to promote this false information in order to induce Plaintiffs to invest in the project. The Chans also represented that the project would be funded through bank loans and tax credit financing. Again, this

3

representation is alleged to be false because the only source of funding for the project was from EB-5 investors.

In September 2010, the Fund issued a Private Placement Memorandum ("PPM") offering 40 units of limited partnership interests for $500,000 per unit, plus a $45,000 per unit administration fee to be paid to the Fund's general partner. The PPM represented in pertinent part that the investor's investment would be held in escrow pending the USCIS's approval of the investor's I-526 immigration investor petition. The PPM stated that the investor's investment would not be released to the Fund for use until his I-526 petition was approved. The PPM also stated that the investment would be returned to the investor if the USCIS denied the investor's petition.

During mid to late 2011, Plaintiffs Du, Chen, Ren, Hu, Wu, Li, and Zhang each purchased one unit of the fund for a total of $545,000. They also entered into Subscription Agreements with the Fund that incorporated the PPM's promise to hold their investments in escrow until their I-526 petitions were approved. The complaint alleges, however, that the Chans did not hold Plaintiffs' investments in an escrow account. The complaint alleges, rather, that the Chans deposited Plaintiffs' money into KRC's general operating account and that they and Angiulli immediately began spending it.

The complaint alleges that by February 2012, Defendants had already spent $4,000,000 of Plaintiff's money with little or no work being accomplished on the project. The complaint alleges that Angiulli diverted $700,000 to family members who held sham positions such as human resources manager in a company with only five employees. Defendants also invested Plaintiffs' money in technology companies, such as Zipscene and Wearcast, that were inconsistent with the Fund's business plan. Additionally, Angiulli

allegedly used Plaintiffs' funds to pay mortgages and taxes on properties owned by him and/or to pay expenses for his restaurant.

Angiulli allegedly used Plaintiffs' money to purchase the Colonade, a property that evidently was consistent with the Fund's business plan. According to the complaint, however, Angiulli pocketed the rent revenue from the Colonade instead of contributing it for the benefit of the project. Anguilla also used the Colonade as collateral to obtain a $250,000 line of credit from U.S. Bank. Anguilla and Terry Chan allegedly drew down the line of credit and split the proceeds without using the money for the project. Later, when the Colonade was sold, the proceeds from the sale were used to pay off the line of credit.

In September 2012, the project was placed on hold because Defendants were fighting amongst themselves over funding for the project. There were accusations and counter-accusations of misappropriation of funds. Defendants, however, did not notify Plaintiffs of the infighting and continued to solicit new investors in the project. Thus, in July and September 2012, Plaintiffs Hao, Cui, and Wang each entered into Subscription Agreements and paid $545,000 for one unit of the Fund.

In late 2012, the dispute among the Defendants resulted in litigation in state court, with Angiulli and SV ARX suing the Chans and the Fund for misappropriation of funds and the Fund counterclaiming Angiulli, Jacobs, and SV ARX for breach of contract and conversion. This lawsuit was settled in June 2013 and Angiulli later allegedly used $300,000 of Plaintiffs' funds to purchase KRC from the Chans. By that time, however, the project was stalled and all of Plaintiffs' funds were gone. Defendants did not inform Plaintiffs that the project was going nowhere until October 2013.

In January 2014, the USCIS approved all of Plaintiffs' I-526 petitions except for Plaintiff Wang, whose application was never approved. Despite the PPM's restriction on releasing investor funds from escrow until the USCIS approved the application, by that time all of Plaintiffs' funds allegedly had been misappropriated by Defendants.

In September 2014, the USCIS sent KRC a Notice of Intent to Terminate ("NOIT") KRC as a regional center due Defendants' apparent mismanagement of the project. KRC responded to the NOIT in October 2014, but the USCIS found that KRC did not sufficiently address the grounds cited for termination in the NOIT. The USCIS terminated KRC as a regional center in 2015, specifically citing Defendants' failure to demonstrate progress on the project, Defendants' failure to promote economic growth, and the fact that expenditures on the project were inconsistent with SV ARX's business plan.

Because it terminated KRC as a regional center, the USCIS revoked the I-526 petitions it had previously approved and denied Plaintiff Wang's application. Plaintiffs have appealed the USCIS's decision, but their collective $5,000,000 is gone and they do not have visas.

Plaintiffs filed suit against Defendants for their alleged malfeasance in November 2015. Plaintiffs' first amended complaint asserts various state and federal causes of action against the Defendants.

Plaintiffs' First Claim alleges that Defendants breached the PPM by spending their investments before their I-526 applications were approved, by spending their investments for purposes not approved by the PPM, and by breaching their fiduciary duty by not conducting the affairs of the Partnership in the best interest of the Partnership.

6

Plaintiffs' Second Claim is a common law breach of fiduciary duty claim. Plaintiffs allege that Defendants breached their fiduciary duty to them by misappropriating and wasting their investments and by not using their best efforts to run the project in a manner that would result in the creation of jobs and Plaintiffs securing their EB-5 visas.

Plaintiffs' Third Claim is for fraud and/or fraud in the inducement. Plaintiffs alleges that Defendants made material misrepresentations concerning the escrow account and government backing of their investments that induced them to enter into the Subscription Agreement and Limited Partnership Agreement.

Plaintiffs' Fourth Claim alleges that Defendants are liable for conversion of their investments.

Plaintiffs' Fifth Claim against Defendants is for unjust enrichment or quantum meruit.

Plaintiffs' Sixth Claim is for gross negligence. Plaintiffs allege that Defendants grossly mismanaged basically everything about the Short Vine project.

Plaintiffs' Seventh Claim is a federal claim against the Defendants for violating the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), by making misstatements in connection with a securities offering.

Plaintiffs' Eighth Claim is for civil conspiracy. Plaintiffs allege that Defendants entered into a malicious combination to defraud Plaintiffs out of their investment funds and use them for their own personal gain instead of completing the project and allowing Plaintiffs to secure their visas.

Plaintiffs' Ninth Claim is captioned as one for piercing the corporate veil against Defendant Angiulli. As described above, the complaint alleges that Angiulli, Inc., Dante

Bell, SV ARX and KRC are mere alter egos of Angiulli, and, therefore, that Angiulli should be held personally liable to Plaintiffs for their damages.

Plaintiffs' Tenth Claim is also captioned as a claim for piercing the corporate veil against Defendants Terry Chan and Gary Chan. This claim alleges that prior to selling KRC to Angiulli, KRC was nothing but an alter ego of the Chans and that, therefore, the Chans should be held personally liable for Plaintiffs' damages.

The basis for the Court's subject matter jurisdiction in this case purports to be diversity of citizenship pursuant to 28 U.S.C. § 1332. The Court notes, however, that Plaintiffs' diversity of citizenship allegations do not establish subject matter jurisdiction because they recite the state of residency, but not the state of citizenship or domicile, of the individual defendants. See First Amended Complaint ¶¶ 4-6, 11; Board of Tr. of Mohican Twp. v. Ashland County, Ohio, 133 F. 524, 524-25 (6th Cir. 1904) ("It has been many times decided that an averment that one is a resident of a particular state is not equivalent to an averment that he is a citizen of that state."). The Court, nevertheless, has federal question subject matter jurisdiction over Plaintiffs' securities fraud claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. 1367(a).

Defendants move in separate motions to dismiss all of Plaintiffs's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state claims for relief. The Court takes up the issues presented in the motions below.

## II. Standard of Review

A motion to dismiss for failure to state a claim operates to test the sufficiency of the complaint. The court must construe the complaint in the light most favorable to Plaintiff,

and accept as true all well-pleaded factual allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The court need not accept as true legal conclusions or unwarranted factual inferences. Lewis v. ACB Business Servs., Inc., 135 F.3d 389, 405 (6th Cir. 1998).

The complaint, however, must contain more than labels, conclusions, and formulaic recitations of the elements of the claim. Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The factual allegations of the complaint must be sufficient to raise the right to relief above the speculative level. Id. Nevertheless, the complaint is still only required to contain a short, plain statement of the claim indicating that the pleader is entitled to relief. Id. (citing Erickson v. Pardus, 551 U.S. 89, 93 (2007)). Specific facts are not necessary and the pleader is only required to give fair notice of the claim and the grounds upon which it rests. Id. To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Mere conclusions, however, are not entitled to the assumption of truth. Id. at 678-89. A claim is facially plausible if it contains content which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 678. Plausibility is not the same as probability, but the complaint must plead more than a possibility that the defendant has acted unlawfully. Id. If the complaint pleads conduct which is only consistent with the defendant's liability, it fails to state a plausible claim for relief. Id.

III. Analysis

A. Federal Securities Fraud

Plaintiffs allege that Defendants made materially false and misleading statements in connection with the sale of their limited partnership interests and that, therefore, Defendants violated the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Defendants, however, argue that this claim is subject to dismissal because it is barred by the applicable statute of limitations, because the limited partnership interests were not "securities" within the meaning of the Act, because Plaintiffs have not pled facts demonstrating a strong inference of scienter as required by the Private Securities Litigation Reform Act ("PSLRA"), and because Plaintiffs have not pled fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. For the reasons explained below, the Court agrees with Defendants that Plaintiffs have not pled fraud with sufficient particularity. Therefore, Plaintiffs' securities fraud claim will be dismissed.

In order to state a claim pursuant to Section 10(b) of the Securities Exchange Act, the plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury. Miller v. Champion Ent., Inc., 346 F.3d 660, 671 (6th Cir. 2003). Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA require the plaintiff to plead the time, place, and content of the alleged misrepresentation, and the identity of the person who allegedly made the misstatement. Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc., 583 F.3d 935, 942-43 (6th Cir. 2009).

10

In this case, the first amended complaint fails to meet this basic requirement for pleading fraud and/or a violation of federal securities law. The complaint does not identify with any specificity the time, place, or identity of the speaker of the alleged false and misleading statements. The complaint does not advance beyond allegations that "the Chans" made false and misleading statements "in China" "in 2011." First Amended Complaint ¶¶ 34-37. The complaint fails to even go this far with respect to the remainder of the defendants. For instance, the complaint alleges only that Defendants Angiulli and Jacobs "attended meetings" in China when alleged misrepresentations were made, or that they "were aware" of alleged misrepresentations, but not that they themselves made any misrepresentations. First Amended Complaint ¶ 34. Additionally, even though Plaintiffs assert their securities fraud claim against all of the Defendants, they have not identified any fraudulent statements made by any of the limited partnership or corporate defendants. The complaint's generalized allegations as to the time and place of the misrepresentations, and the identity of the speaker, are insufficient to meet the requirements of Rule 9(b). Hoover v. Langston Equip. Assoc., Inc., 958 F.2d 742, 745 (6th Cir. 1992)("The district court did not err in its alternative ground for dismissing Count One pursuant to Rule 9(b), that plaintiffs had not alleged with specificity who had made particular misrepresentations and when they were made but rather plaintiffs had articulated general averments of fraud attributed to 'the defendants.' The complaint identifies relationships between various of the defendants but it alleges misrepresentations without sufficiently identifying which defendants made them."). Plaintiffs' conclusory allegations that the Angiulli, Jacobs, and the Chans conspired together to make these alleged misrepresentations are insufficient to state a claim for relief. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir.

2001)("Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b).").

Plaintiffs cannot meet their burden under Rule 9(b) by relying, as they do, on group pleading. D.E. & J Ltd. P'ship v. Conaway, 284 F. Supp.2d 719, 731 (E.D. Mich. 2003)(stating that group pleading runs afoul of Rule 9(b)'s requirement to plead fraud with particularity). Plaintiffs contend, however, that the Court should permit them to proceed on the complaint as pled because the Defendants are all related by blood or marriage and there is little or no distinction between the individual defendants and the entities they controlled. Plaintiffs ask the Court to ignore contractual and corporate formalities and essentially, as the Court understands their argument, to consider all of the Defendants as a single entity for purposes of stating their claims. Plaintiffs believe that their conspiracy and piercing the corporate veil allegations tie the whole case together and admit that "without discovery, [they] cannot consistently and with specificity distinguish which conduct is attributable to which party." Doc. No. 39, at 18. The Court, however, agrees with Defendants that Plaintiffs' reliance on group pleading is not proper. See id. And, in any event, even if group pleading were sufficient to satisfy Rule 9(b), Plaintiffs cannot rely on group pleading to satisfy the PSLRA's requirement to plead facts demonstrating a strong inference of scienter. Local 295/Local 851 IBT Employer Group Pension Trust & Welfare Fund v. Fifth Third Bancorp, 731 F. Supp.2d 689, 719-20 (S.D. Ohio 2010)(Beckwith, S.J.).

Finally, Plaintiffs' complaint is not saved from Rule 9(b)'s requirement to plead fraud with particularity by their argument that they have pled "a complex and far-reaching" scheme to defraud. United States ex rel. SNAPP, Inc. v. Ford Motor Co., 618 F.3d 505, 512-14 (6th Cir. 2010). Under SNAPP, and other False Claims Act cases, the Sixth Circuit

12

has relaxed Rule 9(b)'s requirement to plead fraud with particularity where the plaintiff has alleged a "complex and far-reaching" scheme to defraud - but only to the extent that the plaintiff is not required to plead every fraudulent act so long as the plaintiff provides specific examples of false claims made to the government. Id. at 513. Insofar as the Court can discern, however, the Sixth Circuit has not extended the "complex and far-reaching" scheme exception beyond the context of the False Claims Act. Moreover, while the relationships between the Defendants in this case may be complex because of the numerous limited partnerships involved in the development project, the alleged fraudulent scheme itself is not especially complex or far-reaching. Plaintiffs allege only a few basic misrepresentations in connection with the securities offering that took place over a relatively short period of time. Cf. United States. ex rel. Bledsoe v. Cmty.Health Sys. Inc., 501 F.3d 493, 509 (6th Cir. 2007) (indicating that a "complex and far-reaching" scheme involves many fraudulent claims over a substantial period of time). Accordingly, the exception that relaxes Rule 9(b), as outlined in SNAPP and Bledsoe, does not apply in this case.

Because Plaintiffs' securities fraud claim fails to satisfy Rule 9(b) and/or fails to plead facts demonstrating a strong inference of scienter, Defendants' motion to dismiss this clam is well-taken and is **GRANTED.** Plaintiffs' federal securities fraud claim is **DISMISSED WITH PREJUDICE.**

### B. State Law Claims

Plaintiffs have filed a host of state law claims concerning the alleged improper dissipation of their investments. As recited above, however, Plaintiffs have not properly established the Court's diversity jurisdiction over the case. Having granted judgment to

13

Defendants on Plaintiffs' sole federal claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. See Hankins v. The Gap, Inc., 84 F.3d 797, 802-03 (6th Cir. 1996). Accordingly, Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE.** Defendants' motion to dismiss these claims is **MOOT.**

### C. Leave to Amend

Plaintiffs ask the Court for leave to amend their complaint in the event it finds any of their claims deficiently pled. Plaintiffs, however, have not tendered a proposed second amended complaint for the Court to consider. Plaintiffs are not entitled to an advisory opinion from the Court on the deficiencies in their complaint and, moreover, tagging a request for leave to amend their complaint at the end of their memorandum in opposition is improper. Louisiana Sch. Emp. Ret. Sys. v. Ernst & Young, LLP, 622 F.3d 471, 485-86 (6th Cir. 2010); Begala v. PNC Bank, Ohio, Nat'l Ass'n, 214 F.3d 776, 783-87 (6th Cir. 2000).

Accordingly, Plaintiffs' request for leave to amend their first amended complaint is denied.

### Conclusion

In conclusion, Defendants' motions to dismiss are **GRANTED IN PART AND MOOT IN PART.** The motions to dismiss are well-taken and are **GRANTED** as to Plaintiffs' federal securities fraud claim. That claim is **DISMISSED WITH PREJUDICE.** The motions to dismiss are **MOOT** as to Plaintiffs' state law claims. Those claims are **DISMISSED WITHOUT PREJUDICE.** Defendants' motion to stay and motion for joinder in stay are **MOOT.**

**IT IS SO ORDERED**

Date August 15, 2016           s/Sandra S. Beckwith
                                                      Sandra S. Beckwith
                                            Senior United States District Judge